UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>- v. -<br><br>NG CHONG HWA a.k.a. Roger Ng,<br><br>　　　　　　　　　Defendant. | 18 Cr. 00538 (MKB) (S-1)<br><br>**AFFIRMATION OF<br>MARC A. AGNIFILO, ESQ.** |

I, MARC A. AGNIFILO, hereby declare pursuant to 28 U.S.C. § 1746:

　　　　1.　　I am Of Counsel at Brafman & Associates, P.C., counsel to defendant Ng Chong Hwa ("Roger Ng") and am listed as counsel of record in the case of United States v. Ng Chong Hwa together with Teny Geragos, Esq., Jacob Kaplan, Esq., and Zach Intrater, Esq. (Dkts. 17, 18, 57).

　　　　2.　　I make this Affirmation based on my first-hand involvement in the events discussed, a review of court records of proceedings both in the United States and Malaysia, conversations with Ng's Malaysian counsel, Datuk Tan Hock Chuan, and other information.

　　　　3.　　On October 30, 2018, Roger Ng was arrested on a provisional arrest warrant based on the original U.S. indictment (Dkt 1). He was incarcerated on the U.S. case in a Malaysian jail between his arrest and his initial appearance in the United States on May 7, 2019.

　　　　4.　　In addition to the U.S. case, Ng was charged by the Malaysian Attorney General's Chambers on December 19, 2018 with crimes related to his involvement in the 1MDB bond deals that Goldman Sachs led from 2012 to 2013. He was ordered released on the Malaysian charges. Due to the U.S. charges, however, he remained in prison.

5. During the first two months of 2019, I traveled to Malaysia two times. First, in early January 2019. Second, between February 11 and February 16, 2019. During each of these trips, I discussed with Ng the prospect of waiving extradition to the United States.

6. During January and February 2019, the undersigned had a number of telephone and email conversations with Assistant United States Attorneys in the Eastern District of New York and with trial lawyers with the Department of Justice concerning the possibility of Mr. Ng waiving extradition to the U.S.

7. The undersigned stated to the Government that while Mr. Ng would consider waiving extradition, we wanted an agreement with the Government that it would not change the indictment after Mr. Ng came to the United States. There was explicit discussion that once Mr. Ng waived extradition, he would lose all rights afforded him under the treaty. However, we discussed with the Government that Mr. Ng should not lose the right commonly known as the Rule of Specialty.

8. The Government said that it would draft a letter agreement providing Mr. Ng the protections afforded him under the Rule of Specialty as provided by the U.S./Malaysian Extradition treaty.

9. The Government consistently told the undersigned that it was imperative that Mr. Ng waive extradition and that this waiver be on the record in court in Malaysia.

10. As to one particular telephone conversation on February 7, 2019, Teny Geragos was on the phone along with the undersigned. Ms. Geragos's notes, which are consistent with the undersigned's recollection, reflect that the Government informed us that Mr. Ng must waive extradition and do so in open court. The Government also advised that it was still working on the letter agreement that was previously discussed.

11. On the evening of Monday, February 11, 2019, the undersigned left for Malaysia and arrived in Kuala Lumpur on Wednesday afternoon, February 13th (Malaysian time, 13 hours ahead of Eastern Standard Time in the U.S.). By the time I landed in Kuala Lumpur, I had received the Government's February 12, 2019 letter. The email accompanying the letter stated, "please find the final approved letter, as discussed last week." (See Dkt. 58, Ex. 2 at 1-3.)

12. On Thursday February 14th, I, along with Mr. Ng's Malaysian-based lawyer, Datuk Tan Hock Chuan ("Datuk Tan"), went to the Sungai Buloh prison, on the outskirts of Kuala Lumpur, and met with Mr. Ng. Among other things, I read the Government's February 12th letter to him and informed him, in substance, that aside from the possibility of ministerial modifications, the Government agreed not to change the indictment (which was the October 2018 indictment). In explicit reliance on the Government's promises in the February 12th letter, Mr. Ng agreed to waive extradition the next day, February 15, 2019, the date required for waiver under the letter.

13. I also told Mr. Ng and Datuk Tan that our agreement with the U.S. Government requires that we waive extradition, and that we do not consent to extradition. I told him this so that he would make it clear the next day in court that we were waiving extradition.

14. Following the prison visit, and in response to a question from the Government, I sent an email to representatives of the EDNY and the DOJ that I had met with Mr. Ng and that "we are waiving extradition at Friday's hearing." (Ex. 1, 2/14/19 Email at 1.)

15. On the morning of Friday February 15th, I re-emphasized that Mr. Ng would waive extradition. Specifically, I wrote to the EDNY and the DOJ, "First, as noted, Roger will waive extradition this morning." (Ex. 2, 2/14/19 7:34 PM EST Email at 1.)

16. I then appeared in the Sessions Court in Kuala Lumpur for the Friday morning hearing. Not being a Malaysian lawyer, I sat in the gallery. Datuk Tan appeared on Mr. Ng's

3

behalf. While explaining the procedures to Mr. Ng, the court used the term "consent to waiver." Upon hearing this, I stood up from where I was sitting and walked up to the bar of the court. This caught the judge's attention and I believe he motioned to Datuk Tan that I was trying to get his attention. Datuk Tan turned around and apparently saw me standing at the bar. He then walked to the bar and he and I spoke. I said, in substance, "we shouldn't use the phrase 'consent to waiver' because it is confusing." I asked Datuk Tan to say only that Mr. Ng is waiving extradition.

17. Datuk Tan returned to the defense table, and, as has been quoted in the press, stated the following: "I am instructed to inform the Court that the respondent has agreed to a waiver of the committal/extradition proceedings before this honourable court." (Ex. 3, https://www.malaymail.com/news/malaysia/2019/02/15/lawyer-tells-court-ex-goldman-banker-now-accepts-us-extradition/1723257.) During the balance of the proceedings, the court asked questions to ensure that the waiver was knowing and intelligently entered.

18. Shortly after the end of the hearing, and I believe while I was still in the Court building, I sent an email to the EDNY and DOJ saying only, "waiver has been made. All done." (Ex. 4, 2/14/19 10:17 PM EST Email at 1.)

19. The reason I sent multiple emails to the Government explicitly saying that Mr. Ng would, and later, did waive extradition is because the Government told me that the distinction between waiving and consenting to extradition was critical.

20. As the Court is aware, the Government provided the Court with an order of the Malaysian Sessions Court dated February 15, 2019 stating that Mr. Ng did "consent to the waiver of the committal proceedings." This language in the order, "consent to the waiver" was the same language that the Judge used in open court that prompted me to ensure that Mr. Ng was waiving,

4

and not consenting, to the extradition. However, while the language is confusing, it is not inconsistent with our contention that Mr. Ng waived extradition.

21. In closing, I wish to make clear that Mr. Ng explicitly relied on the Government's February 12, 2019 letter, represented to be the final approved letter from the Government, and that Mr. Ng absolutely waived extradition, and that he did not consent to extradition.

Dated:       January 22, 2021
               New York, NY

                                                                    Respectfully submitted,

                                                                    Marc A. Agnifilo, Esq.