

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

AES/DGR/DAS
F. #2016R00467

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 17, 2021

By ECF

The Honorable Margo K. Brodie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Ng Chong Hwa
                Criminal Docket No. 18-538 (MKB)

Dear Chief Judge Brodie:

      The government writes in response to defendant's March 12, 2021 letter regarding Mohd Najib Bin Abd Razak v. Timothy Leissner and Goldman Sachs, Docket No. 20 Misc. 387 (JGK) (KHP) (S.D.N.Y.) ("Razak").[1]  See ECF No. 64 (the "March 12 Letter").[2]  The March 12 Letter not only mischaracterizes the government's filings in Razak, but also violates the protective order agreed to by the parties and so ordered by the Court.  See ECF No. 26 (the "Protective Order").  The government therefore respectfully requests that the Court deny defendant's requested relief.

      First, the March 12 Letter violates both the letter and the spirit of the Protective Order.  Defense counsel acknowledges that they are "not at liberty to describe the nature of the

---

[1] Razak is a civil action in which Mohd Najib Bin Abd Razak ("Razak"), a Malaysian citizen and resident who previously served as the Prime Minister of Malaysia from April 2009 to May 2018, and who is currently facing criminal charges in Malaysia for his role in the 1MDB bribery scheme, has filed a motion pursuant to 28 U.S.C. § 1782 for documents and testimony from Goldman Sachs and Tim Leissner.

[2] Attached as Exhibit A are the publicly filed versions of the government's motion to stay and intervene, and its motion to seal, in Razak, along with all responses and replies.  The government will seek authorization from Magistrate Judge Katharine Parker to provide the Court with the unredacted versions of these documents in connection with this letter and the government's response to the motion for joinder filed by petitioner's counsel in Razak in this case, which is due on March 22, 2021.

evidence" in their possession, but then proceeds to do exactly that, claiming that it includes "material that defendant Razak does not appear to have that would be consistent with his stated defense" and describes that material as "evidence that certain members of 1MDB made their own corrupt arrangements with Jho Low or Leissner or others associated with them to show that while there may have been a bribery relationship involving certain people at 1MDB, these were arrangements reached individually by each 1MDB member without the participation of the former Prime Minister." ECF No. 64 at 2 & n.1. Defendant further asserts, without any basis, that the evidence in this case includes material that, in his view, is "clearly exculpatory" for Razak. Id. at 3.

Even if this assertion were true—which it is not—such statements, filed on the public docket, violate the Protective Order that was carefully negotiated between the parties and so ordered by the Court. Paragraph 2 of the Protective Order makes clear that the Discovery Materials[3] "may be used . . . only for the purposes of defending against the charges in [United States v. Ng]," and Paragraph 3 of the Protective Order makes clear that Defense Counsel may not "disclose[], disseminate[] or discuss[]" the Discovery Materials or any derivative materials with "any individuals, organizations, or other entities." ECF No. 26 ¶¶ 2-3. Thus, not only would providing any materials to Razak's counsel violate the Protective Order, but the very assertions made in the March 12 Letter itself, which disclose and discuss the substance of the Discovery Materials, are also contrary to its terms.

Moreover, the Protective Order outlines a specific procedure by which Defense Counsel may seek to disclose, discuss or disseminate any of the Discovery Materials or other information derived therefrom: first, they must "seek the government's agreement to do so," and only then, "[i]n the absence of such agreement, Defense Counsel must (a) provide advance notice to the government or Firewall Counsel[] and (b) make an application to the Court for authorization to make such disclosure," and such notice "must be given sufficiently in advance of the contemplated application as to permit briefing and argument as to the propriety of such disclosure." Id. ¶ 7. The defendant here skipped straight to the third step, never seeking the government's approval or providing advanced notice of his application to the Court. To immediately seek relief from the Court without following the proper procedures—and to do so in a manner that speaks (inaccurately) about the substance of the Discovery Materials in a public filing—violates the Protective Order. Such conduct should not be countenanced by this Court, and counsel should be reminded of their obligations under the Protective Order.

Additionally, as the Court is aware, the defendant has separately asked the Court to remove the "Attorney's Eyes Only" designation applied to the government's early productions of Jencks Act material. ECF No. 43 at 116. For support, the defendant has argued that he "has abided by all provisions of the Protective Order in the year and a half that he has been awaiting trial in the United States." Id. As discussed above, that assertion is now inaccurate. Counsel's willingness to flout the clear provisions of the Protective Order and to share materials with

---

[3] All capitalized terms not otherwise defined herein are defined in reference to the Protective Order.

2

unauthorized third parties abroad weighs heavily in favor of denying the defendant's motion to re-designate the early Jencks Act material produced to date.

The substantive arguments in the March 12 Letter are also without merit. The defendant's primary argument is that the government's intervention in Razak "is clear evidence that Goldman Sachs is a member of the prosecution team." ECF No. 64 at 1. This argument borders on the absurd. As the government has already made clear in other briefing, the mere fact that Goldman Sachs is cooperating with the government's investigation pursuant to a Deferred Prosecution Agreement ("DPA") does not transform Goldman Sachs into a member of the prosecution team. See ECF No. 54 at 80-87; see also United States v. Garcia, 509 F. App'x 40, 43 (2d Cir. 2013); United States v. Meregildo, 920 F. Supp. 2d 434, 441-45 (S.D.N.Y. 2013).

Indeed, Goldman Sachs is a corporation with its own interests and lawyers, and nowhere was that clearer than in the Razak matter itself. The government sought to intervene and stay the Razak matter to vindicate its own interests in protecting, inter alia, the integrity of this ongoing criminal case. See Razak Dkt. Nos. 18, 19. Goldman Sachs did not join the government's motion, but rather took no position. See Razak Dkt. No. 22; see also Razak Dkt. No. 32 at 10 (according to Razak's counsel, "Goldman Sachs filed a consented-to motion for time, in which it took no position on the Government's motion for intervention and a stay, but rather asked for an additional extension of time to file its response to the subpoena until five days after the Court's resolution of the Government's application"). If the government were acting "as Goldman Sachs's free lawyer," as defendant alleges, then surely Goldman Sachs and the government would have taken the same position regarding the subpoenas. ECF No. 64 at 2.

The defendant's allegation that certain filing dates in the Razak matter "show[] a close working and strategic relationship" between the government and Goldman Sachs does not withstand scrutiny. Id. On January 22, 2021, Goldman Sachs sought a four-week extension of its time to respond to the subpoenas, giving them until February 9, 2021. Razak Dkt. No. 13. The government understood that it likely had until that date to decide—independently—whether it wanted move to intervene and stay the proceedings. In that time, the government assessed its interest in that litigation and ultimately filed its motion. The defendant's attempt to use this timing as a hook to reargue its joint prosecution team motion should be rejected, and its request for discovery on this topic should be denied.

Moreover, the Court should reject the defendant's more generalized assertion that the government is "protecting" Goldman Sachs and maintaining an "extraordinary relationship" with the corporation. ECF No. 64 at 3. As this Court is well aware, the government conducted an independent criminal investigation of Goldman Sachs that lasted multiple years and, among other things, culminated in a DPA that provided Goldman Sachs with less than half of the cooperation credit for which it was eligible. See ECF No. 54 at 83-84; id. Ex. A at 4. Such facts clearly demonstrate the falsity of the defendant's claims that the government is somehow protecting Goldman Sachs.

The defendant's remaining allegations are also baseless. The government has not intervened in the Razak matter "solely to ensure that a defendant in a foreign prosecution . . . is denied that which a Judge in the Southern District has already ruled he should receive." ECF No. 64 at 2. As an initial matter, such a statement is misleading: as defense counsel is aware,

the government's motion to intervene and to stay proceedings is pending, so the purported entitlement of Razak to discovery materials—and the timing of their disclosure—is still sub judice.[4] More fundamentally, the government has not argued that Razak should be barred from accessing evidence to mount a defense in the Malaysian criminal proceedings against him; indeed, the government has been clear that it is asking only for a stay of the Razak matter, not that the subpoenas be quashed, and its position is that such a stay will not prejudice Razak. See Razak Dkt. No. 19 at 25-26; Razak Dkt. No. 42 at 7-8. Rather, the government has sought to intervene and stay proceedings because: (1) the same facts and legal theories are at issue in both the Razak matter and the closely related criminal cases before this Court; (2) the public has an interest in preventing the circumvention of restrictions on criminal discovery and prejudice to the prosecution of those criminal cases; and ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

       Finally, nothing about the government's motion to intervene and to stay the Razak matter implicates Brady or discovery obligations with regard to any individual. See ECF No. 64 at 3. As the government has repeatedly made clear, the government is aware of and will comply with its continuing obligation under Brady and its progeny, and its decision to move to intervene in a related civil case in no way casts doubt on that understanding.

---

[4] In addition, Goldman Sachs and Leissner have not yet responded to the subpoenas; it is therefore possible that, if the court does not grant the government's motion for a stay, Goldman Sachs and Leissner may seek to quash the subpoenas and/or litigate their scope. Notably, Leissner, as a current criminal defendant who has not yet been sentenced, has Fifth Amendment rights that are implicated by the subpoenas.

[5] These arguments are explained in more detail in the government's memorandum of law in support of its motion to intervene and to stay the Razak matter, Razak Dkt. No. 19, as well as in the government's reply memorandum in further support of that motion, Razak Dkt. No. 42.

Accordingly, the government respectfully requests that the Court (1) deny the defendant's request that the Court order the government to provide all communications with counsel for Goldman Sachs and Tim Leissner regarding compliance with the subpoena, and (2) deny the defendant's request to modify the Protective Order. Further, the government respectfully submits that the March 12 Letter should have no bearing on the Court's decision on the pending Brady and discovery motions; if anything, the March 12 Letter reemphasizes the hollowness of defendant's arguments and counsels in favor of the denial of those motions.[6]

Respectfully submitted,

SETH D. DuCHARME
Acting United States Attorney

By:     /s/
Alixandra E. Smith
Drew G. Rolle
Dylan A. Stern
Assistant U.S. Attorneys
(718) 254-7000

/s/
Jennifer E. Ambuehl
Nikhila Raj
Trial Attorneys
Criminal Division, Money Laundering and Asset Recovery Section
U.S. Department of Justice

/s/
David Last
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice

cc: Marc A. Agnifilo, Esq. (by ECF)
Zach Intrater, Esq. (by ECF)
Teny R. Geragos, Esq. (by ECF)
Jacob Kaplan, Esq. (by ECF)

---

[6] The government has filed certain portions of this letter under seal and ex parte, and respectfully submits that they should remain under seal and ex parte as those portions discuss ███████████████████████████████████████████