# BRAFMAN & ASSOCIATES, P.C.

ATTORNEYS AT LAW

256 FIFTH AVENUE, 2ND FLOOR

NEW YORK, NEW YORK 10001

TELEPHONE: (212) 750-7800

FACSIMILE: (212) 750-3906

E-MAIL: ATTORNEYS@BRAFLAW.COM

BENJAMIN BRAFMAN

MARK M. BAKER
OF COUNSEL

MARC A. AGNIFILO
OF COUNSEL

ZACH INTRATER
OF COUNSEL

ANDREA L. ZELLAN

JACOB KAPLAN

TENY R. GERAGOS
ADMITTED IN NY & CA

STUART GOLD

March 17, 2021

VIA ECF

The Honorable Margo K. Brodie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

   Re: <u>United States v. Ng Chong Hwa a.k.a Roger Ng</u>, 18 Cr. 538 (MKB)

Dear Judge Brodie:

  In advance of the status conference on March 18th in the above-captioned case, counsel for Mr. Ng submits this letter to detail an outstanding <u>Brady</u> and discovery issue that only yesterday was brought to our attention. We respectfully request a hearing on this critical matter.

  Yesterday, the Government informed us for the first time that Goldman Sachs is in possession of Tim Leissner's personal electronic devices (the "Leissner Devices"). The Government has apparently known this for some time, but did not disclose it previously. The Government's proffered reason for not providing the contents of the Leissner Devices ▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ is that when the Government requested Goldman Sachs to hand over the devices, Goldman Sachs refused.

  Goldman Sachs' Deferred Prosecution Agreement ("DPA") contractually obligates it to cooperate with the Government in every way, including by providing the Leissner Devices, which were ostensibly used during the pendency of the alleged crimes. (<u>See, e.g.</u>, DPA ¶ 5.) In this letter,

BRAFMAN & ASSOCIATES, P.C.

we raise two issues that we believe must be addressed at a hearing: First, that the Government knew the Leissner Devices existed, but did not see fit to inform defense counsel until yesterday (after counsel raised the issue with the Government three times). Second, the Government's proffered explanation for both withholding the Leissner Devices and the very fact of their existence – that Goldman Sachs purportedly refused to hand over the Leissner Devices – raises far more troubling questions than it answers. Finally, we request that the Court order the Government to immediately turn over the Leissner Devices.

    1.    The History of Brady Violations and Mr. Ng's Repeated Requests for Material

The Government's revelation that it has known about the Leissner Devices for some time without advising Mr. Ng's counsel must be viewed in the context of numerous Brady and discovery violations that we have raised during the course of this case.

For instance, in Mr. Ng's Motions to Dismiss, he requested that the Court order the Government to promptly provide Brady material in its possession, specifically, all communications between the Government and Leissner's counsel, and all material covered by Goldman's DPA. (Dkt. 46, at 91-101.) These requests, of course, would cover the Leissner Devices. (See, e.g., DPA ¶ 5(a) (mandating that Goldman Sachs "shall truthfully disclose all factual information with respect to its activities . . . and those of its . . . former . . . employees . . . about which [Goldman Sachs] has any knowledge or about which the Offices may inquire.").) Following Mr. Ng's motions, the Government wrote a 13-page letter to counsel detailing unproduced Brady, Giglio and Rule 16 material. Mr. Ng then requested the entirety of the unproduced material. (Dkt. 58 at 38-54.) On December 10, 2020, following a status conference where counsel again reiterated the Brady issues, the Court entered an Order pursuant to Federal Rule of Criminal Procedure 5(f) confirming the prosecution's disclosure obligations. (Dkt. 56.) Counsel again moved for Brady materials in Mr. Ng's reply to the Government's sur-reply. (Dkt. 60 at 6.)

On January 8, 2021,  we wrote to the Government. We asserted that the Government "has constructive possession and control over numerous electronic devices belonging to or used by Leissner, " (Exhibit A: January 8, 2021 Letter at 2.) The Government ignored this letter. On January 27, 2021, the parties had a telephone call. We again reiterated that Leissner used personal devices other than the laptop. We requested access to those devices. The Government provided nothing in response.

BRAFMAN & ASSOCIATES, P.C.

On March 5, 2021, we wrote the Government again. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Once again, we requested that the Government produce any additional devices used by Leissner immediately. (Id.) The Government provided nothing in response until yesterday, when it made the blockbuster admission, for the first time, that the Leissner Devices exist.

This history leads to one inescapable, and deeply troubling, conclusion: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Had we not pursued this issue so doggedly, there is no indication the Government ever would have disclosed the existence of the Leissner Devices, let alone provided their contents.

2. <u>The Critical Importance of Leissner and the Leissner Devices to This Case</u>

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[2] The Government is well aware that Leissner had personal devices during the time period of the crime, and that he used those devices in communicating with co-conspirators in his commission of the crime. Therefore, when the Government discovered – from either Goldman Sachs or Leissner – that the Leissner Devices were in the possession and control of Goldman Sachs, the Government would presumably view such evidence as an overriding priority. It is routine in every case, much less one of the largest fraud cases in the history of the Justice Department, for law enforcement to painstakingly review ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ After all, no other object is more likely to contain critical information than someone's personal electronic devices – for better or for worse, they are absolutely indispensable for modern life. ▮▮▮▮▮▮▮▮▮▮▮▮

---

[2] Goldman Sachs itself has represented to the Government that "they did not identify emails on Goldman's server between Ng and Low demonstrating that Ng had engaged in any misconduct." (See Dkt. 58-1 at 6.)

3

BRAFMAN & ASSOCIATES, P.C.

[redacted] They also should have been especially motivated to determine whether the Leissner Devices contained any exculpatory material that should be disclosed to Mr. Ng, whose life has been turned upside down by the Government's decision to charge him.

Finally, when the Government became aware of the Leissner Devices, and their possession by Goldman Sachs, Goldman Sachs would either have been engaged in active negotiations with the Government or was already party to the DPA. It defies common sense to think that, in the middle of this massive case, the Government would not ask Goldman Sachs to describe, summarize or give some idea of the contents of the Leissner Devices in Goldman Sachs's possession. It also defies common sense that Goldman Sachs would not have done so if asked by the Justice Department. Therefore, there is every reason to believe that the Government has some idea – the particulars of which may be revealed in the materials provided by Goldman Sachs that the defense is seeking – of the contents of Leissner's personal devices, or has deliberately declined to acquire such knowledge.

3. <u>The Government's Proffered Reason for Neither Acquiring Nor Disclosing the Existence of the Leissner Devices</u>

The Government stated yesterday that it has known about the Leissner Devices for some period. It knew that Goldman Sachs had the Devices. It knew where the Devices were. It knew the Devices belonged to Leissner. Some observations based on these extraordinary facts:

<u>First</u>, nothing in the Government's explanation justifies refusing to inform the defense about the Leissner Devices or providing the Leissner Devices to the defense. After all, Mr. Ng waived extradition more than two years ago. He has been in the United States for more than 22 months. During that time, this case was set for trial on four separate dates firmly set by this court: May 11, 2019, January 31, 2020, September 14, 2020, and January 19, 2021. Had this case proceeded to trial on any one of those four scheduled trial dates, Mr. Ng would have gone to trial while the Government knew that the Leissner Devices were possessed by Goldman Sachs – an entity that has appeared before this very Court, whose Malaysian entity has pleaded guilty before this very Court, and whose DPA obligates it to do many things on pain of Indictment – including to "truthfully disclose all factual information with respect to its activities . . . and those of its . . . former . . . employees . . . about which [Goldman Sachs] has any knowledge or about which the

4

**BRAFMAN & ASSOCIATES, P.C.**

Offices may inquire." (DPA ¶ 5(a).) ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.

Until yesterday, the Government was content to refuse to inform counsel of what it clearly knew all along, specifically that the Leissner Devices were with Goldman Sachs. Even if we take the Government's proffered explanation as true – that Goldman Sachs somehow refused to comply with the Government's request for the Leissner Devices – that does not excuse the Government from refusing until yesterday, after four firm trial dates have come and gone, to disclose that the Devices exist so that we could subpoena them. And indeed, this is precisely why the Government did not tell us earlier. The Government knew that a subpoena to Goldman Sachs, a party before this very Court, would have resulted in us getting the devices. Accordingly, the Government did not tell us that Goldman Sachs had the devices all along precisely so we would not subpoena Goldman.

Second, the Government's proffered reason for not providing us with the Leissner Devices even before it entered the DPA with Goldman Sachs is suspect. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Goldman would have every reason to want to share the Leissner Devices with the Government to make precisely this point. Goldman was negotiating and pleading with the Government for its very existence. There is no reason to think that if asked, Goldman Sachs would refuse to provide the Government with the Leissner Devices to protect Leissner.

Third, the Government's rationale for its failure to provide the Leissner Devices falls apart completely after Goldman Sachs entered the DPA. Goldman Sachs's purported refusal is completely contradictory to both the letter and the spirit of the DPA. The notion that in the face of utter ruin at the hands of the Department of Justice that Goldman would flat out refuse to turn over the Leissner Devices in response to a demand by the Government is nothing short of preposterous.

Fourth, if the Government actually wanted the Leissner Devices, it would have subpoenaed Goldman, which the Government has been clear to allege is headquartered very much in the United States, and it would have absolutely gotten the Leissner Devices. So, it seems that the Government's explanation for not providing the Leissner Devices is not accurate.

5

BRAFMAN & ASSOCIATES, P.C.

    4.    <u>The Only Rational Conclusion Is That the Government Intentionally Allowed Goldman Sachs Keep the Leissner Devices to Avoid Producing Them in Discovery</u>

For all these reasons, it is clear that Goldman Sachs only possesses the Leissner Devices because the Government did not want to physically possess them. There is no other logical explanation given: The immense scope and thoroughness of this investigation; The central role played by Leissner and by Leissner's use of his personal devices; That Goldman was negotiating for its very life and would have given the Government anything it wanted in the process; and that Goldman Sachs ultimately entered into a DPA that mandates it provide material such as the Leissner Devices on penalty of corporate death. Based on the totality of circumstances, it is clear that the Government decided to maintain the Leissner Devices in a kind of discovery purgatory: They would remain in Goldman Sachs's possession overseas, so that the Government would never physically possess them, so that the Government never has to provide them to the defense in this case, and so Roger Ng would go to trial and never be the wiser.

That the Government would have allowed this case to proceed to trial on any of the four trial dates set by the Court without having informed counsel of the existence of the Leissner Devices is a serious issue that goes to the integrity of this prosecution, and we believe it merits a factual hearing, as set forth below.

Also, the defense has argued that for purposes of discovery obligations, Goldman and the Government are united in interest, as contemplated by the decision in <u>United States v. Stein</u>, 541 F.3d 130, 151 (2d Cir. 2008). If it is true that Goldman and the Government reached an agreement to keep Leissner's devices safely hidden from defendant Ng and his counsel by permitting them to remain with Goldman in Hong Kong rather than being in the physical possession of the prosecution in Brooklyn, then in addition to all the self-evident problems with such an arrangement, it would also make the defense's point that Goldman Sachs has certainly become part of the prosecution team such that the Government's discovery obligation extend to it as well.

    5.    <u>Request for a Hearing</u>

As Goldman Sachs is a party before this Court, and as the Government has made factual representations concerning evidence at the very center of this trial that are being disputed by counsel, and as the truthful answers to these questions impact on other aspects of motions already pending before the Court, including the defense contention that the Government and Goldman Sachs are unified in interest, as contemplated by <u>Stein</u>, we ask for a hearing on the following questions, among others:

BRAFMAN & ASSOCIATES, P.C.

1. When and how was the Government first informed of the existence of the Leissner Devices?

2. When and how was the Government first informed that the Leissner Devices were in the possession of Goldman Sachs?

3. When and how did the Government first request Goldman Sachs provide the Government with the devices?

4. When and how did Goldman Sachs first refuse to provide the Leissner Devices?

5. Who at the Government made the request for the Leissner Devices?

6. Who at Goldman Sachs denied the Government's request for the devices?

7. What was the Government's response to Goldman Sachs's refusal?

8. Did the Government ever raise the provisions of the DPA, which explicitly forbid Goldman Sachs from refusing a request for the Leissner Devices, with anyone at, employed by, retained by, or associated with Goldman Sachs? If so, who?

9. What was the response?

10. Did the Government ever explore terminating the DPA as a result of Goldman Sachs's refusal to provide the Leissner Devices to the Government?

11. If so, did the Government communicate that to Goldman Sachs?

12. Did the Government seek a subpoena for the Leissner Devices?

13. Did the Government at any time receive information from Goldman Sachs as to the substance or contents of the Leissner Devices?

14. Did anyone from the Government ever indicate to anyone at, employed by, retained by, or associated with Goldman Sachs that Goldman Sachs should keep the Leissner Devices and that Goldman Sachs did not have to provide them to the Government?

BRAFMAN & ASSOCIATES, P.C.

    15.    When did any such conversation between Goldman Sachs and the Government take place, and who was involved?

Thank you for your continued attention to this matter.

                            Respectfully submitted,

                            Marc A. Agnifilo, Esq.
                            Zach Intrater, Esq.
                            Teny R. Geragos, Esq.
                            Jacob Kaplan, Esq.

cc:    Counsel for the Government (via email)