

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

F. #2016R00467                              *271 Cadman Plaza East*
                                           *Brooklyn, New York 11201*

                                           December 27, 2021

<u>By ECF</u>

The Honorable Margo K. Brodie
Chief United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

          Re:    United States v. Ng Chong Hwa
                <u>Criminal Docket No. 18-538 (S-2) (MKB)</u>

Dear Chief Judge Brodie:

        The government respectfully submits this letter in response to the defendant's request to inspect the grand jury transcripts in the above-captioned case. (<u>See</u> Defendant's Letter dated December 21, 2021 (Dkt. No. 104)). Specifically, the defendant requests to review any portion of the grand jury transcripts for the original indictment and two superseding indictments in which the government instructed the grand jury as to the violations of Malaysian laws that serve as specified unlawful activities ("SUAs") for the money laundering conspiracy charged in Count Three. (<u>Id.</u>). The defendant contends that "if the Government added Malaysian statutory charges to the money laundering count" after the defendant was extradited, then the government purportedly "violated its agreement it reached with defense counsel to try the defendant only on 'the offenses charged in the Indictment returned on October 3, 2018.'" (<u>Id.</u> at 2-3). The defendant's reference to an "agreement" appears to be to an unsigned letter that the government sent to defense counsel on or about February 12, 2019 (the "February Letter," attached as Exhibit A to the Government's Sur-Reply in Opposition to the Defendant's Motion to Dismiss (Dkt. No. 59) ("Gov't MTD Sur-Reply")), which was previously discussed at length in connection with the defendant's motions to dismiss. (<u>See</u> Defendant's Reply in Support of Motion to Dismiss (Dkt. No. 58) ("Def. MTD Reply") at 3-4; Gov't MTD Sur-Reply at 3-16; Court's Opinion Denying Defendant's Motion to Dismiss (Dkt. No. 83) ("Opinion") at 27-40).

        Because the defendant has not and cannot show a particularized need to inspect the grand jury transcripts, as required under settled law, his request must be denied. In any event, even if the government's legal instructions to the grand jury with respect to violations of certain provisions of Malaysian law before the defendant's extradition were different from the legal instructions during one or both of the two grand jury presentations after his extradition, that would not warrant dismissal of Count Three. To the contrary, any claim that a change in legal instructions violated the rule of specialty fails for multiple reasons.

I.      Background

      A.      The Initial Indictment

On October 3, 2018, the grand jury charged the defendant with conspiracy to violate the anti-bribery provisions of the Foreign Corrupt Practices Act ("FCPA") (Count One), conspiracy to violate the internal accounting controls provisions of the FCPA (Count Two), and conspiracy to commit money laundering (Count Three); co-defendant Low Taek Jho ("Low") was also charged in Counts One and Three. (Dkt. No. 1 (the "Initial Indictment")). Specifically, Count Three charged the defendant and Low with conspiring to (a) "transport, transmit and transfer monetary instruments and funds from a place in the United States to and through a place outside the United States and to a place in the United States from and through a place outside the United States" with the intent to promote certain SUAs, namely, (i) violations of the anti-bribery and internal accounting controls provisions of the FCPA, and (ii) "offenses against a foreign nation involving the misappropriation, theft and embezzlement of public funds by and for the benefit of a public official, in violation of Malaysian Penal Law"; (b) transmit and transfer such funds knowing that conduct was designed, at least in part, to conceal and disguise proceeds from the SUAs; and (c) engage in monetary transactions within the United States valued at more than $10,000 derived from one or more of the SUAs. (Initial Indictment ¶ 65).

      B.      The Defendant's Extradition

On or about October 30, 2018, after the Initial Indictment was returned, Malaysian authorities arrested the defendant pursuant to a provisional arrest warrant. In or about November 2018, the United States made a formal request to Malaysia for the defendant's extradition, and Malaysia proceeded with extradition proceedings against the defendant.

In early 2019, the government and the defendant engaged in discussions regarding potential avenues for the defendant's transfer to the United States outside of the formal extradition process. (See Def. MTD Reply at 3-4). During those discussions, the defendant expressed concern that by coming to the United States other than through the formal extradition process, he might be giving up the rule of specialty protections afforded under the pertinent extradition treaty between the United States and Malaysia (the "Extradition Treaty"). (Id.). As part of his proposed voluntary appearance in the United States, the defendant requested that the government afford him the same protections as would be provided through formal extradition, asking for what he termed a "rule of specialty agreement." (See Email dated January 29, 2019, attached to Gov't MTD Sur-Reply as Exhibit C). The government agreed to offer rule of specialty protection congruent with that set out in the Extradition Treaty and, on or about February 12, 2019, sent defense counsel the unsigned February Letter, which tracked the Extradition Treaty's rule of specialty provision.

On or about February 15, 2019, defense counsel and the defendant appeared in court in Malaysia. Subsequently, in April 2019, the Malaysian government issued a warrant to temporarily surrender the defendant to the United States. On May 3, 2019, the defendant was released to the custody of United States law enforcement agents, who transported him to Brooklyn, New York, where he made his initial appearance in the Eastern District of New York on May 6, 2019. (Opinion at 18-19).

C.      The Defendant's Motion to Dismiss, the First Superseding Indictment, and the
        Rule of Specialty Challenge

On October 30, 2020, the defendant filed a motion to dismiss the Initial
Indictment.  (See Defendant's Motion to Dismiss (Dkt. No. 46)).  That motion sought, among
other things, dismissal of Count Three for allegedly failing to provide adequate notice of
multiple aspects of the offense, including specifying which Malaysian law provisions the
defendant was alleged to have violated.  (Id. at 56-83).  In response, the government explained
that the Initial Indictment satisfied Rule 7(c), as it was required to provide only the foreign
nation (here, Malaysia) and not the specific foreign statutes at issue.  (Government's Response to
the Defendant's Motion to Dismiss (Dkt. No. 54), at 39-41).  The government further advised
that, pursuant to Rule 26.1, at the appropriate time, it would provide the defendant with the
relevant elements of the specific Malaysian laws that it intended to demonstrate at trial that the
defendant had violated, and request jury instructions in line with those elements.  (Id.).

Subsequently, on December 9, 2020—while the defendant's motion to dismiss
was pending—the grand jury returned a superseding indictment (the "First Superseding
Indictment" (Dkt. No. 55)), which added certain factual allegations and amended charging
language, but contained no new counts against the defendant.  With respect to Count Three,
while the Initial Indictment identified as SUAs violations of Malaysian law that prohibited "the
misappropriation, theft and embezzlement of public funds by and for the benefit of a public
official," the First Superseding Indictment added language that, among other things, the SUAs
included Malaysian law violations that made it illegal to engage in the "bribery of a public
official."  (First Superseding Indictment ¶ 65).  The First Superseding Indictment also added
references to Title 18, United States Code, Section 1956(c)(7)(B)(iv), which is the subsection of
the money laundering statute that refers to offenses against a foreign nation involving "bribery of
a public official, or the misappropriation, theft, or embezzlement of public funds by or for the
benefit of a public official" as an SUA.  The United States confirmed with the Malaysian
government that changes to the First Superseding Indictment, including the changes to Count
Three, did not violate the rule of specialty.

After the First Superseding Indictment was returned, the defendant supplemented
his then-pending motion to dismiss to argue that the First Superseding Indictment violated the
rule of specialty.  Specifically, the defendant argued that his appearance in the United States was
governed by the February Letter, which was designed to provide rule of specialty protection, and
the additions to the First Superseding Indictment allegedly violated that letter.  (See Def. MTD
Reply at 3).  In response, the government explained that the February Letter did not control
because the defendant consented to his extradition, as opposed to waiving extradition, and that,
in any event, the First Superseding Indictment did not violate the rule of specialty, and thus did
not violate the February Letter.  (See Gov't MTD Reply 3-16).

D.      The Court's Ruling on the Defendant's Motion to Dismiss Count Three and the
        Rule of Specialty Challenge

On September 3, 2021, the Court issued a 160-page opinion that, among other
things, denied the defendant's motion to dismiss Count Three.  (See Opinion at 70-95).  With
respect to the defendant's claim that Count Three should be dismissed because the government
did not allege the "specific foreign law which is violated," the Court held that Count Three

provided the defendant with the required notice, and noted that it was "unaware of a case that dismissed an indictment for money laundering for failing to state the foreign statute which was violated." (Id. at 84-86).

In addition, the Court found that while the February Letter governed the defendant's appearance in the United States, the purpose of the letter was "to afford [the defendant] the rule-of-specialty protections he would have been provided through formal extradition." (Opinion at 36). As a result, the Court explained that the question before it was "whether the changes to the Indictment violate the rule-of-specialty protection [the defendant] bargained for." (Id.). The Court concluded that the First Superseding Indictment did not violate the rule of specialty because it was "substantially the same as the original Indictment and the statutory charges remain the same," and because the "Malaysian government has been apprised of the contents of the Superseding Indictment and ha[s] raised no objection." (Id. at 40).

E.      The Government's Provision of Proposed Jury Instructions on Malaysian Law

On November 8, 2021, pursuant to Rule 26.1 (and as stated in its prior filings), the government provided the defendant with proposed jury instructions on Malaysian law. These instructions detailed the laws of Malaysia that are offenses against a foreign nation that prohibit bribery of a public official as well as the misappropriation of property, and serve as certain of the SUAs for Count Three.

F.      The Second Superseding Indictment

On December 20, 2021, the grand jury returned a second superseding Indictment (the "Second Superseding Indictment"), which added and amended certain factual allegations, but did not add either new charging language or new counts against the defendant. (Dkt. No. 105). As is relevant here, the language of Count Three in the Second Superseding Indictment is identical to that in the First Superseding Indictment. The United States confirmed with the Malaysian government that changes to the Second Superseding Indictment, including that there were no changes to Count Three, did not violate the rule of specialty.

II.     Applicable Law

A.      Inspection of Grand Jury Minutes

It has long been the law that "[a]n indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on the merits." Costello v. United States, 350 U.S. 359, 363 (1956).

It has also long been the law that matters occurring before the grand jury are secret. See, e.g., United States v. Proctor & Gamble, 356 U.S. 677, 681 (1958). Defendants have no general right to inspect grand jury minutes, and any such disclosure requires a showing of a "particularized need." See Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 399-400 (1959); United States v. Moten, 582 F.2d 654, 662 (2d Cir. 1978). A defendant seeking disclosure of grand jury materials under this standard "bears a heavy burden." United States v. Schlegel, 687 F. App'x 26, 30 (2d Cir. 2017).

A district court may authorize the disclosure of grand jury minutes to a defendant where he "shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."  Fed. R. Crim. P. 6(e)(3)(E).  But because grand jury proceedings have a "presumption of regularity," Hamling v. United States, 418 U.S. 87, 139 n.23 (1974) (internal quotation marks omitted), a defendant is not entitled to review grand jury minutes merely because he claims his review may lead to a motion.  Rather, he must make "specific factual allegations of government misconduct."  United States v. Torres, 901 F.2d 205, 233 (2d Cir. 1990); see also United States v. Leung, 40 F.3d 577, 582 (2d Cir. 1994) ("A review of grand jury minutes should not be permitted without concrete allegations of government misconduct.").  This standard is equally applicable to a defendant's request for the Court to conduct in camera review of the minutes.  See United States v. Smith, 105 F. Supp. 3d 255, 260 (W.D.N.Y. 2015); United States v. Laster, No. 06 Cr. 1064 (JFK), 2007 WL 3070599, at *1 (S.D.N.Y. Oct. 19, 2007), aff'd, 313 F. App'x 369 (2d Cir. 2009).

B.      Legal Instructions in the Grand Jury

The government is not required to provide a grand jury with legal instructions. United States v. Lopez-Lopez, 282 F.3d 1, 9 (1st Cir. 2002); United States v. Warren,16 F.3d 247, 253 (8th Cir. 1994); see also United States v. Donald, No. 07 Cr. 6208L (MWP), 2009 WL 270181, at *5-6 (W.D.N.Y. Feb. 4, 2009); United States v. McDarrah, No. 05 Cr. 1182 (PAC), 2006 WL 1997638, at *9 (S.D.N.Y. July 17, 2006) ("under federal law, a prosecutor is not required to instruct the grand jury on the law").  However, an indictment may be dismissed if the grand jury was "misled or misinformed" as a result of "prosecutorial misconduct."  United States v. Brito, 907 F.2d 392, 394 (2d Cir. 1990).

C.      The Rule of Specialty

The "rule of specialty" generally provides that a criminal defendant brought to the United States through the procedures of an extradition treaty may be tried for only the offenses upon which he or she was extradited.  See United States v. Rauscher, 119 U.S. 407, 424 (1886); United States v. Masefield, No. 02 Cr. 441 (LAP), 2005 WL 236443, at *2 (S.D.N.Y. Feb. 1, 2005) (the rule of specialty "generally requires that an extradited defendant be charged only for the crimes on which extradition has been granted"); United States v. Levy, 25 F.3d 146, 159 (2d Cir. 1994); Fiocconi v. Attorney General, 462 F.2d 475, 481 (2d Cir. 1972).  The rule "is founded primarily on international comity and is premised on the notion that the requesting state must live up to whatever promises it made in order to obtain extradition because preservation of the institution of extradition requires the continuing cooperation of the surrendering state." Masefield, 2005 WL 236443, at *2 (internal quotation marks omitted; alteration incorporated); see United States v. Biba, No. 09 Cr. 836 (DLI), 2017 WL 11380497, at *2 (E.D.N.Y. Mar. 6, 2017) ("[T]he basis for the rule of specialty set forth in [Rauscher] is not a concern about protecting the rights of a defendant, but rather comity . . . .").

In applying the rule of specialty, the Second Circuit "has consistently found that the government is not limited strictly to charges described in an extradition warrant but rather may include [in a superseding indictment] additional facts and additional charges as long as the statutory charge is the same."  Masefield, 2005 WL 236443, at *2 (collecting cases); see Levy, 25 F.3d at 159; Fiocconi, 462 F.2d at 481-82 (no violation of the rule of specialty where defendant was first extradited on an indictment alleging a conspiracy spanning 1968 to 1969 and

5

subsequently charged by superseding indictment alleging a conspiracy spanning 1970 to 1972 and additional substantive offenses); United States v. Paroutian, 299 F.2d 486, 491 (2d Cir. 1962) (no violation of the rule of specialty where defendant was extradited from Lebanon on a conspiracy charge but tried on a different indictment in a different district alleging substantive narcotics charges); United States v. Evans, 667 F. Supp. 974 (S.D.N.Y. 1987) (no violation of the rule of specialty where the defendants where extradited from Bermuda on an indictment charging the defendants with the sale of arms to terrorists and Bermuda was not advised that the indictment was based on a sting operation, and the defendants were ultimately charged with conspiracies to sell arms to a putative Iranian buyer, who was actually an agent of the United States, because the charges were found to be of the "same character" as what was portrayed to Bermuda); see also United States v. Puentes, 50 F.3d 1567, 1576 (11th Cir. 1995) (no violation of the rule of specialty where superseding indictment returned after extradition extended the conspiracy period by three years); United States v. Andonian, 29 F.3d 1432, 1435-37 (9th Cir. 1994) (no violation of the rule of specialty where the superseding indictment added overt acts to conspiracy charge on which defendant was extradited, as well as substantive counts); United States v. Abello-Silva, 948 F.2d 1168, 1174-76 (10th Cir. 1991) (no violation of the rule of specialty where the superseding indictment returned after extradition contained additional facts).

III.    Discussion

A.    The Defendant Cannot Demonstrate a "Particularized Need" to Inspect the Grand Jury Minutes

As an initial matter, the defendant cannot meet his burden to show a "particularized need" to inspect the grand jury minutes because he cannot show that the government engaged in misconduct. See Leung, 40 F.3d at 582. In fact, the defendant has not made any allegation of misconduct, let alone the sort of "concrete allegation[]" required by settled law. Id. This begins and ends the inquiry. See Schlegel, 687 F. App'x at 30.

To the extent that the defendant seeks to back into demonstrating a "particularized need" by arguing that the indictment itself does not list specific provisions of Malaysian law, and therefore, he surmises, misconduct of some kind must have occurred, that is precisely the kind of speculation that is insufficient. In Smith, for example, the defendant argued that she had a "particularized need" to inspect the grand jury minutes because the element of knowledge or intent was necessary to sustain a conspiracy charge at trial and the indictment did not include detailed factual allegations relating to knowledge. 105 F. Supp. 3d at 261. As a result, the defendant speculated that the grand jury must not have been instructed on knowledge. Id. The court denied the motion, noting that the "only evidence offered . . . supporting the proposition that the grand jury was incorrectly instructed is the indictment itself," which the court had already found to be sufficient. Id. at 262. The court further observed that the defendant was "in effect, attempting to reargue her motion to dismiss the indictment based on its lack of allegations relating to her knowledge of the conspiracy, which was previously denied on three separate occasions." Id.

Here, too, the Court has already rejected the defendant's motion to dismiss Count Three and concluded that Count Three was properly alleged, including with respect to the SUAs. (Opinion at 85-86). The defendant cannot now use his unfounded belief that Count Three should have been more specific with respect to provisions of Malaysian law to demonstrate a

6

"particularized need" to review the grand jury minutes. See also United States v. Pike Indus., Inc., 575 F. Supp. 885, 890-91 (D. Vt. 1983) (denying motion to inspect grand jury minutes after concluding that the indictment sufficiently alleged a crime and defendants' belief that the grand jury must not have been instructed properly on the element of intent because the indictment was allegedly "nebulous" on that point did not create a "particularized need").

Moreover, the government had no obligation to instruct the grand jury on the law applicable to Count Three, let alone with respect to the specific provisions of Malaysian law the defendant violated in connection with Count Three. See, e.g., Lopez-Lopez, 282 F.3d at 9; United States v. Finnerty, No. 05 Cr. 397 DC, 2006 WL 2802042, at *9 (S.D.N.Y. Oct. 2, 2006) (denying motion to inspect grand jury minutes in securities case where the defendant contended that the government should have provided specific legal instructions to the grand jury, and finding that if the prosecutor had only read the relevant statute to the grand jury that would be sufficient); United States v. Trie, 23 F. Supp. 2d 55, 62 (D.D.C. 1998) (failure to instruct grand jury on different types of political donations in a case about illicit political contributions is a sufficiency of the evidence argument and not properly brought as a challenge to grand jury instructions). This makes sense because, as this Court already concluded, there is no requirement that the indictment itself cite specific provisions of Malaysian law that could serve as the basis for the charged SUA. (See Opinion at 85-86). It therefore follows that the grand jury need not have been instructed on such provisions.

B.    Any Potential Change in the Grand Jury Instructions on Malaysian Law After the Defendant's Extradition Would Not Violate Rule of Specialty

Even assuming arguendo that an inspection of the grand jury minutes would show that the grand jury was instructed (or not instructed) on certain provisions of Malaysian law before the defendant was extradited (i.e., in connection with the Initial Indictment) in a manner that was different from the instructions provided after he was extradited (i.e., in connection with either the First or Second Superseding Indictments), any change in those instructions would not violate the rule of specialty. Because the defendant could not establish a violation of the rule of specialty, he necessarily cannot make a showing of particularized need to inspect the grand jury minutes.

As described above, the Court already found that the government's obligations under the February Letter were coterminous with the rule of specialty, and already concluded that the changes to Count Three that were made between the Initial Indictment and the First Superseding Indictment did not violate the rule of specialty. (Id. at 36, 40). In addition, the government confirmed with the Malaysian government that the changes to Count Three that were made between the Initial Indictment and the First Superseding Indictment did not violate the rule of specialty. As is relevant here, there were no changes to the language of Count Three between the First Superseding Indictment and the Second Superseding Indictment. In short, the Second Superseding Indictment did not violate the rule of specialty.

Accordingly, it cannot be that any alleged difference in how the grand jury was or was not instructed with respect to provisions of Malaysian law between the Initial Indictment and the First and Second Superseding Indictments could possibly violate the rule of specialty. See, e.g., United States v. Tajideen, 319 F. Supp. 3d 445, 472-73 (D.D.C. 2018) (rejecting defendant's request to inspect the grand jury minutes based on an allegation that the government

provided incorrect information about the defendant's terrorist activities to the grand jury in connection with an indictment returned prior to extradition, when allegations of terrorism did not appear in a superseding indictment after the defendant was extradited, because the court had already rejected the defendant's rule of specialty challenge).  The question posed by the rule of specialty, as explained previously and above, is whether "the extraditing country would consider the offense actually tried" to be "separate" from the charge on which the defendant was extradited.  Paroutian, 299 F.2d at 490-91.  That question does not turn, in any way, on how the grand jury was or was not instructed.  To the contrary, the question is whether the defendant is to be tried for offenses "of the same character as the crime" for which he was extradited.  Fiocconi, 462 F.2d at 481; Masefield, 2005 WL 236443, at *2 (collecting cases).

Here, the defendant was extradited on an indictment where Count Three charged him with a money laundering conspiracy that included as SUAs violations of Malaysian law.  He will be tried in connection with the Second Superseding Indictment, which charges a money laundering conspiracy that includes as SUAs violations of Malaysian law.  The defendant will thus plainly be tried for offenses "of the same character as the crime" for which he was extradited (as the government of Malaysia has agreed).

IV.     Conclusion

The defendant's request should be denied.

Respectfully submitted,

BREON PEACE
United States Attorney

By:     s/
        Alixandra E. Smith
        Drew G. Rolle
        Dylan A. Stern
        Assistant U.S. Attorneys
        (718) 254-6370

DEBORAH L. CONNOR
Chief, Money Laundering and Asset
Recovery Section, Criminal Division
U.S. Department of Justice

JOSEPH BEEMSTERBOER
Acting Chief, Fraud Section
Criminal Division
U.S. Department of Justice

s/
Jennifer E. Ambuehl
Trial Attorney

s/
Brent Wible
Trial Attorney