# BRAFMAN & ASSOCIATES, P.C.

ATTORNEYS AT LAW

256 FIFTH AVENUE, 2ND FLOOR

NEW YORK, NEW YORK 10001

TELEPHONE: (212) 750-7800

FACSIMILE: (212) 750-3906

E-MAIL: ATTORNEYS@BRAFLAW.COM

BENJAMIN BRAFMAN
———

MARK M. BAKER
OF COUNSEL

MARC A. AGNIFILO
OF COUNSEL

ZACH INTRATER
OF COUNSEL

ANDREA L. ZELLAN

JACOB KAPLAN

TENY R. GERAGOS
ADMITTED IN NY & CA

STUART GOLD

January 4, 2022

VIA ECF

The Honorable Margo K. Brodie
Chief United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> Re:    United States v. Ng Chong Hwa a.k.a Roger Ng, 18 Cr. 538 (MKB)

Dear Chief Judge Brodie:

The defense writes this letter in response to the Government's letter dated December 27, 2021 in which the Government errantly states that the defense requests to inspect Grand Jury transcripts. (Dkt. 106.) We do not seek to inspect Grand Jury transcripts, and we never asked the Government to review Grand Jury transcripts. Rather, we asked the Government repeatedly to tell us what specific Malaysian statutes, if any, the Grand Jury voted as part of Count Three. The defendant comes to the Court only after having raised this issue with the Government – first before the Second Superseding Indictment was returned, and then again after the Second Superseding Indictment – but the Government has refused to tell the defense what Malaysian crimes the Grand Jury voted on, claiming that to inform the defendant of the actual crimes he is charged with would violate Fed. R. Crim. P. 6(e).

In early November 2021, while the First Superseding Indictment was the operative charging instrument, the Government provided the defendant with proposed jury instructions for three Malaysian criminal statutes that the Government stated comprised part of the "specified unlawful activity" in Count Three. This was important, because for the Government to prove Count Three, Roger Ng must have conspired with others to engage in transactions involving "specified unlawful activity."  In turn, "specified unlawful activity" include "an **offense against a foreign nation involving – bribery of a public official, or the misappropriation, theft, or**

BRAFMAN & ASSOCIATES, P.C.

embezzlement of **public funds** by or for the **benefit of a public official**." See 18 United States Code, Section 1956(c)(7)(B)(iv) (emphasis added).

The problem for the Government was immediately apparent: Their proposed jury instructions included at least one Malaysian law that could not legally serve as a predicate offense under § 1956(c)(7)(B)(iv): A plain Malaysian possession of stolen property statute. In other words, the Government was about to proceed to trial on Count Three based, in part, on a statute that criminalizes simple possession of stolen property in Malaysia, without such stolen property being related to public funds and for the benefit of a public official, as required by the definition of "specified unlawful activity" under the Money Laundering statute.

Upon realizing that the Government was intending to proceed to trial on a theory that the defendant committed money laundering based on funds derived from a Malaysian crime that did not fit the definition of "specified unlawful activity," the defense asked the prosecution what Malaysian statutes the Grand Jury voted as part of the Money Laundering count. We did not ask for Grand Jury material at all. Rather, we asked for a representation by the prosecution as to what "specified unlawful activity" the grand jury charged as part of Count Three. The Government did not answer that question. After a few days, the answer the prosecution gave was that it could not tell us what Malaysian statutes, if any, had been voted by the Grand Jury because to tell us would be to violate Rule 6(e). However, the Government proposed a remedy: it would give the materials showing the Grand Jury vote to the Court and then the Court would decide whether to provide that material to the defense so that the defense could see what Malaysian statutes had been voted by the Grand Jury. Because the Government proposed a resolution that was acceptable – while dilatory – the defense did not immediately file a motion or otherwise involve the Court.

However, the Government did not do what it said it would do. It did not give the information to the Court. Rather, after the defense raised, in good faith and informally, a potential fundamental error in the Superseding Indictment, the Government ran back in the Grand Jury on the eve of trial and may have had the Grand Jury vote for the first time that the defendant violated particular Malaysian statutes as part of Count Three. What is most troubling about this is that the defense had been discussing this issue in good faith with the prosecutors in an attempt to jointly solve a serious potential constitutional issue. However, the Government took the information, presumably used it in the Grand Jury, and is now refusing to tell the defense how, if at all, Count Three has changed in terms of any specific Malaysian statutes that comprise "specified unlawful activity."

In terms of how, if at all, the Government changed the Second Superseding Indictment concerning the money laundering offense, there are only two possibilities. First, it changed the Second Superseding Indictment by having the Grand Jury vote on specific Malaysian statutes comprising the "specified unlawful activity" for the Money Laundering Count. This would mean that up until this most recent Superseding Indictment, the Government had the Grand Jury vote only that foreign statutes had been violated, without having the Grand Jury vote that certain particular Malaysian statutes were the ones violated. When the defense pointed out that the Grand Jury would have had to vote on the particular Malaysian statutes that would comprise

2

BRAFMAN & ASSOCIATES, P.C.

Count Three, the prosecutors realized that they had violated the defendant's Fifth Amendment right to be tried only on charges voted by the Grand Jury.  To conceal that violation, they refused to tell the defense what "specified unlawful activity" the Grand Jury had voted, opting instead to hide behind Rule 6(e) and claim, incredibly, that to inform the defendant of the specific charge against him would violate Grand Jury secrecy. What the Government was actually doing all along was biding time so that it could fix the Fifth Amendment problem it had created, and which it was concealing from the defendant.

The second possibility is that the Government did not have the Grand Jury vote on any specific Malaysian statutes and the prosecutors continue to believe that they – the prosecutors themselves – can now rummage through the Malaysian statute books and pick out the Malaysian statutes that the defendant violated as part of the "specified unlawful activity" of Count Three.

Either way, the defense needs information as to what the Grand Jury voted. This is not Grand Jury information under Rule 6(e) at all. Rather, this is information that advises the defendant of what the Grand Jury voted as part of the Indictment filed against him.

If the Grand Jury does not find each element of an offense, the Indictment is defective under the Fifth Amendment. The Fifth Amendment "requires that the grand jury have considered and found all elements to be present."  United States v. Hooker, 841 F.2d 1225, 1230 (4th Cir. 1988).  Since "a grand jury must consider and find to be present all the necessary elements of the crime charged, an indictment must reflect the grand jury's findings as to all necessary elements of the crime in order to be constitutionally sufficient."  Almond v. United States, 854 F. Supp. 439, 442 (W.D. Va. 1994).  This is because, as Justice Scalia noted in his dissent in United States v. Resendiz-Ponce, "[t]o indict for commission of a completed offense, the prosecutor must persuade the grand jury that the accused's acts and state of mind fulfilled all the elements of the offense."  549 U.S. 102, 115 (2007) (Scalia, J., dissenting).  Here, neither the original Indictment, nor the First Superseding Indictment, nor the Second Superseding Indictment, explicitly set forth which Malaysian statute was allegedly violated in Count Three.  The Government's only statement to the defense on the matter included Malaysian statutes that could not, by definition, serve as Specified Unlawful Activities.  The logical conclusion to draw is that the Indictment is defective because the Grand Jury did not hear what the Government refuses to tell the defendant.

But this is not the Government's only problem here. An indictment that is defective because an element was not presented to a Grand Jury cannot be changed after the fact either by a prosecutor or a court. To do so would be an unconstitutional variance from the indictment that the Grand Jury voted, violating the defendant's Fifth Amendment rights as well as his Sixth Amendment right to be informed of the nature and cause of the accusation. This concept is ancient, and predates both the Constitution and the United States itself: "Indictments are found upon the oaths of a jury, and ought only to be amended by themselves." Rex v. Wilkes, 4 Burrow, 2527 (1770) (quoted by Ex parte Bain, 121 U.S. 1, 6 (1887) (overruled on other grounds

BRAFMAN & ASSOCIATES, P.C.

by <u>United States v. Cotton</u>, 535 U.S. 625 (2002)). After the Sixth Amendment codified this ancient right, the Supreme Court has recognized it consistently: "there is the positive and restrictive language of the great fundamental instrument by which the national government is organized, that no person shall be held to answer for such a crime, unless on a presentment or indictment of a grand jury. . . .The authorities upon this subject are numerous and unambiguous." <u>Bain</u>, 121 U.S. at 6.

If the Government in fact did not present specific Malaysian statutes to the Grand Jury, and is now permitted to get away with concealing that failure, it would amount to a constructive amendment of the Second Superseding Indictment, and the findings of the petit jury will vary from what was presented to the Grand Jury. This cannot be allowed. "[A] court cannot permit a defendant to be tried on charges that are not made in the indictment against him." <u>Stirone v. United States</u>, 361 U.S. 212, 216–17 (1960). The most fundamental values are at stake here, and their importance cannot be overstated: "[A]fter the indictment was changed it was no longer the indictment of the grand jury who presented it. Any other doctrine would place the rights of the citizen, which were intended to be protected by the constitutional provision, at the mercy or control of the court or prosecuting attorney." <u>Bain</u>, 121 U.S. at 13.

<u>Stirone</u>, presented a situation remarkably similar, analytically, to the situation here. That Hobbs Act indictment alleged the defendant interfered with interstate commerce with respect to the interstate shipment of sand and other materials into Pennsylvania from other places for use in erecting a steel mill. The Supreme Court held that it was error to admit, as the District Court had, evidence that the interstate commerce element could be met in one of two different alternative ways: either the way listed in the indictment or by evidence showing a different interstate commerce stream: that the products made in the mill built with the sand would, in turn, themselves be shipped in interstate commerce. <u>See id.</u> at 217.

Therefore, the key issue in <u>Stirone</u> – and here – is what exactly the Grand Jury actually found. "The grand jury which found this indictment was satisfied to charge that Stirone's conduct interfered with interstate importation of sand. But neither this nor any other court can know that the grand jury would have been willing to charge that Stirone's conduct would interfere with interstate exportation of steel from a mill later to be built." <u>Id.</u> at 217. In addition, "it cannot be said with certainty that with a new basis for conviction added, Stirone was convicted solely on the charge made in the indictment the grand jury returned." <u>Id.</u> The alternate predicate for conviction amounted to an amendment of the indictment, "[a]nd the addition charging interference with steel exports here is neither trivial, useless, nor innocuous." <u>Id.</u> The variance "in the sense of a variation between pleading and proof . . . here destroyed the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury. Deprivation of such a basic right is far too serious to be treated as nothing more than a variance and then dismissed as harmless error." <u>Id.</u>

<u>Stirone</u> is on all fours with the situation that the defendant fears is taking place here. In <u>Stirone</u>, there were two different potential means of interfering in interstate commerce. Here, there are two (or more) different Malaysian statutes whose violation would have to be

4

BRAFMAN & ASSOCIATES, P.C.

demonstrated took place, and in furtherance of which the financial transactions allegedly took place. This is no mere technicality – <u>Stirone</u> reversed the appellant's conviction on this basis alone.

It cannot be the prosecutor's choice <u>See</u> <u>Stirone</u>, 361 U.S. at 217-18. The defendant is not asking for Grand Jury materials; we are not even – at this point – asking for <u>in camera</u> review by the Court. All we would like to know is what charge(s) we need to be prepared to defend against.

Accordingly, we are asking the Court to direct the Government to answer six simple questions, none of which involve Grand Jury information under Rule 6(e):

- For the Second Superseding Indictment, did the Grand Jury vote that the defendant violated specific Malaysian statutes as part of specified unlawful activity in Count Three?

- If so, what are the Malaysian statutes the Grand Jury voted?

- For the First Superseding Indictment returned in December 2020, did the Grand Jury vote that the defendant violated specific Malaysian statutes as part of specified unlawful activity in Count Three?

- If so, what are the Malaysian statutes the Grand Jury voted?

- For the initial Indictment, did the Grand Jury vote that the defendant violated specific Malaysian statutes as part of specified unlawful activity in Count Three?

- If so, what are the Malaysian statutes the Grand Jury voted?

Nothing about the answers to those questions violate Rule 6(e). To be clear, the Government continues to refuse to tell the defendant what the Grand Jury has charged him with as part of the Money Laundering count. Our trial is scheduled for this month and the defendant has not yet been informed of what, if any, Malaysian statutes the Grand Jury voted as part of the specified unlawful activity of Count Three. Moreover, to the extent that the Government provided counsel with a Malaysian statute concerning simple possession of stolen property, which cannot be considered "specified unlawful activity," the defense is concerned that the Government intends to proceed to trial based on foreign statute violations that plainly cannot be part of the Money Laundering offense. It is regrettable that the defense must go to the Court to get this information, but, as the Court sees from the Government's recent filing, the prosecution simply refuses to provide it.

BRAFMAN & ASSOCIATES, P.C.

Thank you for your consideration.

Respectfully submitted,

Marc A. Agnifilo, Esq.
Zach Intrater, Esq.
Teny R. Geragos, Esq.
Jacob Kaplan, Esq.

cc:    Counsel for the Government (via ECF and email)