UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

- v. -

NG CHONG HWA a.k.a. Roger Ng,

                        Defendant.

No. 18-CR-538 (S-2) (MKB)

**ORAL ARGUMENT REQUESTED**

**DEFENDANT ROGER NG'S MOTION TO ALLOW TESTIMONY VIA
CCTV AND SEEKING INFORMATION RELATING TO COUNT THREE**

**BRAFMAN & ASSOCIATES, P.C.**
256 Fifth Avenue, 2nd Floor
New York, NY 10001
(212) 750-7800

Marc A. Agnifilo, Esq.
Zach Intrater, Esq.
Teny R. Geragos, Esq.
Jacob Kaplan, Esq.
        *Of Counsel*

*Attorneys for Defendant Roger Ng*

**Table of Contents**

I.   PRELIMINARY STATEMENT ................................................................................ 1

II.  THE COURT SHOULD PERMIT ████████ AND ██████████ TO
TESTIFY REMOTELY VIA CLOSED CIRCUIT TELEVISION ............................................ 1

   A.  Applicable Law ........................................................................................... 1

   B.  Analysis ....................................................................................................... 4

      1.  The Witnesses Are Unavailable ............................................................. 4

      2.  The Proffered Testimony is Material ..................................................... 6

      3.  The Proffered Testimony Is Necessary to Prevent a Failure of Justice ....................... 8

III. THE GOVERNMENT SHOULD INFORM THE DEFENDANT IF THE GRAND JURY
VOTED SPECIFIC VIOLATIONS OF MALAYSIAN LAW AS PART OF COUNT THREE .. 9

   A.  The Malaysian Statutes Raised by the Government ........................................ 11

IV.  CONCLUSION .............................................................................................. 14

## I.   PRELIMINARY STATEMENT

Defendant Roger Ng respectfully submits two motions *in limine*. First, Roger Ng stands indicted on charges for alleged conduct that occurred in Southeast Asia, more than 9000 miles away from the Eastern District of New York. Not surprisingly, the pending trial will require the testimony of foreign witnesses. While many of government's international witnesses might prefer not to travel to the United States during a pandemic, there are two witnesses integral to the defense who are currently prohibited from traveling to Brooklyn to testify in person. The Malaysian government has prohibited ███████████████████████ and ███████████████████ ███████████ from leaving the country. Consequently, Mr. Ng is constrained to move this Court for an Order allowing these crucial witnesses to testify at trial via closed-circuit television ("CCTV") from Malaysia.

Second, as discussed at the court appearance on January 7, 2022, Roger Ng objects to the government proceeding to trial on Count Three without informing Mr. Ng of what, if any, specific Malaysian statutes the Grand Jury voted as part of the specified unlawful activities ("SUAs") charged in Count Three. The defense is not seeking to relitigate the Court's denial of Mr. Ng's motions to dismiss. We respect the Court's decision on that matter, of course. Nor is the defense seeking Grand Jury material in violation of Fed. R. Crim. P. 6(e). The defense is simply trying to determine what Mr. Ng is actually charged with.

Mr. Ng addresses these arguments in turn.

## II.   THE COURT SHOULD PERMIT ████████████████████████████ TO TESTIFY REMOTELY VIA CLOSED CIRCUIT TELEVISION

### A.   <u>Applicable Law</u>

The Supreme Court has long recognized that defendants' "right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a

defense." *Washington v. Texas*, 388 U.S. 14, 19 (1967). The Court further noted that "an accused . . . has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law." *Id.*

Courts have an "inherent authority to permit testimony by videophonic means . . . ." *United States v. Akhavan*, 523 F. Supp. 3d 443, 452 (S.D.N.Y. 2021); *United States v. Avenatti*, Crim. No. 19-374, 2022 WL 103494, at *1 (Jan. 11, 2022). The Second Circuit addressed this issue in *United States v. Gigante*, 166 F.3d 75, 79–80 (2d Cir. 1999), where it upheld the introduction of CCTV testimony from a remote location even for a government witness where the witness was unavailable to testify in person due to health reasons. While cautioning that "[c]losed-circuit television should not be considered a commonplace substitute for in-court testimony by a witness," the Second Circuit noted that "[u]pon a finding of exceptional circumstances, . . . a trial court may allow a witness to testify via two-way closed-circuit television when this furthers the interest of justice." *Id.* at 81. This "exceptional circumstances" standard was applied to the CCTV testimony of a government witness. The Court's authority is, of course, bolstered further where it is the defense, and not the government, who seeks to introduce testimony via CCTV, as the defense does not have to contend with the Sixth Amendment's Confrontation Clause. *See United States v. Donziger*, Crim. No. 19–561 (LAP), 2020 WL 4747532, at *3 (S.D.N.Y. Aug. 17, 2020) (quoting *Coy v. Iowa*, 487 U.S. 1012, 1016 (1988)) ("Permitting a prosecution witness to testify remotely implicates [the defendant's] rights under the Sixth Amendment's Confrontation Clause . . . which ordinarily 'guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact'"); *see generally*, *e.g.*, *Crawford v. Washington*, 541 U.S. 36, 42 (2004) (describing Confrontation Clause as a "bedrock procedural guarantee" that "applies to both federal and state prosecutions").

District courts in this and other circuits have followed *Gigante*'s rationale to allow defendants to obtain testimony from witnesses via CCTV when the witness is otherwise unavailable to testify in person – even under circumstances where the hurdles to live testimony were lower than in this case. *See, e.g.*, *United States v. El Gammal*, Crim. No. 15-588 at Dkt. 146 (S.D.N.Y. Jan. 6, 2017) (allowing live CCTV testimony of a defense expert who was unavailable to testify in person because he was already committed to testifying in a capital trial in Georgia); *United States v. Guild*, Crim. No. 07-404, 2008 WL 191184 (E.D. Va. Jan. 17, 2008) (finding the defense put forward adequate measures and compelling circumstances to take CCTV testimony where there was a great cost associated with bringing foreign witnesses to the U.S. and much of the charged conduct took place overseas); *United States v. Smith*, Crim. No. 09-100, 2010 WL 5211498 (W.D.N.C. Dec. 16, 2010) (allowing a doctor located in Oklahoma to testify for the defense via CCTV in a trial in North Carolina due to the cost of travel).

For government witnesses to testify via CCTV, the *Gigante* court noted that the use of CCTV "must be carefully circumscribed," and applied the "exceptional circumstances" test that applies to a Fed. R. Crim. P. 15 deposition. *See Gigante*, 166 F.3d at 80 (noting that "exceptional circumstances" for CCTV purposes has the same meaning as in the context of a Fed. R. Crim. P. 15 deposition). Under Rule 15, the movant "must show that (1) the prospective witness is unavailable for trial, (2) the witness' testimony is material, and (3) the testimony is necessary to prevent a failure of justice." *United States v. Cohen*, 260 F.3d 68, 78 (2d Cir. 2001). Again, because of the Confrontation Clause implications, the standard for a defense witness is certainly no more stringent than for that of a government witness, and may well be more lenient. But even applying the "exceptional circumstances" test, as we do below, the testimony of █████████ and ████ ████████ via CCTV is plainly appropriate.

### B. **Analysis**

Given the exceptional circumstances facing ███████ and ███████, Mr. Ng is entitled have

these two defense witnesses testify via CCTV from Malaysia.

1. The Witnesses Are Unavailable

"Unavailability is to be determined according to the practical standard of whether under

the circumstances the [movant] has made a good-faith effort to produce the person to testify at

trial." *United States v. Villar*, 568 F. Supp. 2d 429, 438 (S.D.N.Y. 2008) (quoting *United States v.*

*Johnpoll*, 739 F.2d 702, 709 (2d Cir. 1984)). "'Moreover, [t]he lengths to which the [movant] must

go to produce a witness before it may offer evidence of an extra-judicial declaration is a question

of reasonableness." *Johnpoll*, 739 F.2d at 709 (quoting *California v. Green*, 399 U.S. 149, 189 n.

22 (1970) (Harlan, J., concurring)).

As a general rule, witnesses are unavailable when they are beyond the subpoena power of

the court and have stated an unwillingness or inability to appear at the trial. *See Johnpoll*, 739 F.2d

at 709 (four Swiss nationals who refused to come to the United States were unavailable pursuant

to Rule 15); *United States v. Sindona*, 636 F.2d 792, 803 (2d Cir. 1980) (four witnesses in Italy

who were not subject to subpoena and who either refused to testify or had failed to obtain necessary

travel documents were all unavailable under Rule 15); *United States v. Grossman*, Crim. No. 03-

1156, 2005 WL 486735, at *3–4 (S.D.N.Y. Mar. 2, 2005) (witness in Canada, not subject to

subpoena, was unavailable under Rule 15 because he specifically declined to appear in New York

at the trial, despite defendant's offer to pay travel expenses).

4

In the present case, both ███ and ████ are prohibited from traveling to the United States for trial. As counsel has confirmed with █████ Malaysian attorney[1] and ████ himself, both ████ and ████ are prohibited by the Malaysian government from leaving Malaysia—making travel to Brooklyn for trial impossible without breaking the law.[2] Consequently, absent the Department of Justice intervening and arranging with the Malaysian government to allow ████ and ████ to travel, they will be unavailable to testify at trial.

Moreover, even if the Malaysian ban was somehow lifted, ████ would still have profound concerns with flying to Brooklyn for trial because the government has listed her a co-conspirator in this case. Consequently, absent a safe passage guarantee by the government, ████ continues to be unavailable due to her legitimate concern of being arrested once she arrives in the United States.

Finally, ████ also has significant COVID concerns about traveling to Brooklyn for trial during the highly contagious Omicron outbreak. As the sole caretaker for her seriously ill elderly parents and her nine-year-old unvaccinated daughter, ████ would be risking the health and perhaps even the lives of her parents should she unwittingly bring COVID home with her from Brooklyn. The flight to New York from Malaysia takes 24 hours. Assuming ████ testifies for one day, she would then fly another 24 hours back to Malaysia. Once she arrives back in Malaysia, ████ would be required to quarantine for 5 days before being allowed back to her home. (Agnifilo Affirmation ¶ 7.) This presents an extremely dangerous situations for her parents—one of whom is undergoing treatment for leukemia and the other who suffers from extreme vertigo and

---

[1] "Courts may accept the assertions of counsel on the facts relating to unavailability, as long as those assertions are neither conclusory nor speculative." *Grossman*, 2005 WL 486735, at *3 (citations omitted).

[2] Although ████ and ████ are not charged with a crime in Malaysia, the Malaysian government has nevertheless restricted their travel due to their close relationship to Mr. Ng.

needs help moving. Without ███ to care for her child and her frail and elderly parents, the three of them would be without care for a minimum of 11 days (four days total in transit, two days at least in the Eastern District to prepare to testify, and five days at a Malaysian government quarantine center). Accordingly, the Court should find these "exceptional circumstances" warrant live two-way circuit testimony because it "furthers the interests of justice." *United States v. Donziger*, Crim. No. 19–561, 2020 WL 5152162, at *3 (S.D.N.Y. Aug. 31, 2020).

2.    The Proffered Testimony is Material

Testimony is material if it is "highly relevant to a central issue in the case." *United States v. Vilar*, 568 F. Supp. 2d 429, 440 (S.D.N.Y. 2008). In addition, the testimony must "challenge central aspects of the government's allegations." *United States v. Grossman*, Crim. No. 03–1156, 2005 WL 486735, at *4 (S.D.N.Y. Mar. 2, 2005); *see also United States v. Buck*, 271 F. Supp. 3d 619, 623 (S.D.N.Y. 2017).

a.    ███

Here, ███ testimony is highly relevant to several central issues at trial. First, the government has alleged that the $35 million the cooperating witness and his then-wife transferred to an account owned by ███ family was Mr. Ng's share of the crime proceeds. ███ will testify directly on that issue. Her testimony will directly contradict the government's allegations regarding the $35 million – perhaps the single central issue in the case. Moreover, as this money was sent to ███ family, not Mr. Ng, she has greater knowledge of the facts surrounding these transfers than Mr. Ng does. Accordingly, this is not a situation where the proffered evidence is not material because the defendant could provide the same testimony as the proffered witness. *C.f., e.g., Buck*, 271 F. Supp. 3d at 623 (finding the proposed Rule 15 evidence was not material because the defendant could provide the same evidence by testifying himself).

6

Second, the government is seeking to introduce recorded and unrecorded conversations between ██████ and the cooperating witness as consciousness of guilt evidence against Mr. Ng. Because it was ██████ not Mr. Ng—who had these conversations with the cooperating witness, she is the only witness from the defense side who can testify about the true nature of these communications.

Third, the Second Superseding Indictment ("SSI") alleges as an overt act of FCPA conspiracy (Count One) that ██████ purchased jewelry for 1MDB Official #3. ██████ testimony will directly contradict the government's claim that this purchase was a bribe to a 1MDB official. Again, only ██████ not Mr. Ng, was involved in this alleged purchase and only she can testify about it, not Mr. Ng.

Accordingly, for these reasons, ██████ testimony is material to the defense at trial.

       b.   ██████

██████ is a material witness because he will testify about the true nature of the information *he* (not ██████) gave to UBS banker ██████ about the sources of a portion of the critical $35 million. As the Court will recall, it has found the following statements by ██████, to be business records:

- The May 2012 Statement:



- The 2013 Statement ██████

███████████████████████████████████████"

(1/7/2022 Tr. at 26.)

Given the Court's ruling that these records are business records (which the defense has repeatedly maintained are not trustworthy), it is crucial that the defense call ██████.  He is the only witness who can testify that he was the person who interacted with ██████g about these transfers, not his elderly mother, and informed ██████ of the true source of the critical funds. His testimony, and only his testimony, will establish the truth of what was actually said to ██ ████

3.    The Proffered Testimony Is Necessary to Prevent a Failure of Justice

"The principal consideration guiding whether the absence of a particular witness's testimony would produce injustice is the materiality of that testimony to the case." *United States v. Drogoul*, 1 F.3d 1546, 1552 (11th Cir. 1993). Here, without ██████ testimony, the jury will only hear the government's version of events relating to the $35 million in transfers, the communications between ██████ and the cooperating witness, and ██████ alleged bribery of a 1MDB official. As such, ██████ is an integral defense witness who can provide material, exculpatory evidence and challenge several government allegations. Given ██████ unavailability and the material nature of her testimony, preventing her from testifying via CCTV would be an injustice. *See United States v. Khan*, Crim. No. 06-255 (DLI), 2008 WL 2323375, at *4 (E.D.N.Y. June 2, 2008) ("The final factor - the necessity of the testimony to prevent a failure of justice - is likely satisfied when the first two factors are met.").

Because nearly all the alleged criminal conduct in this case occurred on the other side of the world, Mr. Ng has no U.S.-based witnesses who can provide testimony on his behalf. *See United States v. Guild*, Crim. No. 07-404, 2008 WL191184, at *4 (E.D. Va. Jan. 17, 2008) ("Given

that the alleged occurrences giving rise to the allegations in the Indictment occurs overseas, the Court is sensitive to the need of Defendant to present foreign nationals as witnesses."). Consequently, for all the reasons stated above, this Court should allow ███████ to testify live at trial via CCTV from Malaysia.

## III.   THE GOVERNMENT SHOULD INFORM THE DEFENDANT IF THE GRAND JURY VOTED SPECIFIC VIOLATIONS OF MALAYSIAN LAW AS PART OF COUNT THREE

Count Three of the SSI charges Mr. Ng with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).  One category of SUA that the SSI alleges in Count Three is "an offense against a foreign nation involving . . . bribery of a public official, or the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official." 18 U.S.C. § 1956(c)(7)(B).  (*See* SSI at 32.)  The government has steadfastly refused to affirmatively state or otherwise indicate that a Grand Jury heard, voted on, or was instructed on any specific Malaysian statute.

The answer to this question does not depend on disclosing Grand Jury material.  Rather, the government can submit a Bill of Particulars or other binding document confirming that the Grand Jury voted violations of particular Malaysian statutes, and indicating what those particular statutes are.

If, on the other hand, the Grand Jury did not vote violations of specific statutes, the government can so confirm.  The problem with the record as it exists is that this Court, and indeed any reviewing Court, does not know if the Grand Jury voted specific Malaysian statutes as part of the alleged SUAs in Count Three, or, on the other hand, if the Grand Jury did not so vote.

If the answer is that the Grand Jury did not vote specific Malaysian statutes as part of the specified unlawful activity, the government must so inform defense counsel so that counsel may, if necessary, raise Fifth Amendment issues with the Court prior to trial.  If the Grand Jury did vote

9

specific Malaysian statutes, the government must so inform defense counsel so that counsel may, if necessary, raise issues with whether the Malaysian statutes voted by the Grand Jury satisfy the parameters of § 1956(c)(7)(B).

This is not a challenge to the sufficiency of the SSI's notice to the defendant under the Sixth Amendment. This is a different challenge. First, we are not asking to dismiss Count Three. We respect the Court's ruling on our motion to dismiss, and do not seek to relitigate that here. Second, the inquiry we are making here does not involve the "notice" clause of the Sixth Amendment, but rather the "Grand Jury" clause of the Fifth Amendment. A criminal defendant should not be forced to proceed to trial and have a petit jury pass on the elements of charges – in this case Malaysian statutes – that a Grand Jury did not vote. This is because the Fifth Amendment guarantees that a defendant can only be tried on a charge that was first voted by a Grand Jury.

The Fifth Amendment "requires that the grand jury have considered and found all elements to be present." *United States v. Hooker*, 841 F.2d 1225, 1230 (4th Cir. 1988). Since "a grand jury must consider and find to be present all the necessary elements of the crime charged, an indictment must reflect the grand jury's findings as to all necessary elements of the crime in order to be constitutionally sufficient." *Almond v. United States*, 854 F. Supp. 439, 442 (W.D. Va. 1994). This is because, as Justice Scalia noted in his dissent in *United States v. Resendiz-Ponce*, "[t]o indict for commission of a completed offense, the prosecutor must persuade the grand jury that the accused's acts and state of mind fulfilled all the elements of the offense." 549 U.S. 102, 115 (2007) (Scalia, J., dissenting); *see also Stirone v. United States*, 361 U.S. 212, 216–17 (1960) ("[A] court cannot permit a defendant to be tried on charges that are not made in the indictment against him."). This is true regardless of the role the "charge" plays in the indictment, whether as a final

substantive charge, the object charge of a conspiracy or a charge comprising a SUA as part of a money laundering count.

The government has submitted a proposed jury instruction on the Malaysian law issue to the defense, and we list below the specific Malaysian statutes that the government contends will be submitted to the petit jury as part of the final jury instructions in this case. Again, the problem is that, we fear, the Grand Jury did not hear or pass upon any of these statutes. If it did not, Roger Ng cannot be tried on a violation of these statutes.

**A.  <u>The Malaysian Statutes Raised by the Government</u>**

Currently, the government has asked the defense to opine on jury instructions for the following Malaysian statutes:

(1) a violation of Section 21 of the Malaysian Anti-Corruption Act, prohibiting the bribery of Malaysian public officers;

(2) a violation of Section 22 of the Malaysian Anti-Corruption Act, prohibiting the bribery of a foreign (non-Malaysian) public officer;

(3) a violation of Section 28 of the Malaysian Anti-Corruption Act, prohibiting the attempt, preparation, abetment and conspiracy of any offense under the Act;

(4) a violation of Malaysian Penal Law section 403, prohibiting the dishonest misappropriation of any property; and

(5) a violation of Section 109 of the Malaysian Penal Code, punishing anyone who abets any offense under the Code.

As we indicated during our court conference from earlier today (January 26, 2022), we are in the process of working with the government in minimizing the disagreements between the parties as to jury instructions. We fully intend to do the same thing with respect to the jury charges concerning these Malaysian criminal offenses given our impending trial. However, the defense wishes to make clear that by agreeing to work with the government in crafting jury charges, including charges on the Malaysian statutes, the defense is not waiving its argument that under the

Fifth Amendment, the government may not try the defendant on charges not previously voted by a Grand Jury. There is nothing in the Indictment, the Superseding Indictment or the SSI indicating that the Grand Jury voted violations of any of these five Malaysian statutes as part of the SUA for Count Three – since none of those statutes are listed in any of these charging documents. Indeed, the defense first heard about these specific Malaysian statutes only when the Government sent us proposed jury instructions for these statutes.

But how can the defense agree to be tried on violations of Malaysian law where there is no mention of any of these Malaysian statutes in the charging document (which would reflect that the Grand Jury passed upon these statutes), and the government flatly refuses to inform us whether the Grand Jury heard one word relating to these statutes? Where are these statutes coming from?  Did the Grand Jury vote them? Or is the government deciding now that these are the Malaysian statutes that our client violated? What authority allows them to make this decision unilaterally?  Put bluntly, there is none. This is not "dealer's choice." The Grand Jury's role cannot be usurped by the government in this way.

If the government is of the view that it need not have the Grand Jury vote on specific Malaysian statutes, and that instead it had the Grand Jury vote, in a generic way, that the defendant committed "an offense against a foreign nation involving – bribery of a public official, or the misappropriation, theft, or embezzlement of public funds by or for the benefit of a public official," the government should say that, so that issue can be litigated before the trial begins. However, the government has refused to tell the Court or the defense how Count Three is indicted.

Again, this is not a matter of the sufficiency of the wording of the SSI, and this is not a request to relitigate the defendant's motion to dismiss. This is a matter of whether the defendant is about to go to trial on the same charges voted by the Grand Jury. The government should not be

12

permitted to refuse to answer this question of clear constitutional significance by claiming the answer is protected as Grand Jury material. We don't want Grand Jury material. We don't want transcripts. We don't want anything remotely related to Rule 6(e). Instead, we want to know that the government satisfied the requirements of the Fifth Amendment, and state, on the record, that the Grand Jury voted violations of these five Malaysian statutes as part of Count Three. Or, if the Grand Jury did not vote violations of these five Malaysian statutes, we want to know precisely what the Grand Jury voted.

A Grand Jury vote is not within Rule 6(e); rather, a Grand Jury vote is an indictment, an indictment that, in this case, has been unsealed, and on which Mr. Ng is about to proceed to trial. The government cannot find protection in Rule 6(e) by keeping the SSI vague as to, in this case, what the Grand Jury voted as part of the specified unlawful activity, and then blocking our ability to understand what the Grand Jury voted against our client.

In sum, the defense requests that the government confirm in some binding fashion that the five Malaysian statutes set forth above were voted by the Grand Jury. If, on the other hand, the Grand Jury did not vote each of the five Malaysian statutes set forth above, we need to know that as well.  At the risk of our being repetitive, there is nothing about this request that seeks 6(e) material. Rather, we merely ask the government to confirm to us, to this Court, and, if necessary, to any court that may one day review these proceedings, precisely what the defendant has been charged with by the Grand Jury.

13

## IV.    CONCLUSION

For the foregoing reasons, the defense respectfully requests that this Court grant the relief set forth above.

Dated:          January 26, 2022
                New York, New York

                                        Respectfully submitted,

                                         /s/
                                        Marc A. Agnifilo, Esq.
                                        Zach Intrater, Esq.
                                        Teny R. Geragos, Esq.
                                        Jacob Kaplan, Esq.

                                        **BRAFMAN & ASSOCIATES, P.C.**
                                        256 Fifth Avenue, 2nd Floor
                                        New York, NY 10001
                                        (212) 750-7800