UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>- v. -<br><br>NG CHONG HWA a.k.a. Roger Ng,<br><br>Defendant. | No. 18-CR-538 (S-2) (MKB)<br><br>**AFFIRMATION** |

MARC AGNIFILO, being duly sworn, deposes and states:

1.  I am Of Counsel to the law firm Brafman & Associates, P.C., and am licensed to practice law in the State of New York. I am also a member of the bar of this Court. As counsel for Ng Chong Hwa a/k/a Roger Ng, I make this affirmation in support of Roger Ng's Motion *in limine* for Live Trial Testimony via Closed Circuit Television.

2.  This affirmation is made upon information and belief, the sources of which are discovery material provided by the United States Attorney's Office for the Eastern District of New York ("EDNY"), conversations with the Assistant United States Attorneys assigned to this case, conversations with potential witnesses and their counsel located in Malaysia, and the result of investigative efforts undertaken by the defense to date, conversations with numerous individuals and other documents and materials comprising counsel's file in this matter.

<u>**Facts Supporting the Motion for Live Trial Testimony Via CCTV**</u>

3.  There are two potential defense witnesses, ▇▇▇▇▇▇▇▇▇ wife of the defendant, and her brother ▇▇▇▇▇▇▇▇▇ whom the defense wishes to call to testify at the upcoming trial. ▇▇▇▇▇ is a Malaysian national; she is not a United States citizen and has no ties to the United States. She lives in Kuala Lumpur, Malaysia with her, and Mr. Ng's, nine-year old daughter, for

whom she is the sole caregiver. In addition, she is the sole caregiver for her elderly parents, each of whom are in their eighties and suffer from various health conditions, as further specified below.

4. ▮▮▮▮ is also a Malaysian national without United States citizenship who has no ties to the United States. He also lives in Kuala Lumpur, Malaysia, with his wife and two sons.

5. Both ▮▮▮▮ are unable to travel to the United States for several reasons.

6. First, the Malaysian government has instituted a travel ban preventing both ▮▮▮▮ rom leaving Malaysia. As the Court may recall, Mr. Ng is currently charged with criminal offenses in Malaysia. Even prior to the filing of United States charges against Mr. Ng, the Malaysian Government banned Mr. Ng, ▮▮▮▮ from travel outside of Malaysia. The travel ban for both ▮▮▮▮ remains in full effect.

7. The second reason is that ▮▮▮▮ is the sole caregiver for the nine-year-old daughter she has with Mr. Ng as well as for her elderly parents. Even absent the substantial COVID protocols established by the Malaysian Government, it would work a tremendous hardship on her daughter (who has already been without her father for over three full years) as well as on her parents for ▮▮▮▮ to leave Malaysia to travel to New York to testify in this case. However, the Malaysian COVID protocols make this hardship far more serious. As an initial matter, in Malaysia, COVID vaccines have only just been approved for children as young as nine years old. Therefore, Mr. Ng's and ▮▮▮▮ daughter is not vaccinated, and will not be vaccinated until her school organizes the vaccine distribution to its students. This fact alone presents an unacceptable risk of infection to the child occasioned by ▮▮▮▮ spending at least 48 hours on several airplanes (the trip to and from Malaysia is at least 24 hours) and at least two or three days in New York that would be required for her to testify live. This hardship is exacerbated by the fact that Malaysia

would require at least a five-day quarantine, most likely away from the home, upon ▓▓▓▓ return to Malaysia.

8. Many individuals who are quarantined in Malaysia are quarantined away from their homes in Malaysian Government-run facilities.

9. To apply for and be granted permission to "home quarantine" in Malaysia, the Malaysian Government evaluates risk based on a number of criteria:

- Number of persons in said home or residence
- Number of elderly persons in said home or residence (above 60 years of age)
- Number of children in said home or residence (below 12 years of age)
- Number of persons with chronic illnesses in said home or residence
- Number of pregnant mothers in said home or residence
- Number of rooms in said home or residence
- Number of bathrooms in said home or residence
- Number of bedrooms with en suite bathrooms in said home or residence

(*See* Exhibit 1, https://hso.moh.gov.my/outbreak-portal-hqa/index.)

10. Here, it is unlikely that Malaysia would grant ▓▓▓▓ the ability to "home quarantine" because two elderly persons and one child live in ▓▓▓▓ residence. Additionally, as set forth below, the elderly parents both have chronic illnesses and are at risk of serious consequences from a COVID infection.

11. Given that ▓▓▓▓ is the sole caregiver for her daughter and her elderly parents, an absence of this length combined with the risk of COVID exposure presents too grave a risk of serious health consequences to this family.

12. Moreover, as the Court is aware, the Government has named ▓▓▓▓ as a co-conspirator in its Motion *in limine* and the Second Superseding Indictment ("SSI") includes overt acts alleging ▓▓▓▓ involvement in Count One (FCPA Bribery Conspiracy) and Count Three

3

(Money Laundering Conspiracy). ▇▇▇ therefore fears that the Government may arrest or detain her if, in the event the travel ban is lifted, she travels to the United States to testify.[1]

### A. The Government's Allegations Directly Involve ▇▇▇ and Mr. Ng

13. The SSI includes several allegations implicating ▇▇▇ and Mr. Ng and to which she could testify. First, the SSI alleges that a total of approximately $35 million was transferred from ▇▇▇ and his relative to a bank account in the name of Silken Waters/Victoria Square, which was beneficially owned by ▇▇▇ (SSI ¶¶ 42, 55, 62(l), 62(n).) The Government contends that this money represents Mr. Ng's "cut" of the bribery proceeds.

14. The Government has also alleged that approximately $17 million was transferred from the Silken Waters/Victoria Square Bank Account to a bank account held jointly by ▇▇▇ and her mother. The SSI includes an allegation that that "an email account in the name of a close relative of NG sent an email to the account representative for the Silken Waters / Victoria Square Account attaching three invoices for diamonds and other jewelry—one of which was addressed to 1MDB Official #3—and requesting payment to the jeweler in the amount of approximately $300,500." (SSI ¶ 62(q).) The government has argued that ▇▇▇ directed the payment for the jewelry. (*See* 1/26/2022 Tr. at 7.)

15. Additionally, the Government's initial Motions *in limine* made several allegations regarding ▇▇▇:

- ▇▇▇ (Dkt. 90, Gov't Motions *in limine* at 67);

- ▇▇▇

---

[1] Counsel has not yet asked the government, nor have they offered, to provide ▇▇▇ with safe passage, as the travel ban prevents ▇▇▇ from even traveling to the United States.

4

- ██████████████████████████████████████ (*Id.*);

- ██████████████████████████████████████ (*Id.*); and

- ██████████████████████████████████████. (*Id.*).

**B.** ████████ **Testimony Disproves a Core Allegation of The Government and Is Central to This Case; Therefore,** ████████ **Is a Material Witness to Mr. Ng and Is Currently Unavailable to Testify at the Trial Due to Malaysia's Travel Ban**.

16.     ████████ testimony is crucial for the defense as her testimony would both explain transfers between Capital Place Holdings ████████████████████████ bank account) and the Silken Waters/Victoria Square account and would refute ████████ allegations regarding the 2016 meeting with the feng shui master.

17.     The defense contends that the money sent by ████████████████ to the Silken Waters/Victoria Square account is wholly unrelated to the crimes charged, and that indeed these funds relate to a pre-existing debt owed by ████████████████████. Indeed, the pretrial motions as well as the *in limine* motions both discuss this central point, including regarding statements made by a UBS banker in internal UBS records. ████████ will testify to her first-hand knowledge of these funds, what these funds represent, and why ████████████████ sent these funds to her family.

18.     We expect that the cooperator will either lie about or not know about these funds. We expect that ████████████, a person with first-hand knowledge about these funds, will

5

not testify. ▮ is located abroad, is not a U.S. citizen and is, most unfortunately, beyond the reach of this Court's subpoena power. Therefore, the only witness with first-hand knowledge of this critical set of facts is ▮.

19.  However, Malaysia imposed a travel ban on or about July 2018 that specifically banned ▮ from leaving Malaysia.

20.  The Immigration Department of Malaysia maintains an electronic system at its website, https://sspi.imi.gov.my/SSPI/?page=sspi/bi. The stated purpose of this website it to enable "Malaysian to check their status on application for passport and travelling overseas." When one enters ▮ identity card number to check her status, the result reads "**Please refer to nearest Immigration office.**" (*See* Exhibit 2.)

21.  I conferred with ▮ lawyer in Malaysia, ▮ as to what the immigration check meant. ▮ spoke to members of the Malaysian Immigration Office, who informed him that ▮ is unable to leave the country because there is a ban on her travel.

22.  ▮ has also informed me that there is precedent for Malaysia banning travel for its citizens. For example, in 2016, Malaysia barred a member of its Parliament, Tony Pua Kiam Wee from traveling overseas.

23.  Therefore, ▮ have each informed me that due to Malaysia barring ▮ travel, she will be unable to travel to the United States to testify at the trial.

24.  Moreover, in the event that Malaysia were to finally lift the travel ban after more than three years, ▮ would still be unable to travel to the United States due to her position as the sole caregiver to her ailing parents and her nine-year-old unvaccinated daughter.

25.     Due to ▓▓▓▓ parents degenerating health, they both live with ▓▓▓▓ so that ▓▓▓▓ can provide round-the-clock care for them. ▓▓▓▓

▓▓▓▓

▓▓▓▓

▓▓▓▓

▓▓▓▓

▓▓▓▓

▓▓▓▓

26.     ▓▓▓▓

▓▓▓▓

▓▓▓▓

▓▓▓▓

▓▓▓▓

▓▓▓▓

27.     Finally, since Mr. Ng's arrest in Malaysia in October 2018, she has been the sole parent to their child, ▓▓▓▓ is in full-time school and is unvaccinated. If ▓▓▓▓ were to travel to the United States for testimony, she would be unable to take her daughter to and from school.

28.     As stated above, in the event ▓▓▓▓ travel ban were to be lifted, the risk of her traveling to the United States and contracting COVID is too high, and additionally she cannot be absent for nearly two weeks from caring for both her parents and her child.

    **C.**     **▇▇▇▇ Testimony Refutes ▇▇▇▇ Statements in the UBS Records; Therefore, ▇▇▇ Is a Material Witness to Mr. Ng and Is Currently Unavailable to Testify at the Trial Due to Malaysia's Travel Ban**.

29. ▇▇▇ will testify regarding his conversations with ▇▇▇, the UBS Banker who was the Silken Waters / Victoria Square bank account relationship banker. I expect that ▇▇▇ will testify that he spoke with ▇▇▇ several times as to the origin of the money flowing into the Silken Waters / Victoria Square bank account. I also expect that ▇▇▇ will testify that neither he, nor his mother, advised ▇▇▇ that the origin of the money was ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*See* Dkt. 90, Gov't Motion *in Limine* at 12.)

30. When one enters ▇▇▇ identity card number to check his status on the Malaysian Immigration website, the result reads "Please refer to nearest Immigration office." (*See* Exhibit 3.) ▇▇▇ has inquired as to the status of his immigration in Malaysia and has likewise learned that he is unable to leave Malaysia.

31. Accordingly, as argued in the attached Memorandum of Law, this Court should allow ▇▇▇▇▇▇ to testify live via close circuit television as they are unavailable under the law because of the Malaysian travel ban.

Dated:     January 26, 2022
              New York, NY

                                    Respectfully submitted,

                                    /s/
                                  Marc Agnifilo, Esq.