

21st Floor
1251 Avenue of the Americas
New York, NY  10020-1104

**John M. Browning**
(212) 489-8230 tel
(212) 489-8340 fax

jackbrowning@dwt.com

February 8, 2022

**VIA ECF**
Hon. Margo K. Brodie
United States District Court
Eastern District of New York
225 Cadman Plaza East, Courtroom 6F
Brooklyn, New York 11201

Re:   *U.S. v. Ng*, 18-cv-00538-MKB-2

Dear Judge Brodie:

We represent Bloomberg L.P., the publisher of Bloomberg News ("Bloomberg"), and write to respectfully request that the Court grant Bloomberg's reporter, Patricia Hurtado, access to *voir dire* and related proceedings in the above-captioned criminal trial in a manner consistent with the requirements of the First Amendment.  As Your Honor knows, the trial of Roger Ng for his alleged role in facilitating a multi-billion dollar embezzlement scheme is a matter of intense and legitimate public interest.  The circumstances surrounding, and leading up to, this trial have been covered extensively by Bloomberg and countless other news organizations.  And, as with any judicial proceeding, there is a strong presumption in favor of open access for members of the public and press.  We are also acutely aware that the Court has a potentially countervailing responsibility to safeguard Mr. Ng's right to a fair trial and to implement appropriate COVID-19 protocols.  But, for the reasons that follow, the restrictions currently imposed on Ms. Hurtado are inconsistent with the First Amendment's presumption of openness and should be lifted immediately.[1]

Four decades ago, the United States Supreme Court expressly recognized that "[p]ublic scrutiny of a criminal trial enhances the quality and safeguards the integrity of the factfinding

---

[1] Neither counsel for Defendant Roger Ng nor the Government oppose this application.  We were also informed by Assistant U.S. Attorney Alixandra Smith that she relayed Bloomberg's concerns about the wholesale sealing of *voir dire* sidebar conversations to the Court and the Court has agreed to produce transcripts with sensitive information redacted.  We very much appreciate the Court's prompt attention to our concerns, but respectfully file this letter to ensure that Ms. Hurtado is permitted to be physically present for live proceedings, as required by the First Amendment.

DWT.COM

Anchorage | Bellevue | Los Angeles | New York
Portland | San Francisco | Seattle | Washington, D.C.

Hon. Margo K. Brodie
February 8, 2022
Page 2

process, with benefits to both the defendant and to society as a whole." *Globe Newspaper Co. v. Superior Cot. For Norfolk Cty.*, 457 U.S. 596, 604-07 (1982). The First Amendment safeguards this vital interest by requiring courts to enforce a "presumption of openness" when private citizens and news organizations seek to observe a criminal trial. *ABC v. Stewart*, 360 F.3d 90, 98 (2d Cir. 2004) (*citing Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 510 (1984)). "The Supreme Court has further recognized that the guarantee of open public proceedings in criminal trials extends to the *voir dire* examination of potential jurors." *Id.* And, as the Second Circuit has made clear, "[t]he ability to see and to hear a proceeding as it unfolds is a vital component of the First Amendment right of access … not… an incremental benefit." *Id.* at 99. As per the Second Circuit, the "Supreme Court has [also] made clear that the presumption of openness cannot easily be overcome. In the specific context of access to *voir dire* examinations, the Court stated [that]:

> The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.

*Id*. at 98 (*quoting Press-Enterprise*, 464 U.S. at 510).

Here, the Court has imposed at least two restrictions that violate the presumption of openness and also fail to satisfy the Supreme Court's stringent requirements for an exception to the default rule. *First*, the Court has barred Ms. Hurtado and any other journalists in attendance from being physically present in the large ceremonial courtroom where jurors are being questioned in open court (the "Open Court Proceedings") and has instead required her to follow the proceedings on a monitor in an overflow room. *Second*, the Court has barred Ms. Hurtado from observing "sidebar" conferences with jurors, which are being held in an adjacent courtroom, and she has no means of observing those proceedings remotely (the "Sidebar Proceedings"). We address the problems with each restriction in turn.

It is our understanding that Ms. Hurtado was excluded from the Open Court Proceedings due to COVID-19 safety protocols imposed by the Court, but we respectfully submit that these measures are not "narrowly tailored to serve that interest" because Ms. Hurtado's physical presence in the courtroom would not meaningfully increase the risk of contagion. *Press-Enterprise*, 464 U.S. at 502. The courtroom in question is large enough to accommodate dozens of socially distanced jurors and a separate seating area for court personnel – and I am informed that the same courtroom was used for certain hearings related to the trial of Nxium leader Keith Raniere, with a group of reporters in attendance. There is ample room for Ms. Hurtado to find a

Hon. Margo K. Brodie
February 8, 2022
Page 3

seat where she can observe proceedings from a safe social distance.[2]  Moreover, Ms. Hurtado represents that she is double vaccinated, boosted and will wear a K-95 mask at all times inside the courtroom.  Given that the Court has declined to exclude jurors who are not vaccinated from the courtroom during *voir dire* or from sitting on the jury, we struggle to understand how excluding Ms. Hurtado is narrowly tailored to serve the interest of preventing the spread of COVID-19.  We also note that other courts have safely admitted limited numbers of journalists to allow them to cover high-profile trials, even during surges of the disease, which undermines any rationale for excluding Ms. Hurtado.[3]

Relatedly, we do not accept that the overflow room is an adequate substitute for viewing the Open Court Proceedings in person.  As a threshold matter, there were technical issues that meant that the video feed was unavailable yesterday morning for the critical period in which Your Honor made introductory remarks.  More fundamentally, it is practically impossible for Ms. Hurtado to follow *voir dire* proceedings from the overflow room because the camera is fixed on one spot at the front of the courtroom.  The jurors themselves – who are spaced out behind the camera – are never in view, nor are their statements reliably audible given problems with handling courtroom microphones.  Because of these insurmountable practical limitations, the requirement that Ms. Hurtado sit in an overflow room functions as a constructive denial of access.  And the fact that Ms. Hurtado may be able to purchase a transcript after the close of proceedings is no substitute for contemporaneous access and her right to observe *voir dire* as it unfolds in living color.  *See, e.g.*, *Stewart*, 360 F.3d at 99-100 ("Documentary access is not a substitute for concurrent access, and vice versa … Where a right of access exists, a court may not deny access to a live proceeding solely on the grounds that a transcript may later be made available.  Such a transcript would not fully implement the right of access because some information, concerning demeanor, non-verbal responses, and the like, is necessarily lost in the translation of a live proceeding to a cold transcript.") (citation omitted).  For these reasons, the presumption of openness requires the Court to allow Ms. Hurtado – or, if the Court prefers, a pool reporter – to sit in an appropriate location within the courtroom during the Open Court Proceedings.

The presumption of openness also requires the Court to allow Ms. Hurtado to observe the Sidebar Proceedings in the adjacent courtroom, which are currently being held completely out of

---

[2] This would not amount to favorable treatment for Ms. Hurtado.  It is our understanding that there are only two journalists currently seeking access to proceedings and that both could be socially distanced inside the courtroom.  Moreover, if more press representatives arrive as the trial progresses, Bloomberg would be amenable to having a single pool reporter cover the Open Court and Sidebar Proceedings on behalf of all press organizations – which would be a less restrictive alternative to excluding the public and press completely.

[3] *See, e.g.*, *U.S. v. Maxwell*, 20-CR-330 (AJN), Dkt. 463 at 1 (S.D.N.Y. Nov. 15, 2021) ("In order to comply with the District's COVID-19 protocols, a number of pool reporters will be permitted in the courtroom proper…"); *U.S. v. Raniere*, 18-cv-00204-NGG-VMS01 (E.D.N.Y. July 19, 2021) (permitting "media representatives … and members of the public" to attend restitution hearing with "proof of full COVID-19 vaccination").

Hon. Margo K. Brodie
February 8, 2022
Page 4

view. The only rationale that the Court has articulated for completely excluding the public from this portion of the *voir dire* process is that these are "sidebar discussions." *See* Exhibit A. But this is not nearly enough to overcome the strong presumption of openness. The Second Circuit specifically vacated an order that the press was to be excluded from "*voir dire* proceedings … conducted in the robing room." *Stewart*, 360 F.3d at 95. And district courts following that decision have routinely allowed at least one pool reporter to be present at sidebar or related *voir dire* proceedings. *See, e.g.*, *United States v. Shkreli*, 260 F. Supp. 3d 257, 263 (E.D.N.Y. 2017) (holding that "the presence of an EDNY pool reporter at sidebar will not generally inhibit juror candor"); *United States v. Avenatti*, 2021 U.S. Dist. LEXIS 125442, at *137 (S.D.N.Y. July 6, 2017) ("To ensure press access to sidebar conferences during *voir dire*, courts often permit a pool reporter to attend sidebars"); *Stewart*, 360 F.3d at 95 (noting that "pool reporters have been effectively employed during *voir dire* examinations in the prosecutions of Imelda Marcos and Sheik Omar Abdel Rahman").

While some particularly sensitive sidebar conversations may be legitimately held outside of the hearing of the public, the limited circumstances in which that might be appropriate are not present here and – even if they were – the Court could protect the relevant interests without a wholesale ban on reporters. To be sure, the Second Circuit has held that *voir dire* can take place in secret if the parties need to ask "sensitive or contentious lines of questioning" – *e.g.*, questions about "the racial views of potential jurors" – because the candor of prospective jurors may be impaired by the presence of a journalist. *Stewart*, 360 F.3d at 101. But it is not obvious that sensitive questions will be asked of jurors in this case, which is about banking fraud and embezzlement. And even if such questions arose, the proper remedy is not to shut the press and public out entirely. Rather, this Court could follow the Solomonic example of Judge Matsumoto, who held that "[a] reporter will be permitted at sidebar" during *voir dire* for the high-profile trial of Martin Shkreli, while also retaining discretion to "temporarily excuse the pool reporter when … the court determines that the reporter's presence is inhibiting a juror's willingness to speak frankly on controversial or personal issues." *Shkreli*, 260 F. Supp. 3d at 263-64. In any event, the Court's blanket ban on public observance of the Sidebar Proceedings violates the presumption of openness and is not narrowly tailored to preserve a higher interest. Accordingly, Ms. Hurtado must be given meaningful access to the Sidebar Proceedings immediately.[4]

For all these reasons, Bloomberg respectfully request that this Court immediately rescind its orders and allow Ms. Hurtado to observe all *voir dire* proceedings in person. Time is of the

---

[4] We assume that the Court has similar COVID concerns about admitting Ms. Hurtado to the Sidebar Proceedings. But these are not sufficient to overcome the presumption of access for all the same reasons that it is impermissible to bar her from the Open Court Proceedings. We are also informed that multiple federal agents and Government paralegals have been permitted to sit in the well during Sidebar Proceedings, which undermines any argument that only essential personnel should be allowed in. Moreover, if the Court is concerned about a lack of space for social distancing, a less restrictive alternative to shutting out the public would be to hold the Sidebar Proceedings in the larger courtroom.

Hon. Margo K. Brodie
February 8, 2022
Page 5

essence since Ms. Hurtado has already missed a considerable amount of *voir dire* and is presently not able to observe peremptory challenges in person. If the Court has questions about this application, we are willing to appear to address those issues at the earliest opportunity.

        Best regards,

Davis Wright Tremaine LLP

        John M. Browning

Enclos.

cc:    All Attorneys of Record (via ECF)
       Randy L. Shapiro, Esq., Global Newsroom Counsel, Bloomberg L.P. (by email)
       Robert D. Balin, Esq., Partner, Davis Wright Tremaine (by email)