

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

F. #2016R00467

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 11, 2022

By ECF

The Honorable Margo K. Brodie
Chief United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Ng Chong Hwa
                  Criminal Docket No. 18-538 (S-2) (MKB)

Dear Chief Judge Brodie:

      The government respectfully submits this letter in response to the defendant's February 11, 2022 letter, see ECF No. 135 (the "Ng Letter"), which attached two Federal Bureau of Investigation ("FBI") FD-1057 reports that the government produced to the defendant on February 10, 2022, in accordance with Federal Rule of Criminal Procedure 16, see ECF Nos. 135-1, 135-2 (the "Reports").  The Ng Letter contains numerous factual and legal inaccuracies, and its characterization of both the Reports themselves and the government's production of them is incorrect.  Throughout this prosecution, the government has steadfastly abided by its Brady and Rule 16 obligations, and its production of the Reports was no exception.

      As an initial matter, the defendant's description of the relevant background is incomplete and misleading.  On June 24, 2019, defense counsel first informed the government that the defendant maintained that the $35 million in criminal proceeds sent to the Silken Waters / Victoria Square Account was from legitimate business transactions.  Since then, the government has continued to look for, and has not found, any evidence substantiating that claim.

      On April 10, 2020, the government disclosed to the defense a set of consensually recorded calls, including an October 16, 2018 recording in which the defendant's wife, Hwee Bin Lim, recounted that she had told Malaysian law enforcement that the $35 million in transfers to the Silken Waters / Victoria Square Account related to Chinese investments.  Beginning in October 2020, the defense claimed in its filings that the transfers into the Silken Waters / Victoria Square Account were a repayment of a debt owed to relatives of the defendant's wife, see ECF No. 43 at 115, and the defense has reiterated this claim since, see, e.g., ECF No. 122-1 ¶ 17.

Following its initial production of the October 16, 2018 recording in April 2020, the government re-produced it to the defense on November 10, 2021 and November 12, 2021. On February 4, 2022, defense counsel reviewed, apparently for the first time, the October 16, 2018 recording.  See ECF No. 132 at 3.  As noted above, the defense had claimed for years before listening to the October 16, 2018 recording that the transfers into the Silken Waters / Victoria Square Account were in connection with legitimate business transactions.

Mindful of its continuing disclosure obligations, prior to trial, the government began a manual review of reports and documents obtained from the FBI in order to identify any additional potentially discoverable information, including material potentially discoverable pursuant to 18 U.S.C. § 3500 for testifying witnesses, contained in the FBI's files.  As part of that review, the government requested and obtained more than 8,000 files in both hard copy and electronic form.  On February 10, 2022, as the undersigned prosecutors worked to complete that review, the prosecutors identified the Reports for the first time.  The Reports had been drafted and filed by an FBI special agent who was based in Malaysia and had assisted with the then-impending arrest of the defendant on the charges in the indictment, and who is not a member of the prosecution team.  The Reports documented statements made by the defendant and Lim to a Malaysian law enforcement officer ("Malaysian Law Enforcement Officer #1"), who then voluntarily disclosed those statements to the FBI.

The first Report documented the following information disclosed by Malaysian Law Enforcement Officer #1 to the FBI on October 24, 2018:

- The defendant and "and [his] wife willingly came together to meet [Malaysian Law Enforcement Officer #1] at the CCID headquarters building in Kuala Lumpur, Malaysia."

- Malaysian Law Enforcement Officer #1 believed that "Ng knows U.S. authorities are interested in his involvement in the 1MDB investigation and Ng suspects that [a cooperating witness ("CW-1")][1] is also speaking to U.S. authorities.  Ng feels confident; however, that he is safe from being charged in Malaysia."

- "Ng's wife told [Malaysian Law Enforcement Officer #1] that the monies going to her and her mother's accounts in Singapore were coordinated with [CW-1's ex-wife] and were proceeds/earnings from investments."

The information contained in the first Report—in particular, Lim's explanation of "the monies going to her and her mother's accounts in Singapore"—echoed the defendant's alleged explanation for the funds first conveyed by defense counsel to the government in June 2019, and which the defendant has made in public filings since October 2020.

---

[1]   The identities of the witness and the witness's ex-wife are set forth in the Reports, which were provided by the defense to the Court under seal.

2

The second Report documented the following information disclosed by Malaysian Law Enforcement Officer #1 to the FBI on October 26, 2018:

> [Malaysian Law Enforcement Officer #1] met with Roger Ng on the evening of 10/25/2018 at the CCID headquarters building in Kuala Lumpur, Malaysia. [Malaysian Law Enforcement Officer #1] suggested to Ng that he may wish to consider voluntarily travelling to the U.S. to settle whatever of his "affairs" that may be looming. Ng's response was that he was a Malaysian citizen and if the U.S. would want to seek his co-operation in the U.S. investigation, the U.S would have to request it through the officials [sic] channels of the Malaysian government.

Because the Reports memorialized the defendant's statements to foreign law enforcement, the government produced them to the defense the same day it found them, redacting the information unrelated to the statements of the defendant or his wife.

The defendant now describes these Reports as "core Brady material." Ng Letter at 1. This statement is wrong. "Under Brady and its progeny, 'the Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is "material" either to guilt or to punishment.'" United States v. Certified Environmental Servs., Inc., 753 F.3d 72, 91 (2d Cir. 2014) (quoting United States v. Coppa, 267 F.3d 132, 139 (2d Cir. 2001)). The Second Circuit has made clear, however, that "no Brady violation occurs if the defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory evidence." United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987). "Accordingly, the government ha[s] a duty to disclose only information which had been known to the prosecution but unknown to the defense." United States v. Grossman 843 F.2d 78, 85 (2d Cir. 1988) (internal quotation marks omitted). "If the defendant knows the[] 'essential facts,' the Government need not inform the defendant of the witness' exculpatory statements." Rigas v. United States, 2020 WL 2521530, at *7 (S.D.N.Y. May 15, 2020) (citing Williams v. United States, 503 F.2d 995, 998 (2d Cir. 1974)). Here, the defendant knew the statements and information contained in the Reports, which consist of statements that he made to Malaysian law enforcement himself and statements that his wife made to Malaysian law enforcement in his presence. The defendant previously identified Lim as a potential defense witness, see ECF No. 122, so the defense has access to her for this information as well. Thus, even if the government had been aware of the Reports before yesterday (which it was not), under Second Circuit law, they are plainly not Brady material.

The defendant also argues that the government should be required "to provide the defense with the unredacted statements immediately." Ng Letter at 1. This argument should be rejected. It is undisputed that Rule 16 requires the disclosure of the defendant's statements—which is why, as described above, the government produced the Reports to the defense with such content unredacted. However, Rule 16 is clear that, with the exception of the defendant's statements (and other exceptions that do not apply here), it "does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed. R. Crim. P. 16(a)(2). The redacted portions of the Reports—which consist of

3

law enforcement information concerning the foreign and domestic investigations and the impending arrest of the defendant, and do not contain any statements of the defendant or Lim—are therefore not discoverable under Rule 16. See, e.g., United States v. Robinson, 2017 WL 1331274, at *3 (E.D.N.Y. Apr. 10, 2017) ("Many courts in the Second Circuit have found that reports from local police departments are barred by Rule 16(a)(2)." (collecting cases)); United States v. Barrera, 950 F. Supp. 2d 461, 475 (E.D.N.Y. 2013) ("[A]ny incident or arrest reports generated by law enforcement in connection with the case at hand, whether federal or local, are protected from disclosure under Rule 16(a)(2)."); United States v. Attanasio, 2005 WL 8153622, at *2 (E.D.N.Y. Sept. 9, 2005) (where documents "were created in the course of the government's investigation and/or prosecution of the present case, . . . [they] fall squarely within the protection provided by Rule 16(a)(2)" (emphasis in original)). The defendant's request for unredacted versions of the Reports should therefore be denied.[2]

Finally, the defendant insists that the Reports "wholly support[] the defense's theory" and that they constitute "records related to" an investment between Lim's and Judy Chan's families. Ng Letter at 4. That assertion is wrong. The Reports are not "records" of the claimed investment; they are nothing more than self-serving statements that Lim made to Malaysian Law Enforcement Officer #1 at a time when she and the defendant suspected, at a minimum, that they were the subjects of an ongoing investigation in the United States.[3] Regardless of the interpretation of the Reports, however, the government promptly produced them to the defense pursuant to Rule 16, just as it has done with all discoverable material since the inception of this prosecution.

****

---

[2]   If it would be helpful, the government can produce fully unredacted versions of the Reports to the Court for in camera review.

[3]   [REDACTED]

For the reasons set forth above, the defendant's request for unredacted versions of the Reports should be denied. The government also reaffirms that it fully understands its Brady and Rule 16 obligations and has complied and will continue to comply with them.

                Respectfully submitted,

                BREON PEACE
                United States Attorney

By:   s/
       Alixandra E. Smith
       Drew G. Rolle
       Dylan A. Stern
       Assistant U.S. Attorneys

| | |
|---|---|
| DEBORAH L. CONNOR<br>Chief, Money Laundering and Asset<br>Recovery Section, Criminal Division<br>U.S. Department of Justice | JOSEPH BEEMSTERBOER<br>Acting Chief, Fraud Section<br>Criminal Division<br>U.S. Department of Justice |
| s/<br>Jennifer E. Ambuehl<br>Trial Attorney | s/<br>Brent Wible<br>Trial Attorney |

cc:    Counsel for the defendant (via ECF and email)