**BRAFMAN & ASSOCIATES, P.C.**

ATTORNEYS AT LAW

256 FIFTH AVENUE, 2ND FLOOR

NEW YORK, NEW YORK 10001

TELEPHONE: (212) 750-7800

FACSIMILE: (212) 750-3906

E-MAIL: ATTORNEYS@BRAFLAW.COM

BENJAMIN BRAFMAN
———
MARK M. BAKER
OF COUNSEL

MARC A. AGNIFILO
OF COUNSEL

ZACH INTRATER
OF COUNSEL

ANDREA L. ZELLAN

JACOB KAPLAN

TENY R. GERAGOS
ADMITTED IN NY & CA

STUART GOLD

February 22, 2022

VIA ECF
The Honorable Margo K. Brodie
Chief United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    United States v. Ng Chong Hwa a.k.a Roger Ng, 18 Cr. 538 (MKB)

Dear Chief Judge Brodie:

We write in response to the government's February 17, 2022, letter requesting that the Court (1) preclude counsel from "making certain improper arguments that were made during opening statements at any other point in the trial" and (2) allow the government to offer evidence to rebut character evidence elicited by counsel during cross-examination. (Dkt. 143.) For the reason stated below, the Court should deny the government's requests.

**1.    Counsel's Opening Statements Were Not Improper**

The government first complains about counsel's statement during opening addressing Mr. Ng's role at Goldman Sachs:

> We've talked about this massive series of bond deals, we talked about Goldman Sachs. You might be sitting here thinking, who is Roger at Goldman Sachs. He must be really important to be bearing the full weight of all that we heard in the Government's opening. He must be a very important person at Goldman Sachs. Is he the chief executive officer? No. Is he the chief finance officers? No. He's not a chief of anything. He's not even a partner. . . . They didn't ever make him a partner. Leissner's a partner. You're going to hear a lot of partners from Goldman Sachs

BRAFMAN & ASSOCIATES, P.C.

> doing a lot of things. One man here. One. This man. Not a partner. One of the reasons you guys are all on this jury is you guys can figure stuff out. You can size people up, you can figure out situations, and you'll reach your own conclusion about why he is the only one here.

(Dkt. 143 at 2 (quoting 2/14/22 Tr. at 36:2–24 (ellipsis in original)).)

In its letter, the government claims that this statement "runs afoul of longstanding precedent and the Court's anticipated instruction to the jury that it may not draw any inference from the fact that certain persons are not on trial, nor may it speculate as to the reasons these other people are not on trial." (Dkt. 143 at 2.) Tellingly, this is not how the government itself understood counsel's statement at the time. Instead, when raising its concerns with counsel's statement immediately after opening, the government perceived counsel's statement as arguing that Mr. Ng was being prosecuted because he was Malaysian:

> In my estimation, based on how the context was presented, goes back to exactly what we moved to preclude him from, the idea that this defendant, by -- **whether it's his nationality or something else, that that's the true reason**. The jury is not here to speculate why this defendant is on trial. He's on trial because he's on trial.

(Tr. 65:11–17 (emphasis added).)[1]

That the government did not raise any concerns at the time that counsel's statement was asking the jury to speculate why no one else was on trial (as it does now) is not surprising given that it was not the argument counsel was making. Rather, when read in its proper context, counsel's point was that Mr. Ng was not an important employee at Goldman Sachs and certainly not someone the conspirators would need to bribe to get the bond deals done:

> He must be really important to be bearing the full weight of all that we heard in the Government's opening. He must be a very important person at Goldman Sachs.
>
> Is he the chief executive officer? No. Is he the chief finance officers? No. He's not a chief of anything. He's not even a partner.

(Tr. 36:4–11.) This point becomes clearer in the next statement that counsel made, which the government inexplicably removed via ellipsis when quoting the transcript in its letter to the Court:

> Goldman Sachs has 40,000 employees. It has 400 partners. Just like we hear in society, the 1 percent, Goldman has 1 percent too. 1 percent are partners, 99 percent

---

[1] As demonstrated below, counsel's comment as to why Mr. Ng "is the only one here" had everything to do with his role at Goldman and nothing to do with the fact that he is Malaysian.

BRAFMAN & ASSOCIATES, P.C.

> aren't. He's not. He doesn't run Goldman Sachs, he does not set bank policy, he doesn't decide what deals to go after. He doesn't share in the firm's profits. He doesn't do any of it.

(Tr. 36:11–17.)

Counsel made this point to emphasize that Mr. Ng is not a decision maker at Goldman and therefore not someone that the conspirators needed to bribe. Moreover, counsel's comments about Mr. Ng's lower role at Goldman (noting that he was not chief executive officer, chief finance officer or even a partner) were in direct response to the government's statement during its opening that Mr. Ng "saw an opportunity to use his position at Goldman to get rich by cheating." (Tr. 15:6–7.)

Counsel continued by noting that "Leissner's a partner," and that "You're going to hear a lot of partners from Goldman Sachs doing a lot of things." (Tr. 36:18–19.) Counsel made this point to note that the people Low would need to bribe were Leissner and his fellow Goldman Sachs partners who were in a position to do "a lot of things" to get the bond deals approved. In contrast, Mr. Ng was not in position to get the deals done because, as counsel noted while pointing to Mr. Ng: "One man here. One. This man. Not a partner." (Tr. 36:19–20.)

It is at this point that counsel addressed a commonsense concern that any juror would have. If Mr. Ng is not a big player at Goldman Sachs and not someone worth bribing, then why is he a defendant facing trial for the 1MDB fraud. This was the "situation" that counsel was confident the jury could "figure out" with its ability to "size people up" and "figure stuff out." (Tr. 36:22–23.) The person that counsel wants the jury to size up is Leissner—the government's main witness and cooperator. And, after the jury hears all the lies and the deceiving type of person Leissner is, counsel was confident that the jury would reach its "own conclusion about why [Mr. Ng] is the only one here" (Tr. 36:23–24)—namely that Leissner is pointing the blame and guilt on Mr. Ng and not his fellow Goldman partners.

This was the crux of counsel's opening, and this is how the Court understood counsel's statements when it noted that it "did not hear anything inappropriate." (Tr. 63:21–22.) Counsel did not and will not argue to the jury that Mr. Ng is being prosecuted because he is Malaysian or that the jury should speculate why Low or anyone else are not also on trial.

The government next complains about counsel's statement during opening about how Leissner uses people and is using Mr. Ng in this case to get his own freedom:

> Leissner uses people. You will see that time and time again. He uses women, he uses false intimacy, and here he is trying to use my client. And what he's trying to use my client to do is to serve his jail time. That is what he is trying to use Roger to do.

-3-

BRAFMAN & ASSOCIATES, P.C.

(Tr. at 61:12–16.)

In making this statement, counsel was highlighting for the jury that the evidence will show that Leissner uses and deceives the people closest to him to get what he wants in business and in his personal life. In this case, what Leissner wants is to avoid going to prison; as Leissner himself testified on direct-examination:

> Q. As you sit here today, what sentence are you hoping to get from the judge?
>
> A. I hope that I don't have to go to prison, sir.

(Tr. 508:12–14.) Given Leissner's deceitful and exploitative nature, counsel was noting for the jury that the evidence will show that Leissner is willing to come to court and lie about Mr. Ng's conduct in this case to avoid a prison sentence. It was not counsel's intention during opening to have the jury consider Mr. Ng's potential punishment in this case, nor will counsel argue to the jury in summation that it should consider potential punishment.

**2. The Government Should Not Be Allowed to Introduce Unnecessary and Prejudicial Character Evidence**

The government next argues that counsel "elicited information about the defendant's general character" for being "gentle," "open-minded" and "kind" during his cross-examination of government witness Andy Tai. (Dkt. 143 at 5.) The government contends that it should therefore be able to introduce evidence of a specific, unproven, incident between Mr. Ng and another Goldman employee in 2012 that "directly rebuts" the character testimony. (*Id.*) Both of these arguments are meritless and should be rejected.

    A. <u>Counsel Did Not Elicit Character Evidence</u>

When read in its full context (not only the portions the government chooses to quote in its letter), it is evident that counsel's questioning and the witness' responses on this point focused solely on how Mr. Ng and Leissner differed in their approach to pursuing business with clients, not general character traits. Specifically, as part of its direct examination of Andy Tai, the government elicited that one of Mr. Ng's duties as a Goldman Sachs managing director was to "go out and get business." (Tr. 73:25–84:2.) Once he was promoted to Goldman's country head of Malaysia, Mr. Ng had to "find clients" in Malaysia, "maintain contact with those clients" and be the "closest in maintaining dialogue" with those clients. (Tr. 81:21–25.) Mr. Tai also stated that both Leissner and Mr. Ng were "responsible for the relationship" between Goldman Sachs and 1MDB. (Tr. 88: 5–7.)

In response to this testimony, counsel asked Mr. Tai on cross-examination about how aggressive Leissner was in pursuing business relationships with clients:

BRAFMAN & ASSOCIATES, P.C.

> Q. Fair to say that Tim Leissner was an aggressive business person in terms of pursuing business and clients; is that fair to say?
>
> A. Yes. Generally, yes.
>
> Q. Okay. And why is that so? I mean, what in your experience of him makes him an aggressive person in terms of getting clients and business?
>
> A. He would like to be in front of clients. He would like to interact as much as possible, get meetings, talk to clients as much as possible, and, you know, get mandates.
>
> Q. You found him to be a social person? "Social," like, going out and meeting people.
>
> A. Meeting people, yeah. He liked to meet clients and meet people.
>
> Q. And he traveled a lot?
>
> A. And he traveled a lot, yes.
>
> Q. Would you say he traveled an unusual amount, in your experience?
>
> A. I can't -- I don't know all his travel plans.
>
> Q. Fair enough. Fair enough.
>
> Fair to say that Leissner developed social relationships as a way of getting new business?
>
> A. Yes.
>
> Q. Okay. And how -- from what you could see, how did he go about doing that? How did he develop social relationships as a way of getting new business?
>
> A. That one, I actually don't know because, for me, it's like all of a sudden there's this relationship and -- and the person became a client. Like, how he did it before, how he knew the person, typically, I actually -- or how he knew a client, I, typically, don't know actually.

(Tr. 204:18–205:23.)

BRAFMAN & ASSOCIATES, P.C.

In this exchange (which the government does not quote in its letter), counsel was only discussing how Leissner behaved when interacting with clients to pursue business, not Leissner's general character.

Counsel then asked Mr. Tai about the distinction between how Leissner and Mr. Ng approached clients to pursue business:

>   Q: Fair to say that -- and you worked with Roger Ng quite a bit as well; correct?
> 
>   A: That's correct.
> 
>   Q: Fair to say Roger Ng was a far less aggressive business person than Tim Leissner?
> 
>   A: In -- yes -- yes, more approachable.
> 
>   Q: Roger was more approachable?
> 
>   A: Yes. So -- yes.
> 
>   Q: Okay. What do you mean by that? When you say that Roger was more approachable, just tell the jury what you're talking about.
> 
>   A: So I think in terms of wanting to meet clients, they were -- probably, you know, have the drive to want to meet clients and find businesses. Where I think the difference, from my perspective, was, Tim was more insistent in terms of tone and, kind of, talking to people; whereas, Roger was more thoughtful and, I would say, gentle. Maybe the right way is gentle. That's why I'm saying more approachable.
> 
>   Q: You use the word "gentle." Tell us how Roger was gentle in your experience.

[Prosecutor]: Objection, Your Honor.

[The Court]: Basis?

[Prosecutor]: Just relevance.

[The Court]: Overruled. Go Ahead.

**BRAFMAN & ASSOCIATES, P.C.**

      A:       Roger was more gentle in the sense that he was not too -- he liked to seek opinions. He was thoughtful and -- he didn't just stamp down his -- you know, his own kind of thoughts.

      Q:       He was open-minded?

      A:       He was open-minded, yes.

      Q:       He would talk to a lot of people?

      A:       He would talk to a lot of people.

      Q:       In your experience, was he kind?

      A:       He was kind, yes.

(Tr. at 209:9–210:19.)

During this interaction as well, counsel was focusing only on how Mr. Ng and Leissner interacted with clients to pursue business. Accordingly, Mr. Tai's responses that Mr. Ng was "gentle," "open-minded" and "kind" were limited only to the context of interacting with clients to pursue business—not as a general statement of Mr. Ng's character. As such, the government's assertion that counsel elicited information about Mr. Ng's general character is belied by the record.

These questions and answers of this government witness, testifying about the business styles of Mr. Ng and Leissner, do not constitute character evidence. Rather, the observations of the government witness are relevant to show how Leissner went about securing business as opposed to how Mr. Ng went about securing business. That the admissibility of this evidence is based on relevance alone is evident from the fact that the government objected only on grounds of relevance. However, the Court deemed this testimony to be relevant on the topic of how Mr. Ng and Leissner went about securing business at Goldman Sachs. It was offered for this relevant purpose and no other. Accordingly, this evidence simply is not character evidence.

      B.      <u>The Government's Proffered Evidence is Improper Rebuttal and Not Permitted Under Federal Rules of Evidence 404 and 405</u>

Even assuming Mr. Tai's answers could be considered character evidence, the government is still not entitled to introduce its proffered evidence. Because Mr. Tai's testimony was limited to Mr. Ng's interactions with clients while pursing business, any potential rebuttal evidence must be limited to the same context. This is because Federal Rule of Evidence 404(a)(2)(A) only allows the government to offer character evidence to "rebut" the "pertinent trait" offered by the defendant. Here, the government's proffered character evidence has no relation Mr. Ng's interactions with clients while pursuing business. In fact, the incident the government is proffering involved a verbal

BRAFMAN & ASSOCIATES, P.C.

interaction between Mr. Ng and another Goldman banker at a 2012 work-related event, during which Mr. Ng is alleged to have "used inappropriate language and acted in a confrontational manner." (Dkt. 143 at 5.) This incident did not involve Mr. Ng's interaction with clients while pursing business and is therefore not proper rebuttal evidence under F.R.E. 404(a)

Furthermore, even if Mr. Tai's answers could be construed as a statement about Mr. Ng's general character, the government is still not entitled to introduce the 2012 Goldman incident. Federal Rule of Evidence 405 addresses the methods of proving a defendant's character or character trait at trial.

> **(a) By Reputation or Opinion.** When evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation or by testimony in the form of an opinion. On cross-examination of the character witness, the court may allow an inquiry into relevant specific instances of the person's conduct.
>
> **(b) By Specific Instances of Conduct.** When a person's character or character trait is an essential element of a charge, claim, or defense, the character or trait may also be proved by relevant specific instances of the person's conduct.

F.R.E. 405(a)–(b).

Under these provisions, presenting evidence of "relevant specific instances of the person's conduct" is only allowed (1) in cross-examination of "the character witness" (404(a)); or (2) when the character or character trait is an essential element of a charge, claim or defense (404(b)). Here, Mr. Tai was a government witness and not a character witness called by the defense. Additionally, the character traits addressed by Mr. Tai—gentleness, open-mindedness and kindness—are not essential elements of any charge, claim or defense in this case. Consequently, there is no basis until F.R.E. 405 for the government to introduce evidence of a specific 2012 incident at Goldman Sachs.

Moreover, the only cases cited by the government allowing it to ask about specific instances of conduct involved cross-examination of the defendant's character witness. *See United States v. Russo*, 110 F.3d 948, 952–953 (2d Cir. 1997); *United States v. Damblu*, 134 F.3d 490, 494 (2d Cir. 1998). But that is not the remedy the government is seeking. Rather, the government is seeking to have someone at Goldman Sachs testify as part of its direct case about Mr. Ng's disciplinary history record, which includes the 2012 incident. The government has cited no authority that would allow it to call a custodian witness to testify about a specific instance of the defendant's conduct, of which the custodian has no personal knowledge. That is because, as the Second Circuit has noted: "It is a proper exercise of a district court's discretion to exclude evidence that is prejudicial, confusing, or misleading, and to **exclude evidence of specific acts intended to demonstrate character traits not at issue**." *United States v. Wilson*, 750 F.2d 7, 9 (2d Cir. 1984) (emphasis added); *United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991) ("It is within the

BRAFMAN & ASSOCIATES, P.C.

court's discretion to exclude evidence that is prejudicial, as well as 'evidence of specific acts intended to demonstrate character traits not at issue.'" (quoting *Wilson*)).

Lastly, the proposed evidence should also be excluded under F.R.E. 403 because its probative value is substantially outweighed by danger of unfair prejudice. The 2012 Goldman incident—which did not involve clients or Mr. Tai—has little probative value in rebutting Mr. Tai's statements—which were all based on Mr. Tai's personal experiences with Mr. Ng and related to clients. While there is little probative value, however, there is significant undue prejudice. The unproven allegation that Mr. Ng used inappropriate language and acted in a confrontational manner will only serve to make the jury believe that he is a bad person and therefore might have engaged in the alleged conduct at trial. *Cf. Khubani v. Ionic White, Inc.*, No. 05 CIV. 3706 (DC), 2009 WL 691248, at *2 (S.D.N.Y. Mar. 18, 2009) ("Moreover, the danger of unfair prejudice was great, as the evidence was essentially propensity or bad character evidence—intended to show that [the defendant] was a jerk and that he must have engaged in the alleged conduct on April 9, 2005, because he was a bad person. Hence, I concluded that the marginal probative value was substantially outweighed by the danger of unfair prejudice.").

Furthermore, the incident that government proffers occurred in 2012, the same time when the conduct that underlies the 1MDB fraud in this case was being committed. For the jury to hear that Mr. Ng was "counseled" by Goldman that "his behavior and language" were unacceptable (Dkt. 143 at 5) during the same period might lead the jury to improperly believe that Mr. Ng committed other improper acts at Goldman in 2012, i.e., the conduct alleged at trial. Evidence of this kind is precisely what Rule 403 was designed to exclude: prejudicial evidence with little probative value that would remove a defendant's ability to have a fair trial.

3. Conclusion

For the reasons stated above, the government's requests should be denied.

Respectfully submitted,

Marc A. Agnifilo, Esq.
Zach Intrater, Esq.
Teny R. Geragos, Esq.
Jacob Kaplan, Esq.

cc: Counsel for the government (via ECF)