

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

F. #2016R00467

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 28, 2022

By ECF

The Honorable Margo K. Brodie
Chief United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:     United States v. Ng Chong Hwa
>          Criminal Docket No. 18-538 (S-2) (MKB)

Dear Chief Judge Brodie:

        The government respectfully submits this letter to address two issues that we expect will arise tomorrow in connection with the conclusion of Tim Leissner's direct examination and the start of his cross-examination.  The government moves (1) to supplement the bases to admit as non-hearsay Government Exhibit 2470 ("GX-2470"), which includes the front page of The Edge Financial Daily the defendant forwarded to Leissner, and (2) to provide further support of the government's motions in limine to introduce certain statements made by Hwee Bin Lim ("Lim") after the charged conspiracy periods.  For the reasons that follow, the Court should find that the entirety of GX-2470 and the Lim statements are admissible.

I.      GX-2470 Is Admissible in Its Entirety as Non-Hearsay

        For the reasons set forth below, the front page of The Edge Financial Daily the defendant forwarded to Leissner in GX-2470 is admissible as non-hearsay evidence of (1) the defendant's stature at Goldman Sachs, which was affirmatively put in issue as part of his defense to the charges; and (2) the defendant's awareness of the negative press around 1MDB and publicly reported links among the defendant and his co-conspirators, Leissner and Jho Low, months before the 2015 deletion of his personal email accounts.

        A.      Background

        On February 24, 2022, the government offered GX-2470, a personal email from the defendant to Leissner with the subject line, "Edge article…".  The email attached the May 14, 2014 front page of The Edge Financial Daily (the "May 2014 Front Page").  The front page included two articles of relevance here:  (1) an article announcing the defendant's departure from Goldman Sachs; and (2) an article concerning questions about 1MDB's use of funds.

The defendant objected to GX-2470, asserting that The Edge Financial Daily lacked "the standing of . . . [the] New York Times," was "partisan" and "introduc[ed] facts into the case that are not really that reliable." Feb. 24, 2022 Trial Tr. at 1175. Counsel further argued that the article contained "unsworn, uncross-examined facts from who knows where." Id. at 1176. The Court thereafter admitted GX-2470 over the defendant's objection, but directed the government not to publish the article until the Court and the parties had an opportunity to discuss the issue further. See id. at 1177.

B.   Legal Standard

Evidence is generally admissible if it is relevant under the "very broad" standard of Federal Rule of Evidence 401. See, e.g., United States v. Gramins, 939 F.3d 429, 450 (2d Cir. 2019) (noting that relevance under Rule 401 is "easily satisfied" and citing cases for the proposition that Rule 401 is "very broad").

Although out-of-court statements offered for their truth constitute hearsay, "[a]n out-of-court statement offered for some other purpose [than to prove the truth of a fact asserted], such as . . . to demonstrate the statement's effect on the listener, or to show the circumstances under which subsequent events occurred, is not hearsay." United States v. Certified Environmental Servs., Inc., 753 F.3d 72, 89 (2d Cir. 2014). Multiple courts have admitted news reports into evidence where they were not offered for their truth. See, e.g., Travelers Indem. Co. v. Northrop Grumman Corp., 3 F. Supp. 3d 79, 89 n.8 (S.D.N.Y. 2014) (news articles admissible to show knowledge where defendant "clipped and maintained" them and thus "was aware" of their content); Rivera v. Incorporated Vill. of Farmingdale, 29 F. Supp. 3d 121, 130 (E.D.N.Y. 2013) (news articles regarding a controversy admissible not to prove that there was a controversy, but for "the purpose of showing that the [the defendant] knew or believed there was"); Yong Ki Hong v. KBS America, Inc., 951 F. Supp. 2d 402, 421 n.5 (S.D.N.Y. 2013) (news articles offered to show that an alleged scheme was "public knowledge" are not offered to prove the scheme actually existed and thus "do not constitute hearsay"); Madigan v. Exxon Mobil Corp., 2008 WL 11447907, at *3 n.4 (E.D.N.Y. Sept. 23, 2008) (news articles admissible to show "notice"); Munafo v. Metropolitan Transp. Auth., 2003 WL 21799913, at *17 (S.D.N.Y. Jan. 22, 2003) (news article admissible on multiple non-hearsay grounds, including to show "defendants' knowledge" and "their motive"; "None of these purposes depends on the truth of the article; the mere fact of publication suffices."); see generally United States v. Press, 336 F.2d 1003, 1011 (2d Cir. 1965) ("statements inadmissible to prove the truth of the matter they assert may be admitted if the fact of the assertion is in itself relevant").

Even where admissible, Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Evidence is not unduly prejudicial when it is not "more inflammatory than the charged crime[s]," United States v. Livoti, 196 F.3d 322, 326 (2d Cir. 1999), or, put another way, when it involves conduct that is no "more sensational or disturbing than the crimes with which" the defendant is charged, United States v. Roldan Zapata, 916 F.2d 795, 804 (2d Cir. 1990).

C.     <u>Discussion</u>

The Court should admit the entirety of GX-2470 because the defendant forwarded it to Leissner and is not being offered for its truth.  As an initial matter, the defendant's argument that the reputation of The Edge Financial Daily presents a hurdle to admissions is meritless. Whatever the defendant may argue about its standing, as the Court noted at sidebar, he chose to personally forward the May 14, 2014 Front Page to Leissner.  <u>See</u> Feb. 24, 2022 Trial Tr. at 1177.  Defense counsel may attempt to establish the paper's stature and make arguments about the weight that its front page should receive, but that is not relevant to the question of its admissibility.  <u>See</u> <u>United States v. Quiroz</u>, 13 F.3d 505, 514 (2d Cir. 1993).

The defendant's true objection appears to be to the <u>content</u> of the articles included on the May 2014 Front Page.  That objection is meritless because the content of the articles are not being offered for their truth, but for two permissible non-hearsay purposes:  (1) to establish that the defendant's departure from Goldman Sachs was newsworthy and (2) to prove the defendant's knowledge of the increasingly negative press concerning both 1MDB and his ties to Low.  These bases are independently sufficient to warrant the admission of GX-2470 in full.

1.     <u>GX-2470 Is Admissible In Its Entirety to Rebut the Defendant's Argument that He Was a Not an Important Person at Goldman Sachs</u>

The defendant's status at Goldman Sachs was directly put in issue during defense counsel's opening statement, when he characterized the defendant's role at Goldman Sachs as insignificant and suggested that was a reason the jury should acquit him.  Counsel made the following statements to the jury in that regard:

> You might be sitting here thinking, who is Roger at Goldman Sachs.  He must be really important to be bearing the full weight of all that we heard in the Government's opening.  He must be a very important person at Goldman Sachs.
>
> Is he the chief executive officer?  No.  Is he the chief finance officers?  No.  He's not a chief of anything.  He's not even a partner.  Goldman Sachs has 40,000 employees.  It has 400 partners.  Just like we hear in society, the 1 percent, Goldman has 1 percent too.  1 percent are partners, 99 percent aren't.  He's not. He doesn't run Goldman Sachs, he does not set bank policy, he doesn't decide what deals to go after.  He doesn't share in the firm's profits.  He doesn't do any of it.  They didn't ever make him a partner.  Leissner's a partner.  You're going to hear a lot of partners from Goldman Sachs doing a lot of things.  One man here. One.  This man.  Not a partner.
>
> One of the reasons you guys are all on this jury is you guys can figure stuff out.  You can size people up, you can figure out

situations, and you'll reach your own conclusion about why he is
the only one here.

Feb. 14, 2022 Trial Tr. at 36:4-24.

Counsel thereafter continued to reiterate those same assertions about the evidence:

- "Leissner is a partner.  Roger's never a partner, and he's not a partner
  when he meets Leissner."  Id. at 40:5-7.

- "[T]he government is saying Roger did, Roger did, Roger did, Roger is a
  small cog in this huge machine that is Goldman Sachs with all of these
  committees and all of these, you know, levels of review."  Id. at 55:15-17.

The May 2014 Front Page should be admitted to meet these arguments.  The
defendant was not a "small cog" and was not simply a member of Goldman Sachs's
"99 percent"; he was a managing director, charged with running the firm's Malaysian operations
who, when he left, received front page coverage in the Malaysian financial press.  The defendant
knowingly opened the door to evidence of the defendant's stature at Goldman Sachs.  As a result,
the May 2014 Front Page should be admitted.

2.   GX-2470 Is Admissible In Its Entirety to Prove the Defendant's
     Knowledge of Negative Media Reports Concerning 1MDB and His
     Motive for Deleting His Personal Email Accounts

The May 2014 Front Page is also admissible to prove the defendant's knowledge
and awareness of public reporting concerning problems at 1MDB and direct links between the
defendant, Low and Leissner.  In addition to corroborating Leissner's testimony, establishing the
defendant's awareness of this reporting in 2014 provides a crucial link in the chain leading to his
2015 deletion of multiple personal email accounts used in furtherance of the criminal scheme.

Like the defendant's stature at Goldman Sachs, during opening statements,
defense counsel made affirmative claims about what the trial evidence would show regarding the
defendant's deletion of the entirety of his personal email accounts, asserting that there would be
no reason established as to why he deleted them:

- "You're going to find there was no investigation going on, nothing was
  going on, no one was asking about these things[.]"  Feb. 14, 2022 Trial Tr.
  at 49:8-10 (emphasis added).

- "You're going to find that, like I said, it's not like he got a subpoena and
  destroyed the evidence.  You're not going to find anything like that."  Id.
  at 49:21-24.

The Court granted the government's motion in limine to admit evidence of the
defendant's deletion of multiple email accounts.  See Jan. 7, 2022 Status Conf. Tr. at 30-31.  In
moving to admit that evidence, the government laid out the circumstances of the mushrooming
negative media on apparent impropriety at 1MDB, which immediately preceded the 2015
deletions.  See ECF No. 90 ("Gov't Mot.") at 22-23 (detailing the steady stream of negative

reports published in a series of mainstream news outlets between February 8, 2015 and March 7, 2015 about improprieties at 1MDB). Soon after the publication of these and similar articles and reports, the defendant deleted two email accounts that he had used to communicate with co-conspirators during the conspiracies—queensgate.capital@gmail.com and rogerch.ng@gmail.com—which were deleted in their entirety on March 8, 2015. Shortly thereafter, on March 18, 2015, the defendant deleted, again in its entirety, roger.ng1@gmail.com, a third email account that he had used to communicate with co-conspirators during the conspiracies.

The fact that the defendant received and independently forwarded the May 2014 Front Page is highly probative of his awareness and tracking of negative media reports concerning 1MDB as far back as 2014. Indeed, GX-2470 demonstrates conclusively that almost a year before his email deletion, the defendant was aware that questions were being raised about potential problems at 1MDB and that he and Leissner were being linked directly to Low.

The relevance of GX-2470 is not derived from the truth or accuracy of the news reports from the May 2014 Front Page, but from the fact that these reports made the defendant aware that he was being directly tied to Low and 1MDB. In particular, the May 2014 Front Page included the following references:

- "Questions have been raised as to why 1MDB needed to raise so much money [on Project Catalyze] . . . in such a short period of time and then park so much of it . . . overseas." GX-2470 at 1.

- "Bankers said Ng and the firm's Hong Kong-based vice-chairman of investment banking Tim Leissner close to high flying business-man Jho Low, and all three were involved in advising the government in starting up 1MDB." Id. at 2.

- "The fund, chaired by Prime Minister Datuk Seri Najib Razak, has been dogged by controversy since its inception five years ago and has had to frequently allay fears that the billions of dollars in its coffers—mostly raised through borrowings and ploughed into controversial investments—are safe." Id.

Knowledge of these public reports of his links to Low and 1MDB is highly probative of the defendant's motives to delete the entirety of four personal email accounts, a crucial fact demonstrating his consciousness of guilt.

The defendant's forwarding of the May 2014 Front Page is also admissible to corroborate Leissner. On direct examination, Leissner connected the defendant's concern about the scheme with the negative media reporting surrounding 1MDB, explaining that he and the defendant discussed the negative press around 1MDB "all the time" and that the defendant "expressed his concerns about the press as well, that [the press] was being highly critical of our deals. That did not feel comfortable to neither him nor myself." Feb. 24, 2022 Trial Tr. at 1125. Leissner further underscored that Low's connection to 1MDB "was a continuous question" and that he and the defendant "continued to discuss [the increasing negative media] all the time" and that "[i]t was a concern because it was really was a recurring thing. It never went away." Id. at

1174; see also id. at 1123 ("There was plenty of press coverage all the time around those deals. . . . [F]ollowing Project Catalyze, that press coverage continued very negatively so.").

Leissner's testimony on these points is precisely why defense counsel's claim that the government "can get all this out through testimony" is wrong.  First, the government is entitled to prove its case in the manner it chooses bounded by the Federal Rules of Evidence.  See, e.g., Old Chief v. United States, 519 U.S. 172, 186-89 (1997).  Second, with defense counsel having spent at least half of his opening statement telling the jury that Leissner is a liar—and with the full expectation that counsel will further cross Leissner at length to suggest the same—corroborating Leissner is an important part of the government's case.  The May 2014 Front Page does exactly that.

Finally, Rule 403 does not preclude this relevant evidence.  In short, when compared to the trial evidence of the defendant's involvement in the globe-spanning bribery and money laundering scheme and his receipt of $35 million in kickbacks, the May 2014 Front Page is not "any more sensational or disturbing than the alleged crime."  Roldan Zapata, 916 F.2d at 804.  Thus, Rule 403 presents no bar to the admission of GX-2470 in its entirety.

## II.   Lim's Post-Conspiracy Statements Identified by the Government Are Admissible

The government previously moved in limine for a ruling that certain statements made by Lim following the charged conspiracy periods were admissible.  See Gov't Mot. at 32-35.  Specifically, the government sought a ruling regarding statements Lim made (a) in or about 2016 in the defendant's presence about a cover story for the defendant's receipt of criminal proceeds (the "2016 Statements"); and (b) in or about 2017 regarding what the defendant had told law enforcement authorities in Singapore about the 1MDB bond deals (the "2017 Statements").  As the government argued in its moving brief, these statements are admissible on multiple grounds, namely, as (1) adopted statements of the defendant under Federal Rule of Evidence 801(d)(2)(B); (2) statements authorized by the defendant under Rule 801(d)(2)(C); (3) directives or imperatives; (4) statements against penal interest under Rule 804(b)(3); and (5) evidence of the existence of the conspiracy and Lim's participation in it.  See id.

At a pretrial conference on January 7, 2022, the Court stated that it viewed the 2016 Statements as "adopted statements" without reaching the government's other proffered bases for admission, but deferred making a final ruling on the statements to give defense counsel a further opportunity to address the issue.  Jan. 7, 2022 Status Conf. Tr. at 34.  To date, defense counsel has not filed anything additional in response.  With respect to the 2017 Statements, the Court remarked that "it does appear that the statements are admissible" as statements authorized by the defendant and encouraged the parties to discuss whether the statements could or should be sanitized given the concerns defense counsel expressed about references to law enforcement in Singapore.  Id. at 38-40.  The government now renews its motion to admit the proffered testimony, which is summarized below.

The government expects Leissner will testify that, in or around 2016, he met with the defendant, Lim, and Judy Chan in Hong Kong, where the defendant and Lim's feng shui master read Leissner's fortune.  After the meeting, Lim told Leissner and the defendant that they needed to come up with a cover story to explain why Ms. Chan had sent money to the defendant via the Silken Waters / Victoria Square Bank Account.  The defendant and Lim stated that the

best story would be to say that the defendant had previously invested in Ms. Chan's real estate business, and that the money sent to the defendant was a return of capital from that investment. The defendant and Lim further discussed that even though there was no money that actually went from the defendant or Lim to Ms. Chan's business, they would fabricate a story that the original investment by the defendant into Ms. Chan's business took place a long time ago when money was not as easily traced, especially within China. The defendant further stated that he had not wanted his name involved in the original transfers of criminal proceeds to the Silken Waters / Victoria Square Bank Account, and he also did not want his name associated with the cover-up story. The defendant and Lim discussed creating a document to help explain the fake investment between Lim and Ms. Chan, though, the government expects Leissner would testify that document was not ultimately made, and the government has uncovered no evidence of it..

   The government further expects Leissner will testify that after the defendant was detained in Singapore in connection with an investigation by Singaporean authorities of the 1MDB matter in approximately 2017, Lim called Leissner in a panic to advise him of the arrest. During this conversation, Lim relayed to Leissner what the defendant had told the Singaporean authorities, assuring him that the defendant had just focused on the structure of the 1MDB bond deals and nothing else about them, and that the defendant had downplayed the current contact between the defendant and Leissner, saying only that the two were in contact related to their then-current work on the company Celsius. Lim reiterated to Leissner the importance of having a common story regarding the transfer of funds to the defendant and Lim. Leissner relayed the idea of a cover story and creating documents to support that story to Ms. Chan, but took no actual steps to create such documents.

   For the reasons stated in the government's initial brief, the 2016 Statements are admissible under Rule 801(d)(2)(B) as adopted statements of the defendant, and the 2017 Statements are admissible as statements authorized by the defendant, as the Court previously concluded. These statements are also admissible under the other proffered bases for admission.

III.     <u>Conclusion</u>

        The government respectfully requests that the Court admit GX-2470 in its entirety and permit the introduction of Lim's 2016 Statements and 2017 Statements.

Respectfully submitted,

BREON PEACE
United States Attorney

By:    s/_____
Alixandra E. Smith
Drew G. Rolle
Dylan A. Stern
Assistant U.S. Attorneys

DEBORAH L. CONNOR
Chief, Money Laundering and Asset
Recovery Section, Criminal Division
U.S. Department of Justice

JOSEPH BEEMSTERBOER
Acting Chief, Fraud Section
Criminal Division
U.S. Department of Justice

s/_____
Jennifer E. Ambuehl
Trial Attorney

s/_____
Brent Wible
Trial Attorney

cc:    Counsel for the defendant (via ECF and email)