

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

F. #2016R00467

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 2, 2022

By ECF

The Honorable Margo K. Brodie
Chief United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Ng Chong Hwa
      Criminal Docket No. 18-538 (S-2) (MKB)

Dear Chief Judge Brodie:

   The government respectfully submits this letter in response to the Court's February 28, 2022 request for briefing regarding marital communications between Tim Leissner and Kimora Lee Simmons Leissner that the prosecution team produced before trial and which the defense now seeks to use to cross-examine Leissner (the "Marital Communications").

   As a threshold matter, the case team takes no position regarding whether the marital privilege is applicable to the Marital Communications.  Regardless of whether the Marital Communications are protected by marital privilege, it is clear they are extrinsic evidence and entirely cumulative of other material that is available to the defense, for the reasons described in the government's February 27, 2022 letter.  See ECF No. 151.  For those reasons, the Court should preclude the defense from introducing the Marital Communications as evidence or referencing the content therein as part of its cross-examination of Leissner.

   Although the government believes the Court need not reach the marital privilege question presented in this case, the government nonetheless sets forth herein its view of the law governing the marital privilege.  The marital privilege is an evidentiary privilege grounded in common law, not the Constitution.  See generally Trammel v. United States, 445 U.S. 40 (1980).[1]  Because the marital communication privilege is an evidentiary privilege, it prohibits only the admission into evidence of confidential marital communications.  See, e.g., United

---

[1] There are two marital privileges:  (1) the adverse testimony privilege; and (2) the marital communications privilege.  Because only the marital communication privilege has been raised by the written communications the defendant seeks to use, this letter focuses on that privilege.

States v. Harper, 450 F.2d 1032, 1045 (5th Cir. 1971); United States v. Giavasis, 805 F.2d 1037, 1986 WL 18086, at *3 (6th Cir. 1986) (unpublished opinion); see also United States v. Alexio, 2015 WL 6181752, at *2 (D. Haw. Oct. 21, 2015) ("The marital privileges are evidentiary principles without 'constitutional underpinnings.'" (quoting United States v. Lefkowitz, 618 F.2d 1313, 1319 (9th Cir. 1980))).  For this reason, numerous courts have held that the government may use confidential marital communications to investigate crimes.  See, e.g., Harper, 450 F.2d at 1046; United States v. Richter, 2021 WL 6197899, at *4 n.5 (N.D. Ohio Dec. 30, 2021) (citing cases establishing that "[c]ourts have consistently held that police may use confidential marital communications to investigate crimes"); Alexio, 2015 WL 6181752, at *2 (same); United States v. Carlson, 946 F. Supp. 2d 1115, 1118 (D. Or. 2013) (same).  And, of course, there is no taint associated with the possession of spousal communications.  See, e.g., United States v. Marashi, 913 F.2d 724, 731 n.11 (9th Cir. 1990) (holding in a case concerning the marital communications privilege that "no court has ever applied [a taint] theory to any evidentiary privilege and . . . we have indicated we would not be the first to do so"); Lefkowitz, 618 F.2d at 1318 n.8 ("Because we reject . . . Lefkowitz's argument that the marital privileges are somehow constitutionally grounded in, among other locations, the Fourth Amendment, we doubt that a secondary source of information obtained through information protected by the confidential marital communications privilege would in any way be 'tainted.'"); cf. United States v. Squillacote, 221 F.3d 542, 558-60 (4th Cir. 2000) (analogizing the doctor-patient privilege to the spousal communications privilege and noting that because neither is constitutionally based, possession of communications protected by such privileges does not taint the prosecution team).

       Relatedly, the government's production of the Marital Communications to the defense was proper.  The Marital Communications were produced consistent with the government's disclosure obligations and within the confines of the protective order in this case.  See ECF No. 26.  The government's decision to produce the Marital Communications to the defense in no way vitiates any privilege that attaches to these documents.  As the case law described above makes clear, the privilege does not limit the possession of spousal communications, but it does restrict their use:  a party may not use a document as to which a claim of marital privilege has been asserted absent a finding either that the privilege does not apply or that some exception does.[2]

       As a baseline, courts have generally held that the spousal communications privilege: (1) extends to words and acts intended to be a communication; (2) requires a valid marriage; and (3) applies only to confidential communications.  See, e.g., In re Witness Before Grand Jury, 791 F.2d 234, 237 (2d Cir. 1986).  Marital communications are presumed to be confidential.  E.g., United States v. Pugh, 162 F. Supp. 3d 97, 109 (E.D.N.Y. 2016).  Because the

---

[2]     Defense counsel was incorrect in asserting during the February 28, 2022 status conference that the defense is entitled to use the Marital Communications simply because the government produced them in discovery.  It is never true that a document is admissible simply because a party possesses it.  To the contrary, evidence may be inadmissible for a variety of reasons, including because it is hearsay or irrelevant.  The proponent of evidence bears the burden of demonstrating its admissibility.  See, e.g., United States v. Mendlowitz, 2019 WL 6977120, at *9 (S.D.N.Y. Dec. 20, 2019); United States v. Camacho, 353 F. Supp. 524, 535-36 (S.D.N.Y. 2015).  This is no less true for marital communications than it is for any other evidence.

marital communications privilege impedes the search for truth, it is to be narrowly construed. See Trammel, 445 U.S. at 50; United States v. Estes, 793 F.2d 465, 468 (2d Cir. 1986) (observing that testimonial privileges "must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth" (internal quotation marks omitted)).  The party asserting the marital privilege has the burden of proving that a communication is a marital communication.  In re Reserve Fund Securities and Derivative Litigation, 275 F.R.D. 154, 158 (S.D.N.Y. 2011).  "If the privilege is established, the burden shifts to the opposing party to show that an exception defeats the privilege."  United States v. Breton, 740 F.3d 1, 9 (1st Cir. 2014); see also United States v. Premises Known as 281 Syosset Woodbury Road, 862 F. Supp. 847, 860 (E.D.N.Y. 1994) (noting that it was the party asserting an exception to the marital communications privilege that bore the burden of establishing that the exception applied).

Multiple courts, including the Second Circuit, have recognized that marital privilege will not shield communications regarding jointly undertaken criminal activity.  See, e.g., Estes, 793 F.2d at 468 (agreeing with numerous courts of appeal that applying "the 'partnership in crime' exception to the confidential communication privilege" will result in "greater public good . . . from permitting the spouse of an accused to testify willingly concerning their joint criminal activities than would come from permitting the accused to erect a roadblock against the search for truth"); see also Marashi, 913 F.2d 724, 731 (9th Cir. 1990) ("[W]e join our sister circuits in holding that the marital communications privilege does not apply to statements made in furtherance of joint criminal activity.").  Under this exception, conversations between spouses that would otherwise be protected from disclosure are admissible "when the communications in question were in furtherance of unlawful joint criminal activity."  Estes, 793 F.2d at 468.

****

In sum, the government takes no position as to the applicability of the marital communications privilege in this case or whether the defense could demonstrate that any such privilege between Leissner and Ms. Simmons Leissner may be vitiated, whether based on jointly undertaken criminal activity or on any other basis.  As noted, however, the Court should decline to permit the defense to introduce the Marital Communications into evidence or otherwise use them, as they are cumulative of evidence already produced to the defense—which has clearly already informed the anticipated cross-examination of Leissner, based on defense counsel's repeated representations—and would be used as extrinsic evidence to impeach Leissner on

3

collateral issues.  See ECF No. 151; see also ECF No. 138 at 19-20 (outlining the proper approach under Rule 608(b) and relevant case law).

                              Respectfully submitted,

                              BREON PEACE
                              United States Attorney

                   By:     s/_____
                              Alixandra E. Smith
                              Drew G. Rolle
                              Dylan A. Stern
                              Assistant U.S. Attorneys

| DEBORAH L. CONNOR | JOSEPH BEEMSTERBOER |
|---|---|
| Chief, Money Laundering and Asset | Acting Chief, Fraud Section |
| Recovery Section, Criminal Division | Criminal Division |
| U.S. Department of Justice | U.S. Department of Justice |
| | |
| s/_____ | s/_____ |
| Jennifer E. Ambuehl | Brent Wible |
| Trial Attorney | Trial Attorney |

cc:     Counsel for the defendant (via ECF and email)