BRAFMAN & ASSOCIATES, P.C.

ATTORNEYS AT LAW

256 FIFTH AVENUE, 2ND FLOOR

NEW YORK, NEW YORK 10001

TELEPHONE: (212) 750-7800

FACSIMILE: (212) 750-3906

E-MAIL: ATTORNEYS@BRAFLAW.COM

BENJAMIN BRAFMAN
————
MARK M. BAKER
OF COUNSEL
MARC A. AGNIFILO
OF COUNSEL
ZACH INTRATER
OF COUNSEL

ANDREA L. ZELLAN
JACOB KAPLAN
TENY R. GERAGOS
ADMITTED IN NY & CA
STUART GOLD

March 2, 2022

<u>VIA ECF</u>
The Honorable Margo K. Brodie
Chief United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

     Re:     <u>United States v. Ng Chong Hwa a.k.a Roger Ng</u>, 18 Cr. 538 (MKB)

Dear Chief Judge Brodie:

     We write to address the privilege issues recently raised concerning communications between Timothy Leissner and Kimora Lee Simmons Leissner, who asserts a spousal privilege. For the reasons stated below, the communications between Leissner and Ms. Simmons Leissner are not privileged because Leissner was already married to someone else at the time he took part in a marriage ceremony with Ms. Simmons Leissner. Moreover, even assuming a spousal privilege exists, certain communications are not protected because of the crime-fraud exception to the privilege, as these communications were made in furtherance of joint participation in criminal activity.

**1.     Background**

     In July 2019, the government's trial team started producing discovery in accordance with Rule 16 of the Federal Rules of Criminal Procedure. Since that time, up to and including during trial, the government has made 43 separate productions to the defense. On July 31, 2019, the government produced email and other materials obtained through judicially-authorized search warrants from Leissner's email accounts. Included in this production were emails between Leissner and Ms. Simmons Leissner. Starting in February 2020 through the present, the

BRAFMAN & ASSOCIATES, P.C.

government has since made additional productions of email and other materials obtained from Leissner's numerous electronic devices. Some of these productions also included communications between Leissner and Ms. Simmons Leissner.

These productions, however, did not include all communications between Leissner and Ms. Simmons Leissner that were in Leissner's emails accounts and electronic devices, as documents were held back as part of the review by the government's privilege review team. Because some of the communications were held back for privilege review, counsel had every reason to believe that the communications that were provided to the defense had cleared privilege review and been deemed non-privileged.

On February 20, 2022, because of concerns of missing documents, counsel requested a privilege log of all Leissner materials or documents that the privilege team had held back for any privilege, such as attorney-client privilege or marital privilege. Three days later, and undoubtedly spurred by counsel's privilege log request, the government informed counsel and the Court that its privilege team—in what the government would later describe as a "total institutional failure"—had failed to produce approximately 15,500 documents held by the privilege team related to Leissner that were not privileged.

On February 25, 2022, after being ordered by the Court, the government produced a privilege log listing the identifying information for the communications held back by the privilege team. This log included communications that were clearly not privileged, such as communications between Leissner and his attorneys or Ms. Simmons Leissner that included a third party – which of course broke the privilege. The log also included communications with attorneys relating to purchases of assets that Leissner purchased with his illegal proceeds from the 1MDB fraud. In discussions with counsel, Leissner's attorneys agreed that the communications including third parties were not privileged, and that the communications with attorneys relating to the purchase of assets with 1MDB proceeds were not protected by the attorney-client privilege because of the crime-fraud exception.

The remaining issues relate to certain communications between Leissner and Ms. Simmons Leissner that were made after the couple engaged in a wedding ceremony in March 2014. Ms. Simmons Leissner's attorneys have argued that she has a valid spousal privilege with Leissner and these communications are therefore privileged. Defense counsel has argued that there is no spousal privilege between Leissner and Ms. Simmons Leissner because Leissner was married to Judy Chan Leissner when he engaged in a wedding ceremony with Ms. Simmons Leissner. Defense counsel has further argued that, even is a spousal privilege applied to Ms. Simmons Leissner, certain communications would not be protected because of the crime-fraud exception.

-2-

BRAFMAN & ASSOCIATES, P.C.

While this issue is pending before the Court, counsel has agreed not to review an additional subset (more than a few hundred) of spousal communications that have been recently released by the privilege team and subsequently produced to the defense. It appears that the government trial team has reviewed these communications.

**2.    Legal Standard: Spousal Privilege and Crime Fraud Exception**

In the Second Circuit, the marital communications privilege has three requirements: (1) the parties were in a valid marriage at the time of the communication; (2) the utterances or expressions were intended to convey information between spouses (communication prong); and (3) the communications were intended to be confidential (confidentiality prong). *United States v. Pugh*, 945 F.3d 9, 18 (2d Cir. 2019).

Moreover, "[b]ecause the marital privilege deprives fact-finders of potentially useful information, [t]he party asserting . . . the marital communications privilege[] bears the burden of establishing all of the essential elements involved." *United States v. Pugh*, 162 F. Supp. 3d 97, 102 (E.D.N.Y. 2016) (quotations and citations omitted); *see also In re Witness Before Grand Jury*, 791 F.2d 234, 237 (2d Cir. 1986) ("The burden of showing the existence of such a valid marriage rests on the person seeking to invoke the privilege.").

Even if the spousal privilege would otherwise apply, "where marital communications involve the commission of a crime in which both spouses are participants, they do not fall within the marital privilege." *United States v. Poole*, 451 F. App'x 298, 307 (4th Cir. 2011); *see also United States v. Banks*, 556 F.3d 967, 974 (9th Cir. 2009) ("[T]he marital communications privilege does not apply to statements made in furtherance of joint criminal activity."); *United States v. Estes*, 793 F.2d 465, 468 (2d Cir. 1986) ("The . . . 'partnership in crime' exception to the confidential communication privilege [provides] . . . that greater public good will result from permitting the spouse of an accused to testify willingly concerning their joint criminal activities than would come from permitting the accused to erect a roadblock against the search for truth."); *In re: Doe*, No. 01-149 (JG), 2001 WL 1152816, at *2 (E.D.N.Y. Sept. 18, 2001) ("To the extent that Ms. Doe seeks to rely on the marital communications privilege, an exception applies where the communications at issue were for the purpose of committing a crime and both spouses were aware of that fact when the communications occurred." (citing *Estes*)).

**3.    Ms. Simmons Leissner Has Failed to Meet Her Burden to Establish the Spousal Privilege**

As noted above, the first requirement to invoking the spousal privilege is that "there exists a marriage valid at the time the communication is made." *In re Witness*, 791 F.2d at 237; *United States v. Hamilton*, 19 F.3d 350, 354 (7th Cir. 1994) ("The marital communications privilege is in

BRAFMAN & ASSOCIATES, P.C.

derogation of the truth, as are other evidentiary privileges; and therefore the 'valid marriage' requirement must be interpreted strictly."). Leissner and Ms. Simmons Leissner participated in a wedding ceremony in March 2014 in California. At that time, however, Leissner was still married to Judy Chan Leissner, who he had married in December 2000 in Hong Kong. Under California law, only "[t]wo unmarried persons 18 years of age or older, who are not otherwise disqualified, are capable of consenting to and consummating marriage." Cal. Fam. Code § 301. Because Leissner was not an "unmarried person" when he married Ms. Simmons Leissner in March 2014, their marriage was not valid. Consequently, Ms. Simmons Leissner has failed to establish the first requirement that "there exists a marriage valid at the time the communication is made." *In re Witness*, 791 F.2d at 237.

Counsel for Ms. Simmons Leissner have argued that Leissner was not married to Judy Chan Leissner at the time he married Ms. Simmons Leissner because Leissner's marriage to Judy Chan Leissner was itself not valid. In making this argument, Ms. Simmons Leissner relies on the fact (elicited at trial yesterday) that Leissner was still married to his previous wife at the time he married Judy Chan in December 2000. Because the marriage to Judy Chan Leissner was not valid, and because Leissner divorced his previous wife in March 2001, Ms. Simmons Leissner argues that Leissner was unmarried at the time of their March 2014 marriage and that she is therefore entitled to invoke the spousal privilege.

This argument should be rejected. Under § 19 of the Matrimonial Causes Ordinance, Cap 179, of Hong Kong law (where Leissner married Judy Chan in December 2000), a "husband or wife may present a petition to the court praying that his or her marriage may be declared null and void on any of the grounds mentioned in section 20." (Attached as Exhibit 1.) One of the provisions of section 20 is that a marriage shall be void on the grounds that "at the time of the marriage either party was already lawfully married." *Id.* at § 20(1)(c). Reading the two sections together, the Hong Kong law provides that a party to a marriage "may" seek to have the marriage declared null and void because one of the parties was already lawfully married. Importantly, these provisions do not state that such a marriage is null and void on its own; rather, it will become null and void *only* when a party seeks a declaration that the marriage is null and void.

Here, there is no evidence that Judy Chan Leissner sought to have her marriage to Leissner declared null and void because he was married at the time of their December 2000 marriage. Indeed, Leissner lied to Judy Chan Leissner about his marital status, and so she had no idea that he was still married at the time of their December 2000 wedding. Absent that declaration, the marriage between Judy Chan and Leissner was legitimate under Hong Kong law and never declared null and void. Accordingly, Leissner was still married to Judy Chan Leissner at the time he performed in a wedding ceremony with Kimora Lee Simmons Leissner in March 2014.

-4-

BRAFMAN & ASSOCIATES, P.C.

**4.      Even If the Spousal Privilege Applies, It Does Not Protect Communications Made in Furtherance of Joint Criminal Activity**

Even if Ms. Simmons Leissner could meet her burden establishing that she is entitled to the spousal privilege, there is more than a good faith basis for a reasonable person to believe that she and Leissner jointly engaged in money laundering and potentially obstruction of justice by hiding proceeds and assets derived from proceeds of the 1MDB fraud, and that certain communications were made in furtherance of those crimes.



BRAFMAN & ASSOCIATES, P.C.

The statements by Leissner to the FBI[1] were elaborated on at trial. Leissner's trial testimony has established that, while married to Ms. Simmons Leissner, Leissner continued to launder money 1MDB proceeds for Jho Low using shell companies. (Tr. 1146:22-24). Leissner testified that he received €145 million from a "Kuwaiti sheikh." (Tr. 1147:1-3). That money went to Midas Commodities Agents Limited—the Seychelles entity beneficially owned by Ms. Simmons Leissner. Leissner testified that Jho Low then directed payments of portions of that money, including one $39 million transfer that related to a 1MDB bond payment. (Tr. 1148:1-14). That transfer was made from Midas. Leissner testified that he took approximately $80 million of the "Kuwaiti Sheikh's" money for himself. (Tr. 1148:15-19). That money went from Midas (Seychelles), an entity beneficially owned by Ms. Simmons Leissner, through Midas Commodities Limited DE LLC, a Delaware LLC owned by Ms. Simons Leissner, to Keyway Pride Limited LLC, a California company owned by Ms. Simmons Leissner. Leissner named Keyway Pride in his testimony. (Tr. 1149:10). Leissner called Keyway Pride a "shell holding company here in the United States." (Tr. 1149:7-8). Leissner testified that he used the $80 million that he transferred to Keyway Pride, the shell company owned by Ms. Simmons Leissner, for "investments." (Tr. 1148:19-20).

These investments were made into numerous other entities, some of which were also owned by Ms. Simmons Leissner. Leissner testified that these funds were transferred from Midas (Seychelles)'s bank account at a bank in the Bahamas. (Tr. 1148:24-1149:4). Again, Midas (Seychelles) was beneficially owned by Ms. Simmons Leissner.

This trial evidence, coupled with Leissner's statements to law enforcement, provide sufficient basis for counsel to believe that Leissner and Ms. Simmons Leissner jointly committed the crimes of money laundering (18 U.S.C. § 1956(a)(1)(B)) and engaging in monetary transactions in property derived from specified unlawful activity (18 U.S.C. § 1957(a)). They also may qualify as obstruction of justice, as certain activities took place not only when Leissner knew he was under investigation but even after he had pled guilty in this matter.

Accordingly, counsel is requesting that this Court and the parties develop a procedure to allow the Court to conduct an *in camera* review of the relevant spousal communications (including communications culled from the hundreds of spousal communications that the defense has agreed not to review pending a decision on this motion) to determine whether the crime-fraud exception applies to the communications.

---

[1] By openly discussing his communications with Ms. Simmons Leissner with the government in his interviews, Leissner has waived his spousal privilege as to his portion of these communications. *United States v. Lilley*, 581 F.2d 182, 189 (8th Cir. 1978) ("The confidential communications privilege is waived, by definition, when the allegedly confidential communication is disclosed by the spouse claiming the privilege because the communications are no longer confidential.").

Brafman & Associates, P.C.

**5.     Conclusion**

        For the reasons stated above, the Court should find that the communications between Leissner and Ms. Simmons Leissner are not privileged because Mr. Leissner was already married to Judy Chan Leissner at the time he engaged in a wedding ceremony with Ms. Simmons Leissner. Should this Court find that a spousal privilege exists, the Court and the parties should develop a procedure to allow the Court to conduct an *in camera* to determine whether specific spousal communications are not protected because of the crime-fraud exception to the privilege.

                                        Respectfully submitted,

                                        Marc A. Agnifilo, Esq.
                                        Zach Intrater, Esq.
                                        Teny R. Geragos, Esq.
                                        Jacob Kaplan, Esq.

cc:     Counsel for Ms. Simmons Leissner (via email)
        Counsel for Timothy Leissner (via email)
        Counsel for the Government (via ECF and email)

-7-