# KING & SPALDING

King & Spalding LLP
633 West Fifth Street
Suite 1600
Los Angeles, CA 90071
Tel: +1 213 443 4355
Fax: +1 213 443 4310
www.kslaw.com

David K. Willingham
Partner
Direct Dial: +1 415 318 1204
Direct Fax: +1 213 443 4310
dwillingham@kslaw.com

Brian R. Michael
Partner
Direct Dial: +1 213 443 4317
Direct Fax: +1 213 443 4310
bmichael@kslaw.com

March 3, 2022

<u>Via ECF and E-mail</u>

The Honorable Margo K. Brodie
Chief United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    *United States v. Ng Chong Hwa a.k.a. Roger Ng*, 18 Cr. 538 (MKB)

Dear Chief Judge Brodie,

We respectfully submit this letter brief in opposition to the defense's March 2, 2022 letter brief (Dkt. 158), and in further support of our March 2, 2022 letter brief (Dkt. 155). In its letter, the defense repeats its frivolous and meritless claims that our client Kimora Lee Simmons Leissner ("Mrs. Leissner" or "client") and her husband Tim Leissner do not have a valid marriage, and that the crime-fraud exception vitiates our client's martial communications privilege. Neither position withstands scrutiny. Rather, the facts, case law, and purported foreign law cited by the defense actually support exactly what we seek: the immediate claw-back of Mrs. Leissner's privileged marital communications and the preclusion of defense counsel from using these communications for any purpose.

March 3, 2022
Page 2

**<u>Mr. and Mrs. Leissner Entered Into and Maintain a Valid Marriage</u>**

The defense's claim that Mr. and Mrs. Leissner are not validly married not only ignores undisputed facts and well-established law, but it is disingenuous given the defense's prior claims that Mr. Leissner's second marriage is void.  As noted in our opening letter brief, the law of the place of marriage controls the question of its validity.  Dkt. 155 at 3.  It is undisputed our client and Mr. Leissner's marriage was consummated in California, so therefore California law applies.  Under California law, their marriage is <u>presumed</u> to be valid because the parties consented to it, and consent was followed by issuance of a license, solemnization, and authentication of the license.  Cal. Fam. Code § 300; *see* Dkt. 155 at 3.

The presumption of the validity of their marriage "is superior to and controlling of the mere presumption that a prior marriage continues in force." *Moran v. Superior Ct. in & for Sacramento County*, 38 Cal.App.2d 328, 332 (Ct. App. 1940).  That is why the party attacking the validity of a marriage – *i.e.*, the defense here – <u>bears a heavy burden</u> of proving it is invalid.  *See Leslie v. Leslie*, 244 Cal.App.2d 516, 520 (Ct. App. 1966) ("Equally important is the policy of preserving the husband-and-wife status of the parties to the most recent marriage unless and until its invalidity is proven."); *see also* Dkt. 155 at 3 (citing cases).  The defense, however, offers nothing to refute this presumption, nor does it carry its heavy burden.

Instead, the defense merely relies on Hong Kong law (where Mr. Leissner purportedly married Ms. Chan) to argue Mr. Leissner was still married to Ms. Chan at the time he married Mrs. Leissner.  Setting aside the fact that the defense does not offer any opinion or analysis from experienced Hong Kong family law counsel qualified and competent to do so,[1] the provisions they cite of the Matrimonial Causes Ordinance, Ch. 179, clearly state that "<u>[a] marriage . . . shall be void</u> [if] . . . at the time of the marriage either party was already lawfully married." *See* Dkt. 158-1 (§ 20(1)(c) (emphasis added)).  Regardless of whether a husband or wife may also petition, under section 19 of the Matrimonial Causes Ordinance, Ch. 179, for a formal declaration that the marriage is void, the defense points to no legal authority for their illogical, self-serving leap (*see* Dkt. 158 at 4) that absent such a declaration, a plainly void marriage is anything other than void.  Common sense dictates that the obvious purpose of the latter provision (§ 19) is a practical one, *i.e.*, to provide for a process whereby a party to a void marriage may obtain a formal statement of its invalidity that they can hold out to the world for whatever purpose they may need it.  Otherwise, the defense's conclusion that a bigamous marriage "will become null and void *only* when a party seeks a declaration that the marriage is null and void" (for which they offer no citation whatsoever) would lead to an absurd result: if neither party to a void bigamous marriage seeks such a court declaration, they could carry on as, and would actually be, lawfully married.  This cannot be so.  Defense counsel's manufactured approach would also render meaningless the distinction between a void and a "voidable" marriage

---

[1] Indeed, other than their say-so, the defense offers nothing for the parties or the Court to know whether they have cited to valid Hong Kong law, much less the entirety of the relevant statutory provisions and other law, or that they are properly interpreting and applying the law they cite.  In any event, applying basic principles of statutory interpretation, their claims still fail.

March 3, 2022
Page 3

(*compare* § 20(1) (void marriages) *to* § 20(2) (voidable marriages)), whereby absent such a petition, the law does appear to allow parties to remain lawfully married.

More importantly, and more relevant here, California law is clear that when a marriage at the time either party was already lawfully married is "void," that means the marriage is void *ab initio*. It is void for all purposes from the moment of its inception, regardless of whether a party seeks a declaration that it was null and void. *See In re Marriage of Seaton*, 200 Cal.App.4th 800, 806 (Ct. App. 2011) ("[A] void marriage is invalid for all purposes from the moment of its inception, whether or not it has been so declared in a court of law, and its invalidity may be shown collaterally in any proceeding in which the fact of marriage may be material."). The undisputed testimony from Mr. Leissner during this trial is that he was still married to his first wife when he decided to marry Ms. Chan. (Tr. 1139:13-1140:1.) As such, the marriage to Ms. Chan is void *ab initio* and cannot be used to challenge the marital privileges at issue in this case.

Even under a basic conflict of law analysis, the result is the same. Assuming, *arguendo*, Mr. Leissner's marriage to Ms. Chan was not void from the beginning under Hong Kong law (which it was), courts can refuse to recognize a marriage that, although valid where entered into, offends a fundamental public policy of the forum state. "The prime question for the forum to determine in that connection is whether the courts of the state of most significant relationship would themselves have invalidated the marriage if the question had come before them." Restatement (Second) of Conflict of Laws § 283, comm. k. Here, California is the state with the most significant relationship to Mr. and Mrs. Leissner's marriage—and to Mrs. Leissner's assertion of the confidential marital communications privilege—which clearly would have invalidated Mr. Leissner's marriage to Ms. Chan because "an individual can only be married to one person at a time" and a "bigamous marriage is void from the beginning." *In re Marriage of Seaton*, 200 Cal.App.4th 800, 802 (Ct. App. 2011) (citing Cal. Fam. Code § 2201)); Restatement (Second) of Conflict of Laws § 283, comm. k ("rules that the forum would be likely to find embody a sufficiently strong policy of that state to warrant invalidation of an out-of-state marriage are rules which prohibit polygamous marriages . . . .").

Accordingly, under either California or the purported Hong Kong law cited by the defense, and the undisputed facts, Mr. Leissner's marriage to Ms. Chan was void from the beginning due to his preexisting marriage with his first wife, Afsaneh Ghaderi. Because Mr. Leissner thereafter obtained a divorce decree with Ms. Ghaderi prior to his marriage to Mrs. Leissner, his and our client's marriage is, without question, valid.

**The Defense Continues to Offer No Evidence Supporting the Crime-Fraud Exception**

In their letter brief, the defense does not, and cannot, dispute that the crime-fraud exception only applies to spousal communications if the crime was jointly committed by the spouses. *See* Dkt. 158 at 5. To restate what is also not in dispute: Mrs. Leissner has never been identified by the government as a target of the instant investigation nor an unindicted co-conspirator in connection with the criminal charges for which Roger Ng now stands trial. Astonishingly, the defense nonetheless asserts "there is more than a good faith basis for a reasonable person to believe that she and Leissner jointly engaged in money laundering and potentially obstruction of justice." Dkt. 158 at 5. This over-lawyered and carefully parsed statement reveals the utter lack of any

March 3, 2022
Page 4

evidence that the defense can point to showing Mrs. Leissner was a knowing and willful participant in any of her husband's (or Mr. Ng's) criminal conduct. The dearth of any such evidence is all the more apparent given the fact that, as the defense notes, many thousands of documents have been produced by the government to the defense (including our client's confidential and private marital communications), and Mr. Leissner has apparently sat for more than 50 government interviews. It is also our understanding that despite many days of direct testimony and, more notably, cross-examination, no testimony has been elicited establishing our client had the requisite knowledge and intent. And that is because there is none. The defense bears the burden of showing that Mrs. Leissner had actual knowledge of and was a knowing participant in unlawful conduct. The defense has failed to meet that burden here.

In another illogical and self-serving leap, the defense posits that Mrs. Leissner "jointly" committed crimes with Mr. Leissner because she beneficially owns shell holding companies to which Mr. Leissner transferred money. *See* Dkt. 158 at 6. But the joint crime exception requires <u>active and voluntarily</u> participation in the crime, not just being an innocent bystander. *See United States v. Parker*, 834 F.2d 408, 412-13 (4th Cir. 1987) (spouse "active and voluntarily participant" in kidnapping and alleged murder); *United States v. Picciandra* (1986) 788 F.2d 39, 43-44 (1st Cir. 1986) (wife delivered cash and participated in discussions regarding laundering cash proceeds of smuggling operation and evading income tax liability); *cf. United States v. Estes*, 793 F.2d 465, 466 (2d Cir. 1986) (communication to wife after theft of money had already been completed was privileged). There is simply no basis to impute knowledge to Mrs. Leissner.

The defense also argues that [REDACTED] but fails, again, to cite any evidence showing she had knowledge that these joint efforts – which took place prior to the indictment of her husband and well-after his (and Mr. Ng's) substantive crimes had been committed – were part of a money laundering or other crime scheme not alleged here (or, as the defense speculates, "may qualify as obstruction of justice"). Of course, it is not uncommon [REDACTED], and here these efforts were led by Mrs. Leissner's husband, to whom she understandably deferred as an experienced and successful Goldman Sachs banker. Despite repeated accusations, posturing, and empty promises, the defense has failed to offer any evidence of actual knowledge and intent, which is what the law requires. As such, the defense has failed to carry its burden to establish that the crime-fraud exception vitiates our client's marital communications privilege.

The defense also focuses on the fact that Mr. Leissner has waived the spousal communications privilege "as to his portion of these communications." Dkt. 158 at 6 n. 1. This is irrelevant and contrary to the well-established principle that joint privilege holders cannot waive the privilege without the other's consent or, at a minimum, an opportunity to object. *U.S. v. Brock*, 724 F.3d 817, 822 (7th Cir. 2013) (husband and wife waived marital communications privilege when wife testified without objection); *United States v. Dien*, 609 F.2d 1038, 1043–44 (2d Cir. 1979) (defendant-spouse waived marital communications privilege by failing to object to wife's testimony at suppression hearing). To state the obvious, Mrs. Leissner had no opportunity to object to Mr. Leissner's discussions with the government that may have related to their confidential communications. Accordingly, there was no waiver as to any of their spousal communications.

March 3, 2022
Page 5

### The Privileged Evidence Is Also Cumulative, Irrelevant, and Prejudicial

Finally, we again join in the government's position, as argued further in their March 2, 2022 letter brief (Dkt. 156), that, even if the Court finds somehow there is no marital privilege, this evidence is both prejudicial and highly cumulative, and merely being offered as extrinsic impeachment evidence, and therefore should not be part of this trial.

### Conclusion

For all of the foregoing reasons, and for those stated in our prior letter brief, we respectfully seek an order that (1) all of Mrs. Leissner's marital communications produced by the government to defense counsel in this case be immediately clawed back; and (2) defense counsel is precluded from using any of our client's marital communications for any purpose.

Very truly yours,

David K. Willingham
Brian R. Michael

BRM:bgk