# Brafman & Associates, P.C.
ATTORNEYS AT LAW

256 FIFTH AVENUE, 2ND FLOOR

NEW YORK, NEW YORK 10001

TELEPHONE: (212) 750-7800

FACSIMILE: (212) 750-3906

E-MAIL: ATTORNEYS@BRAFLAW.COM

BENJAMIN BRAFMAN
―――
MARK M. BAKER
OF COUNSEL

MARC A. AGNIFILO
OF COUNSEL

ZACH INTRATER
OF COUNSEL

ANDREA L. ZELLAN

JACOB KAPLAN

TENY R. GERAGOS
ADMITTED IN NY & CA

STUART GOLD

March 5, 2022

<u>VIA ECF</u>
The Honorable Margo K. Brodie
Chief United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

  Re: <u>United States v. Ng Chong Hwa a.k.a Roger Ng</u>, 18 Cr. 538 (MKB)

Dear Chief Judge Brodie:

  We write this letter concerning the government's frequent FRE 608(b) objections to evidence the defense seeks to introduce through cooperating witness, Tim Leissner. Relevant evidence is admissible unless excluded by the Constitution, a law, or a rule of evidence. Fed. R. Evid. 402. The government has objected to the introduction of various documents that comprise relevant evidence under FRE 401 which are either not within the purview of FRE 608(b) at all, or, even if within the remarkably narrow scope of FRE 608(b), are permitted by that rule. They give every indication that they will attempt to object on this basis going forward.

  Their objections should be overruled for three independent reasons. <u>First</u>, FRE 608(b) excludes only extrinsic evidence that is introduced solely to demonstrate a witness's "character for truthfulness." Relevant evidence that is introduced at least in part for a different reason is not excludable under Rule 608(b). <u>Second</u>, Rule 608(b) only excludes extrinsic evidence that is introduced solely to demonstrate a witness's "character for truthfulness" as to a collateral matter, not to matters that are material to (i.e., directly at issue in) the case. Material matters are not excludable pursuant to Rule 608(b). <u>Third</u>, the matters at hand do not deal with character evidence at all. Rather, they are offered for impeachment – not to demonstrate the witness's character. These impeachment bases include impeachment by contradiction, impeachment by prior inconsistent statement, and impeachment by demonstrating the witness's bias. For these reasons, the government has evinced a view of Rule 608(b) that would swallow the general rule of Rule 402 and improperly constrict the jury's truth-seeking function.

BRAFMAN & ASSOCIATES, P.C.

1. **Federal Rule of Evidence 608(b) Deals Only with Character Evidence – Not Evidence Introduced Even in Part for Purposes Other than Character**

Federal Rule of Evidence 608 is titled "A Witness's Character for Truthfulness or Untruthfulness." Rule 608(b) states that – aside from a criminal conviction – "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(b) (emphasis added). Thus, the first question to be considered when confronted with a challenge pursuant to Rule 608(b) is whether the extrinsic evidence is being offered not to attack the witness's credibility on a particular issue, but rather whether the evidence is being offered solely to attack the witness's character.

A 2003 change in the Rule's text makes this point clear. Before 2003, the Rule stated, "Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence." Fed. R. Evid. 608(b) (1975 version) (emphasis added).

The 2003 amendment was made for a specific reason that has great significance to the issue currently before this Court. The Advisory Committee's Note to the 2003 amendment explains why: "The Rule has been amended to clarify that the absolute prohibition on extrinsic evidence applies only when the sole reason for proffering that evidence is to attack or support the witness' character for truthfulness." Fed. R. Evid. 608(b) 2003 Advisory Committee Note (citations omitted; emphasis added).

The Committee observed that "[o]n occasion the Rule's use of the overbroad term credibility has been read to bar extrinsic evidence for bias, competency and contradiction impeachment since they too deal with credibility. The amendment conforms the language of the Rule to its original intent, which was to impose an absolute bar on extrinsic evidence only if the sole purpose for offering the evidence was to prove the witness' character for veracity." Id. (citations omitted; emphasis added.)

The Note concluded, "By limiting the application of the Rule to proof of a witness' character for truthfulness, the amendment leaves the admissibility of extrinsic evidence offered for other grounds of impeachment (such as contradiction, prior inconsistent statement, bias and mental capacity) to Rules 402 and 403." Id. (citations omitted).

Judge Weinstein explained the rationale for the amendment this way: "The amendment sought to conform the Rule's language to the drafters' original intent, which was to exclude extrinsic evidence of a witness's general propensity for honesty and truth, rather than particular instances of honesty or dishonesty used for other, non-propensity purposes." 4 Weinstein's Federal Evidence § 608.20 (2021) (emphasis added).

There are numerous "other, non-propensity purposes," which have nothing to do with Rule 608(b), and for which extrinsic evidence is perfectly proper to demonstrate "particular instances of . . . dishonesty."

-2-

**BRAFMAN & ASSOCIATES, P.C.**

For example:

- A prior inconsistent statement offered for impeachment is governed by Rules 402, 403, and 613(b), not Rule 608(b). See, e.g., United States v. Winchenbach, 197 F.3d 548, 558 (1st Cir. 1999) ("Rule 608(b) addresses situations in which a witness's prior activity, whether exemplified by conduct or by a statement, in and of itself casts significant doubt upon his veracity. Thus, Rule 608(b) applies to, and bars the introduction of, extrinsic evidence of specific instances of a witness's misconduct if offered to impugn his credibility. So viewed, Rule 608(b) applies to a statement, as long as the statement in and of itself stands as an independent means of impeachment without any need to compare it to contradictory trial testimony." (emphasis in original; citations omitted)). By contrast, "Rule 613(b) applies when two statements, one made at trial and one made previously, are irreconcilably at odds. In such an event, the cross-examiner is permitted to show the discrepancy by extrinsic evidence if necessary—not to demonstrate which of the two is true but, rather, to show that the two do not jibe (thus calling the declarant's credibility into question)." Id.

- Extrinsic evidence that contradicts a witness on instances of conduct that don't – in themselves – indicate a character for dishonesty is subject to the limitations of Rules 402 and 403, and has nothing to do with Rule 608(b). See, e.g., United States v. Tarantino, 846 F.2d 1384, 1409 (D.C. Cir. 1988) ("Rubin said cocaine was in plain view during the eviction, while Matthews would presumably have contradicted her on this point, thereby drawing Rubin's credibility into question, but without referring to her conduct. So although [defendant] sought Matthews' testimony in order to impeach Rubin's credibility, the proposed impeachment would not consist of showing specific instances of Rubin's conduct (i.e., fraudulent or dishonest behavior) indicative of untruthfulness. We think it only this latter type of evidence that Rule 608(b) addresses.")

- Extrinsic evidence to show bias is also governed by Rules 402 and 403 – not Rule 608(b). "The Courts of Appeals have upheld use of extrinsic evidence to show bias both before and after the adoption of the Federal Rules of Evidence." United States v. Abel, 469 U.S. 45, 51 (1984). "[B]ias of a witness is not a collateral issue and extrinsic evidence is admissible to prove that a witness has a motive to testify falsely." United States v. James, 609 F.2d 36, 46 (2d Cir. 1979); United States v. Lindemann, 85 F.3d 1232, 1243 (7th Cir. 1996) ("because bias is not a collateral issue, it was permissible for evidence on this issue to be extrinsic in form. . . ."). Thus, Rule 608(b) has no bearing on demonstrating a witness's bias through extrinsic evidence.

**2. Rule 608(b) Is Limited to Collateral Matters**

Moreover, because Rule 608(b) deals only with proving a witness's "character for untruthfulness," its reach extends only to "collateral matters," not with matters that are directly at issue in the trial. As Judge Weinstein put it, "instances of conduct that are offered solely on the issue of a witness's character for truthfulness are frequently characterized as 'collateral' matters, since they do not address elements of any cause of action or defense. Thus, the rule is often stated in these terms: extrinsic evidence is inadmissible to prove collateral matters." 4

Weinstein's Federal Evidence § 608.20 (2021). Rule 608(b) therefore limits only the use of evidence "designed to show that the witness has done things, unrelated to the suit being tried, that make him more or less believable per se." United States v. Fusco, 748 F.2d 996, 998 (5th Cir. 1984) (emphasis added).

"A matter is collateral if it is 'factually unrelated to [the] case' such as an 'unrelated criminal investigation.'" United States v. Georgiou, 777 F.3d 125, 144 (3d Cir. 2015) (quoting United States v. Casoni, 950 F.2d 893, 919 (3d Cir. 1991)); United States v. Walker, 930 F.2d 789 (10th Cir. 1991) ("A matter has been held to be collateral if it could not have been introduced in evidence for any purpose independent of the impeachment."). The Second Circuit has made clear that "[a] witness may be impeached by extrinsic proof of a prior inconsistent statement . . . as to those matters which are relevant to the issues in the case and could be independently proven." United States v. Rivera, 273 F. App'x 55, 58 (2d Cir. 2008) (citing United States v. Blackwood, 456 F.2d 526, 531 (2d Cir. 1972)).

Put another way, "the determinative question in deciding whether extrinsic evidence contradicting a witness's testimony is admissible is not whether the contradicting extrinsic evidence is material or collateral, but rather whether the assertions that the impeaching party seeks to contradict are themselves material or collateral." Rosario v. Kuhlman, 839 F.2d 918, 925–26 (2d Cir. 1988).

The point is that Rule 608(b)'s limitations apply only to attempts to prove a witness's character for truthfulness through specific instances of conduct when the extrinsic evidence is "collateral to," i.e., unrelated to, the matter being tried. It has nothing to do with presenting extrinsic evidence – whether testimony or a document – to impeach a witness on a material matter, demonstrate a contradiction in the witness's testimony, show a prior inconsistent statement, or demonstrate the witness's bias.

In case after case, Courts grapple with Rule 608(b) when one party wants to introduce extrinsic evidence of unrelated activities – that is, activities that have nothing to do with the issues being tried – that shed light on a witness's character for honesty. In these situations, the matters can be inquired into, but extrinsic evidence cannot be introduced. So, for example, in United States v. Innamorati, 996 F.2d 456 (1st Cir. 1993), the Court properly excluded extrinsic evidence showing that a witness possessed cocaine in Springfield before he began cooperating with police, because that was a collateral matter. The Court held, "the proposed contradiction involved a matter collateral to the main issues in this trial, since the Springfield incident did not in any way involve any of the defendants or the charges against them. A court may, indeed normally does, preclude a party from proving with extrinsic evidence that a witness lied in court on a collateral matter." Id. at 479. See also, e.g., Hynes v. Coughlin, 79 F.3d 285, 293–94 (2d Cir. 1996) (in a § 1983 case alleging unreasonable use of force, witness could be cross-examined regarding filing a false workmen's compensation claim because it was properly related to his character for truthfulness, but extrinsic evidence not allowed); United States v. Jones, 900 F.2d 512, 520 (2d Cir. 1990) (in an obstruction of justice case, witness could be cross-examined regarding false statements made on applications for employment, an apartment, a driver's license, a loan, and membership in an association, but extrinsic evidence not allowed).

BRAFMAN & ASSOCIATES, P.C.

  A. <u>Impeachment by Contradiction Is Not Collateral; Extrinsic Evidence Is Admissible; Rule 608(b) Has No Applicability</u>

  The matters that Leissner has testified to are not collateral – they relate to the topics in the Indictment in this case. And the statements that he has made in the past contradict his trial testimony on these exact topics. The use of these documents is classic impeachment by contradiction. They have nothing to do with his "character for truthfulness"; they instead have to do with the matters at issue in this case.

  One example from trial is demonstrative. During cross-examination on Wednesday, counsel tried to admit an email chain (DX-2101) where Leissner was scheduling a meeting with Jeffrey Rosen, a banker at Lazard. The purpose of this meeting (and by extension, the purpose of admitting the email) was to demonstrate that Leissner was first attempting to join Lazard as a partner and then bring the first 1MDB bond deal to Lazard instead of Goldman Sachs. (Tr. 1508:18–1509:4.) The government objected on FRE 401 and 608 grounds.

  At sidebar, counsel noted that the relevance of Leissner's interaction with Lazard was that Leissner was seeking to bring the first 1MDB bond deal to Lazard. Counsel argued that this evidence "cuts against the fact that Roger was in on it from day one. It's impossible for Roger to be in on it from day one if he's bringing the bond deal in early January to Lazard[]." (Tr. 1511:15–22.) Counsel further noted that this interaction with Lazard, which Leissner did not bring up on direct, would demonstrate that Leissner was "lying about key aspects of his direct testimony. He is lying about the fact that Roger started this deal, he's lying that he and Roger are doing it together because he brought this deal to Lazard, not Goldman." (Tr. 1512: 3–7.)

  After the Court and counsel addressed potential hearsay issues with exhibit, the government argued that the exhibit should be barred under FRE 608 because it was extrinsic evidence used for impeachment: "And if he would like to impeach him on whether he was seeking a job at Lazard or not, he can try to refresh his recollection. This document doesn't permit under §608(b) a categorical bar on extrinsic evidence, Judge." (Tr. 1515:10–13.) During this exchange, the Court noted: "I don't know about the others that you're going to offer but this particular e-mail is, right? You asked a question, he answered it. He gave you an answer as to the substance of whatever is in the e-mail, you don't get to then put the e-mail before the jury." (Tr. 1516:12–16.) Ultimately, the Court relied on FRE 608 to exclude DX-2101.

  Again, Rule 608 applies only to demonstrating a character for truthfulness or untruthfulness as to collateral matters, not to matters that are directly at issue in the case. Here, the fact that Leissner was seeking employment with Lazard at the time of the first 1MDB bond deal is significant to the case, as it supports counsel's argument that Leissner was ready to bring the first 1MDB bond deal to Lazard, not Goldman. If true (as counsel argued to the Court), this would help demonstrate that Leissner was "lying about key aspects of his direct testimony. He is lying about the fact that Roger started this deal, he's lying that he and Roger are doing it together because he brought this deal to Lazard, not Goldman." (Tr. 1512: 3–7.)

BRAFMAN & ASSOCIATES, P.C.

Moreover, as noted above, "Rule 608(b)'s bar against extrinsic evidence does not apply when the evidence is used to contradict a statement made by a witness during [their] testimony. Such 'impeachment by contradiction' is subject only to the constraints of Federal Rules of Evidence 401, 402, and 403." United States v. McGill, 815 F.3d 846, 907 (D.C. Cir. 2016) (per curiam) see also United States v. Rodriguez, 539 F. Supp. 2d 592, 595 (D. Conn. 2008) ("Although Rule 608(b) generally prohibits extrinsic evidence of specific instances of conduct, an exception to that rule exists when evidence contradicts a witness's testimony. Impeachment by contradiction, as opposed to evidence of a witness's character for truthfulness or untruthfulness, is a permissible exception to the general proscription of Rule of 608(b)."); United States v. Ingram, 490 F. App'x 363, 366 (2d Cir. 2012) (Allowing impeachment of defendant with her securities dealers' license application "because the license application was admitted to impeach Dodakian by contradiction, whereas Rule 608(b) addresses extrinsic evidence admitted to impeach by demonstrating character for untruthfulness. Admission of the application did not even implicate, let alone violate, Rule 608(b) because the application had no bearing on Dodakian's character for untruthfulness." (emphasis in original)).

A "witness may not use Rule 608(b)'s prohibition on extrinsic evidence to prove specific instances of untruthfulness as a shield, permitting him to testify falsely with no opportunity for impeachment." United States v. Rodriguez, 539 F. Supp. 2d 592, 596 (D. Conn. 2008). In Rodriguez, the proffered evidence was offered to "directly contradict statements Rodriguez made on the witness stand rather than to prove specific instances of untruthfulness. Id. The Court held that therefore, "Rodriguez's argument that admission of that testimony violated Rule 608(b) lacks merit." Id.

As the Fifth Circuit has held, "[w]e consider Rule 608(b) to be inapplicable in determining the admissibility of relevant evidence introduced to contradict a witness's testimony as to a material issue. So long as otherwise competent, such evidence is admissible." United States v. Opager, 589 F.2d 799, 802 (5th Cir. 1979). This is because "[i]ndividual rules of evidence, in this instance Rule 608(b), should not be read in isolation, when to do so destroys the purpose of ascertaining the truth. This is especially so when a witness directly contradicts the relevant evidence which Rule 608(b) seeks to exclude." Id. Thus, "Rule 608(b) should not stand as a bar to the admission of evidence introduced to contradict, and which the jury might find disproves, a witness's testimony as to a material issue of the case." Id. at 803.

Opager demonstrates this concept perfectly. Defendant Opager sold cocaine to three buyers – two officers and an informant named Posner. The informant testified that he and Opager were friends, that he and Opager worked together at a beauty salon in 1974 and 1976, and that during both times he had seen Opager use and sell cocaine. Opager sought to impeach Posner by offering into evidence business records from the beauty salon that proved that she and Posner had not worked together in 1974. The District Court ruled that the records were inadmissible under Rule 608(b) as extrinsic evidence of a specific instance of conduct introduced to discredit the Posner's testimony.

The Court of Appeals reversed Opager's conviction, holding that "[t]he District Court erred in applying Rule 608(b) to determine the admissibility of the business records. The

application of Rule 608(b) to exclude extrinsic evidence of a witness's conduct is limited to instances where the evidence is introduced to show a witness's general character for truthfulness. The purpose of such evidence is to show that if a person possesses 'certain inadequate character traits as evidenced in a variety of ways including that he has acted in a particular way he is more prone than a person whose character, in these respects, is good, to testify untruthfully.'" Id. at 801 (quoting 3 Weinstein, Evidence P 608(01)).

But in Opager, as in the instant case, "the records were not offered for such a purpose. The documents show and would permit the jury to find that, contrary to Posner's testimony, Posner and Opager did not work together in 1974 and that therefore Posner did not witness any of the drug transactions he described as occurring at that time. Thus, the records do more than indicate Posner's capacity to lie . . . [i]nstead, . . . , the records were introduced to disprove a specific fact material to Opager's defense." Id. at 801.

The Court of Appeals concluded, in a perfect summary of the issue here, "[t]he fact that the business records might have the incidental effect of proving Posner a liar does not affect their admissibility as relevant evidence. In countless cases where facts are in dispute, one party may be able overwhelmingly to disprove the testimony of a prior witness. To exclude under Rule 608(b) the latter otherwise relevant evidence, as the government would have us do today, would completely divorce legal proceedings from the truth seeking process." Id. at 803.

The purposed exhibit, DX-2101, was instrumental in showing Leissner's testimony on direct about how the 1MDB deal came to Goldman was not true. Accordingly, while the admissibility of the exhibit may be determined on hearsay, Rule 401, or Rule 403 grounds, FRE 608 has no application here.

### B. Bias Is Not Collateral; Extrinsic Evidence Is Admissible to Prove Bias; Rule 608(b) Has No Applicability

"The Courts of Appeals have upheld use of extrinsic evidence to show bias both before and after the adoption of the Federal Rules of Evidence." United States v. Abel, 469 U.S. 45, 51 (1984). Thus, Rule 608(b) has no bearing on demonstrating a witness's bias through extrinsic evidence. See United States v. James, 609 F.2d 36, 46 (2d Cir. 1979) (Rule 608(b) is "intended to regulate only the use of specific instances of conduct to prove that the witness is a 'bad person' or is a generally untruthful person who should not be believed. However, 'bias of a witness is not a collateral issue and extrinsic evidence is admissible to prove that a witness has a motive to testify falsely.'" (citing 3 J. Weinstein & M. Berger, Weinstein's Evidence P 608(01), (05) (1978))).

Indeed, "[t]he Confrontation Clause guarantees defendants the right to cross-examine government witnesses in order to test their truthfulness and discredit the witnesses by revealing the witnesses' 'possible biases, prejudices, or ulterior motives' in relation to 'the case at hand.' This right is especially important 'when applied to the government's star witness or to a witness who provides an essential link in the government's case.'" United States v. Brown, No. 07-CR-874 (KAM), 2009 WL 497606, at *2–3 (E.D.N.Y. Feb. 26, 2009) (quoting United States v.

BRAFMAN & ASSOCIATES, P.C.

Figueroa, 548 F.3d 222, 227 (2d Cir. 2008) and United States v. Paul, 194 F. App'x 792, 794 (11th Cir. 2006)); see also, e.g., United States v. Finkelstain, Crim. No. 89-0009 (MBM), 1989 WL 96629, at *3 (S.D.N.Y. Aug. 15, 1989) ("Finkelstain relies correctly on Abel and James for the proposition that extrinsic evidence is admissible to show bias, and is not barred by Fed. R. Evid. 608(b)").

Bias describes "the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest. Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." Abel, 469 U.S. at 52. Leissner's bias will be directly at issue on his cross-examination, in two major ways.

First, he has stolen just more than $1 million from Mr. Ng. He has every motive to testify against Mr. Ng so that he will never have to pay that money back. Leissner testified on direct that he merely "borrowed" more than $1 million from Mr. Ng but has not fully paid him back yet. During upcoming cross-examination, counsel will question Leissner about the truth of this testimony through questioning and documentary evidence. Because this cross-examination relates to Leissner bias and motive to testify falsely against Mr. Ng (i.e., because Leissner stole Mr. Ng's money through fraud), the FRE 608(b) rule against extrinsic evidence has no application.

Second, Leissner has committed numerous other crimes with Jho Low for which he has, simply, been given a pass. The government knows about these crimes and has proof of them, but has not charged Leissner with them. Moreover, Leissner has already testified on direct – and on cross-examination it will be proven – that while he benefitted more than approximately $140 million from his criminal activity, the government has only required that he forfeit just north of $40 million. Surely, being allowed by the government to profit $100 million from his criminal conduct is enough for Leissner to have a bias towards the government and a reason to testify falsely against Mr. Ng. See, e.g., James, 609 F.2d at 46 (Rule 608(b) is "intended to regulate only the use of specific instances of conduct to prove that the witness is a 'bad person' or is a generally untruthful person who should not be believed. However, 'bias of a witness is not a collateral issue and extrinsic evidence is admissible to prove that a witness has a motive to testify falsely.'"); United States v. Thorn, 917 F.2d 170, 176 (5th Cir. 1990) ("An exception to the prohibition against the use of extrinsic evidence to attack the credibility of a witness exists in cases in which the evidence tends to show bias or motive for the witness to testify untruthfully.").

The Supreme Court's decision in Abel makes this clear. 469 U.S. at 47. There, defendant Abel was accused of robbing a bank with Ehle. See id. Ehle cooperated against Abel at trial. See id. Abel then called Mills, who was friendly with both Abel and Ehle and who served time in prison with them. See id. Mills testified that while in prison, Ehle told Mills that Ehle would falsely implicate Abel in the robbery to get a shorter sentence. Id. at 47–48. The prosecution then re-called Ehle, and discredited Mills's testimony by explaining that Abel, Mills, and Ehle were

-8-

all a part of the Aryan Brotherhood, a savage prison gang that required its members to commit perjury, theft, and murder for each other. Id. at 48. The jury convicted Abel, but the Court of Appeals reversed, holding that Ehle's re-called testimony implicated Mills's bias, but also was admitted to show Mills's dishonesty character – that is, "that because Mills belonged to a perjurious organization, he must be lying on the stand." Id.

The Supreme Court reversed the Court of Appeals. "We hold that the evidence showing Mills' and respondent's membership in the prison gang was sufficiently probative of Mills' possible bias towards respondent to warrant its admission into evidence." Id. at 49. The Supreme Court roundly rejected the defendant's claim that "Ehle's rebuttal testimony was extrinsic evidence offered to impugn Mills's veracity, and extrinsic evidence is barred by Rule 608(b)." Id. at 55.

The Court held squarely, "[i]t seems clear to us that the proffered testimony with respect to Mills' membership in the Aryan Brotherhood sufficed to show potential bias in favor of [Abel]; because of the tenets of the organization described, it might also impeach his veracity directly. But there is no rule of evidence which provides that testimony admissible for one purpose and inadmissible for another purpose is thereby rendered inadmissible; quite the contrary is the case. It would be a strange rule of law which held that relevant, competent evidence which tended to show bias on the part of a witness was nonetheless inadmissible because it also tended to show that the witness was a liar." Id. at 56.

This is true specifically in cases where the defendant's claim is that the government witness got a "pass." For example, in United States v. Hardrick, Crim. No. 10-202, 2012 WL 5300945 (E.D. La. Oct. 25, 2012), the government planned to call several witnesses who had been arrested, but not charged with crimes. The government sought to prohibit the defense from cross-examining these government witnesses with evidence of the witnesses' arrests that did not result in formal charges.

The Court held that the evidence was not precluded by Rule 608(b). "Importantly, the defense does not seek to use the evidence of past arrests for the purpose of impeaching these witnesses for truthfulness. Instead, the defense seeks to inquire into these arrests for the purposes of showing the witnesses' bias and motivation to testify. Evidence of these arrests may be admissible to prove bias." Id. at *1.

The need to allow cross examination to prove bias is so strong that "[e]vidence otherwise inadmissible may be admitted if it shows bias on the part of the witness." United States v. Slough, 22 F. Supp. 3d 29, 33 (D.D.C. 2014) (citing Abel, 469 U.S. at 56; see also Lindemann, 85 F.3d at 1243 (7th Cir. 1996) (holding that admissibility of extrinsic evidence to show bias is governed by Rules 402 and 403, not 608(b)).

As the Supreme Court has also held, "the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness . . . . by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the

**BRAFMAN & ASSOCIATES, P.C.**

witness as they may relate directly to issues or personalities in the case at hand." Davis v. Alaska, 415 U.S. 308, 315 (1974) (internal quotations marks and citations omitted). More: "[t]he partiality of a witness is subject to exploration at trial, and is always relevant as discrediting the witness and affecting the weight of his testimony. We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." Id.

This right "is particularly important when the witness is critical to the prosecution's case." United States v. Jimenez, 464 F.3d 555, 559 (5th Cir. 2006) (quotation marks omitted). Leissner is certainly critical to the government's case here; indeed, he is the only witness who will accuse Mr. Ng of committing a crime. He has multiple independent reasons to have a bias against Mr. Ng and in favor of the government. Most witnesses only have one bias, which is allowed to be proven by extrinsic evidence. Leissner has at least two: He has stolen from Mr. Ng and does not want to have to pay him back. He has been given a complete pass on significant criminal conduct and desires to keep his current cooperation agreement, which provides him with enormous benefits – like keeping $100 million. He has a powerful motive to testify in a way that pleases the government and allows him to keep his cooperation agreement and the money he made unlawfully but which he is being allowed to keep.

3. **Evidence Proving the Alternate Defense Theory Is Not Collateral; Rule 608(b) Provides No Bar to Such Evidence**

Finally, as has been made clear by the cross-examination of Leissner to this point, the defense has elicited, and is attempting to elicit, facts showing that Leissner was paid by Low primarily to (i) help Low launder Low's money commencing in June of 2012 and continuing for several years afterward, (ii) continue to help Low work more closely with Goldman Sachs, (iii) bring lucrative business deals to Low and (iv) to use his contacts to bring business opportunities to Low.

Leissner leveraged his personal and business connections to help Low. This includes his connections with Ananda Krishnan, Rohana Rozhan and Jasmine Loo, among many others. These connections, and how they were used by Leissner and Low to make money for both men between 2012 and about 2018, show that Low was not paying Leissner merely, or even primarily, for his work on the 1MDB bond deals. Rather, as we stated in our opening statement, the evidence will show that commencing in 2012, Low and Leissner forged a criminal partnership and that this partnership did not include the defendant. Moreover, this partnership between Low and Leissner did not stop in 2014 but continued on for several years. As the government already elicited in its direct examination of Leissner, Low and Leissner engaged in serious criminal conduct involving both 1MDB money and money from subsequent frauds after 2012. Therefore, while the government has thus far objected to the admission of emails because they claim that they are not directly related to the charged crimes, and the Court has largely sustained these objections, the defense has every right to advance an alternative factual theory showing the defendant's innocence. These emails are not collateral to the matter at hand – they provide an alternate explanation for what happened.

BRAFMAN & ASSOCIATES, P.C.

      Just like other sources of evidence, emails and documents that are relevant to establish this alternative factual theory are admissible, not because they bear solely on the character of the witness but because they bear directly on refuting the government's theory of the case, and advancing a cogent, alternative theory. Where, as here, that alternative theory includes Leissner leveraging his personal relationships for the sake of making money through criminal activity and Leissner creating every manner of shell company and false agreement to launder money belonging to Low, some of which stems from the 1MDB crimes, the defense has the right to rely on the full range of evidence, just as the government does in its attempt to prove the crimes it charged.

                                                     Respectfully submitted,

                                                   Marc A. Agnifilo, Esq.
                                                   Zach Intrater, Esq.
                                                   Teny R. Geragos, Esq.
                                                   Jacob Kaplan, Esq.

cc:      Counsel for the Government (via ECF)