

U.S. Department of Justice

United States Attorney
Eastern District of New York

F. #2016R00467

271 Cadman Plaza East
Brooklyn, New York 11201

March 6, 2022

By ECF

The Honorable Margo K. Brodie
Chief United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Ng Chong Hwa
            Criminal Docket No. 18-538 (S-2) (MKB)

Dear Chief Judge Brodie:

      The government respectfully submits this letter in response to the defendant's March 5, 2022 letter regarding Federal Rule of Evidence 608(b). See ECF No. 163 ("Ltr."). To date, the government has objected when the defense has sought to introduce irrelevant evidence, impermissible character evidence, or extrinsic evidence relating to "specific instances of a witness's conduct in order to attack . . . the witness's character for truthfulness"—evidence at the heartland of Rule 608(b). Fed. R. Evid. 401, 404(a), 608(b). The government intends to continue to object to the introduction of such evidence, and any attempt by the defendant to circumvent the limitations of these rules should be rejected.

I.      Applicable Law

      Rule 404(a) sets out a categorical bar that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a); United States v. Pujana-Mena, 949 F.2d 24, 29 (2d Cir. 1991) ("Federal Rule of Evidence 404(a) provides, with specific enumerated exceptions, that character evidence is generally inadmissible."). Rule 404(a) sets out a narrow exception for a witness's character, permitting evidence of a witness's character only if it is admissible under Rules 607, 608, or 609. Fed. R. Evid. 404(a)(3). These rules, in turn, allow a witness's character for truthfulness to be attacked, but they sharply limit how that attack can be advanced. Fed. R. Evid. 608(b).

      One well-settled limitation this Court has recognized is Rule 608(b)'s categorical bar to the introduction of extrinsic evidence to prove specific instances of a witness's untruthfulness. See ECF No. 138 at 15; see also United States v. Peterson, 808 F.2d 969, 973–74 (2d Cir. 1987); United States v. Brown, 2009 WL 497606, at *3 (E.D.N.Y. Feb. 26, 2009) ("Under the plain mandate of Rule 608(b), extrinsic evidence of a witness's prior conduct may

not be admitted to attack his truthfulness.").[1]  The Rule also addresses the permissible scope of cross-examination regarding specific instances of a witness's conduct—it "is intended to be restrictive" and "does not authorize inquiry on cross-examination into instances of conduct that do not actually indicate a lack of truthfulness." United States v. Nelson, 365 F. Supp. 2d 381, 386 (S.D.N.Y. 2005) (quoting Weinstein & Berger, Weinstein's Federal Evidence § 608.22[2][c][i] (2d ed. 1997)).  Thus, Rule 608 permits cross-examination concerning specific instances of conduct, if at all, only insofar as the conduct in question is "probative of truthfulness or untruthfulness." United States v. Flaharty, 295 F.3d 182, 191–92 (2d Cir. 2002).

Even then, inquiry into specific instances of conduct may be further curtailed in order to "protect [a] witness from harassment or undue embarrassment," Fed. R. Evid. 611(a)(3), or where the "probative value" of such evidence "is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, . . . undue delay, [or] waste of time," Fed. R. Evid. 403.  See United States v. Sampson, 898 F.3d 287, 309 (2d Cir. 2013) ("[A] district court is accorded broad discretion . . . [to] impose reasonable limits on cross-examination to protect against, e.g., harassment, prejudice, confusion, and waste." (internal quotation marks omitted)).  Thus, when considering whether to allow inquiry on cross-examination into specific instances of conduct that the Court finds probative of truthfulness, the Court must conduct a balancing test under Rule 403 and adhere to the restrictions of Rule 611.  See Brown, 2009 WL 497606, at *4.

II.     Discussion

   A.     The Defendant's Proffered Legal Bases for Admitting Extrinsic Evidence on Cross-Examination Are Contrary to the Rules of Evidence

First, the defendant claims that the documents he has sought to admit during Tim Leissner's cross-examination are "classic impeachment by contradiction." Ltr. at 5.  The defendant is wrong.  "The common-law rule of 'impeachment by contradiction' operates as a narrow exception to Rule 608, allowing for the introduction of extrinsic evidence to contradict facts a witness puts at issue on his direct." Laureano v. City of New York, 2021 WL 3272002, at *2 (S.D.N.Y. July 30, 2021); see also United States v. Ramirez, 609 F.3d 495, 499 (2d Cir. 2010) (explaining that "impeachment by contradiction . . . operates as a limited exception to Rule 608(b)").  This exception may apply only when a witness testifies as to a "specific fact" that the opposing party seeks to prove was a lie. Ramirez, 609 F.3d at 499 (quoting United States v. Beverly, 5 F.3d 633, 639 (2d Cir. 1993)).  Although it is an open question in the Second Circuit whether impeachment by contradiction may be invoked to present evidence in response to a statement made by a defendant on cross-examination rather than direct, the Second Circuit has expressed skepticism on this point, see id. at 499-500 & n.1, and numerous other Circuits have concluded that this exception does not apply to statements made during cross-examination, see, e.g., United States v. Scott, 693 F.3d 715, 722 (6th Cir. 2012); United States v. Rovetuso, 768 F.2d 809, 817–18 (7th Cir. 1985); United States v. Pantone, 609 F.2d 675, 683–84 (3d Cir. 1979); United States v. Warledo, 557 F.2d 721, 726 (10th Cir. 1977).  See also Walder v. United States, 347 U.S. 62, 66 (1954) (barring the introduction of impeachment evidence when the offering party "tried to smuggle it in on cross-examination").  Finally, even if evidence is

---

[1] "A general attack on credibility is, concededly, a collateral matter." United States v. Treacy, 639 F.3d 32, 45 (2d Cir. 2011).

2

admissible under the "impeachment by contradiction" exception, "that evidence is still 'subject to the probative-prejudice balancing test in Rule 403.'" Laureano, 2021 WL 3272002, at *2 (quoting Williams v. Geraci, 2020 WL 5848738, at *8 (E.D.N.Y. Sept. 30, 2020)).

Here, the defendant has failed to point to any specific fact that Leissner has testified to on his direct examination that would allow him to introduce evidence through the narrow impeachment-by-contradiction exception to Rule 608. Generalized claims that Leissner lied on direct "about how the 1MDB bond deal came to Goldman" are plainly insufficient to warrant introduction of evidence to impeach him by contradiction. Ltr. at 7. Indeed, to permit the defense to use that exception with such a paltry justification would render the exception so large as to swallow Rule 608—nearly any disputed statement of a government witness could be used to introduce collateral evidence. The law is clear that the party seeking to offer collateral evidence to impeach the witness by contradiction must point to a specific fact testified to by the witness on direct examination that the offeror is rebutting.[2] The defense has not done so here.

Next, the defendant argues that he should be permitted to introduce extrinsic evidence of Leissner's bias, which he contends "will be directly at issue on his cross-examination." Ltr. at 8. The government recognizes that "bias of a witness is not a collateral issue and extrinsic evidence is admissible to prove that a witness has a motive to testify falsely." United States v. James, 609 F.2d 36, 46 (2d Cir. 1979). However, "a proper foundation must be laid before extrinsic evidence of bias may be introduced," which requires that "[p]rior to the proffer of extrinsic evidence, a witness must be provided an opportunity to explain the circumstances suggesting bias." United States v. Harvey, 547 F.2d 720, 722 (2d Cir. 1976). Moreover, the introduction of evidence of bias is still limited by Rule 403, which gives the Court wide latitude to exclude evidence where its "probative value . . . is substantially outweighed by the danger of undue delay, misleading and confusing the jury, and unfair prejudice." United States v. Watts, 2013 WL 2020178, at *4 (E.D.N.Y. May 14, 2013) (citing United States v. Figueroa, 548 F.3d 222, 229 (2d Cir. 2008)); see also James, 609 F.2d at 46 & n.11 (explaining that while it was error to exclude evidence of bias under Rule 608(b), "[t]he judge might have chosen to exclude the reports pursuant to Fed. R. Evid. 403"); United States v. Gambino, 818 F. Supp. 536, 539 (E.D.N.Y. 1993) ("[U]nder Rule 403 a trial judge has broad discretion to exclude otherwise relevant evidence, even where bias or interest of a witness is involved." (emphasis in original) (internal quotation marks omitted)).

Accordingly, the government does not plan to object on Rule 608 grounds to evidence offered by the defense for the targeted purpose of demonstrating Leissner's purported bias. However, if the defense fails to lay the requisite foundation or provide Leissner with an opportunity to explain the circumstances surrounding the alleged bias, the evidence should be excluded. And if the defense offers evidence for an improper purpose under the guise of bias

---

[2] In fact, the impeachment-by-contradiction exception may be even more narrowly construed where the witness is someone other than the defendant, as is the case here. As the Second Circuit has explained, "the point of this exception is that a defendant may not invoke the Federal Rules of Evidence in order to shield his perjury from contradiction." Ramirez, 609 F.3d at 499. Regardless of whether the contours of this exception apply equally to all witnesses, however, the defense has fallen far short of demonstrating it should apply to any of the exhibits it has attempted to introduce during the cross-examination of Leissner thus far.

evidence, including the purposes barred by Rule 608, or if the probative value of such evidence is outweighed by risks of delay, confusion and prejudice, the government anticipates it will object.

In seeking to admit extrinsic evidence on cross-examination, the defense has also repeatedly claimed that proffered evidence supported a "defense theory" of the case. The government does not dispute that the defense may offer evidence that is "relevant to establish [an] alternative factual theory." Ltr. at 11. It does dispute, however, that this provides the defense with carte blanche to introduce any evidence it desires. The Court explained this point clearly: where the evidence is being introduced "to show an alternative theory to Mr. Leissner's conduct . . . [that] is relevant to the charge[d] conspiracy, then it [is] admissible evidence." Mar. 2, 2022 Trial Tr. 1546–57. By contrast, where the defense seeks to "attack Mr. Leissner's credibility on cross examination with additional information," an extrinsic document that forms the basis for that attack "is not admissible as evidence." Id. at 1547. The Court's explanation accords with the rules of evidence and the case law described above, and it should continue to apply that standard.

In addition, there are key limitations embedded in the defendant's own recitation of the standard. First, the evidence must be "relevant"—i.e., it must be admissible under Rules 401 and 403. Second, the evidence must relate to an alternative factual theory—i.e., it must be offered to prove some specific fact relevant to the defendant's theory of the charged crimes. To be sure, "alternative factual theories" do not include generic claims that "the witness is not credible" or "the witness has the propensity to use people"; indeed, if such justifications were appropriate bases to admit evidence, it would render the clear prohibitions in Rule 608 and Rule 404 meaningless. While the defendant may introduce evidence to support an alternative factual theory, he must not be allowed to do so in contravention of the rules of evidence. See United States v. Blake, 195 F. Supp. 3d 605, 610–11 (S.D.N.Y. 2016) (noting that a defendant may not bypass the rules of evidence in the name of "offering an alternative theory" (citing United States v. Gonzalez, 399 F. App'x 641, 645 (2d Cir. 2010))).

In sum, while the defendant may seek to introduce evidence that is relevant to establishing an alternative factual theory, he must do so in accordance with the Federal Rules of Evidence, specifically Rules 401, 403, 404 and 608.

B.   Defense Exhibits 2331 and 2101 Are Inadmissible

1.   DX-2331

Throughout the cross examination of Tim Leissner, defense counsel has questioned Leissner at length concerning his admitted affairs, including an affair with Rohana Rozhan, the former Chief Financial Officer and Chief Executive Officer of Malaysian media company Astro. See, e.g., Mar. 1, 2022 Trial Tr. at 1365–70, 1376, 1378–86, 1388, 1390–93, 1395–96, 1469–70. During cross examination, counsel sought to admit DX-2331, a May 28, 2012 email chain that discussed a scheduled series of meetings among representatives from Astro, Usaha Tegas, and Goldman Sachs, which email also copied Ms. Rozhan. The email was unrelated to 1MDB or the recently closed Project Magnolia bond deal, and, with the exception of Leissner, none of the Goldman Sachs bankers on the email worked on Project Magnolia.

4

The government objected to the email as irrelevant and impermissible character evidence barred by Rules 404 and 608. In arguing for its admission, counsel clarified the purpose for which he offered the email, describing it as supporting their "defense theory" that Leissner was a "strategic" person and "operator" who used relationships for Goldman Sachs business. Mar. 3, 2022 Trial Tr. at 1828–30. Counsel conceded that he was offering DX-2331 to prove up Leissner's character, stating: "What is relevant to us is that [Leissner]'s strategic. And he's strategic in every area of his life. . . it's important, in my opinion, for the jury to see how [Leissner] operates, because he's an operator." Id. at 1829–30.

That argument ignores Rule 404(a)'s categorical bar on proving up a witness's character. As described in counsel's offer of proof, DX-2331 constitutes impermissible character evidence unrelated to Leissner's credibility. Counsel made clear that he was attempting to prove (1) that Leissner has a particular character or trait (that of a "strategic operator" who "uses" people) and (2) that "on a particular occasion" (during the 1MDB deals) he "acted in accordance with th[at] character or trait." Fed. R. Evid. 404(a). This is barred by Rule 404(a)'s plain terms. Aside from Leissner's character for truthfulness, proof of character for any other purpose is irrelevant and inadmissible.

Presumably mindful that Rule 404 barred this evidence categorically, defense counsel also attempted to bootstrap DX-2331 to another aspect of the "defense theory," claiming, "it's our premise that part of the way that Tim Leissner got this first bond deal done is through his series of relations with Ananda Krishnan." Mar. 3, 2022 Trial Tr. at 1827. But that argument ignores what DX-2331 actually says. It is an email chain wholly unrelated to 1MDB, Project Magnolia or the origins of Goldman Sachs' 1MDB business, and, crucially, it was sent after the bond deal was done. As such, it is not probative of how "Leissner got this first bond deal done" and can be precluded under either Rule 401 or 403. Id. at 1829.

2. DX-2101

During cross examination, Leissner confirmed that "at some point" he had "discussions with a company called Lazard" about new career opportunities, but Leissner could not recall the dates of those discussions. Mar. 2, 2022 Trial Tr. at 1505, 1508–09. After attempting to clarify the timing of Leissner's discussions with Lazard, defense counsel offered DX-2101, which was a January 2, 2012 email chain between Leissner and bankers at Lazard discussing a potential January 4, 2012 meeting. See id. at 1509.

The government objected to the admission of DX-2101 as irrelevant and extrinsic evidence to impeach Leissner for having discussions with a competitor of Goldman Sachs, his employer at the time. At sidebar, defense counsel articulated the theory of relevance, claiming that DX-2101 was relevant "because [Leissner] brings the first bond deal first to Lazard" and that Leissner was "lying about the fact that Roger started this deal, he's lying that he and Roger are doing it together because he brought this deal to Lazard, not Goldman." Id. at 1511–12.

For the reasons set out at sidebar, the Court properly excluded DX-2101. The email was not probative of the fact counsel claimed, as it did not shed light on Leissner "bring[ing] the first bond deal first to Lazard" because, as the government explained at the time, DX-2101 has nothing to do with 1MDB, potential 1MDB business, or any business at all. It was about setting up a January 4, 2012 meeting and did not discuss the meeting's substance.

5

Notably, after offering this email, the Court admitted without objection multiple other emails that—unlike DX-2101—had some probative value as to Lazard's role on 1MDB business in January 2012. See id. at 1539–40, 1546–47, 1549 (admitting DX-2106, DX-2108, and DX-2109).

In addition, defense counsel conceded at sidebar that the email was being "offered for the truth of statements in the e-mail," which, as the Court correctly noted, was inadmissible hearsay. Id. at 1513. Counsel's offer of proof made clear that he was attempting to use Leissner's statements in the email to prove that, at the time, Leissner was, in fact, "look[ing] forward [to] doing lots together in 2012" with Lazard and was "looking forward to meeting" members of the Lazard team in Paris. DX-2101. Accordingly, the Court properly excluded DX-2101.

****

The defense cannot evade the Federal Rules of Evidence by simply claiming that the proffered evidence supports a generalized "defense theory" and is therefore admissible. The defendant has every right to present a full defense, but that "does not entitle him to place before the jury evidence normally inadmissible." United States v. Yousef, 327 F.3d 56, 128 (2d Cir. 2003). Accordingly, as it has done consistently throughout trial, the Court should continue to apply the foregoing precedent when determining the admissibility of any evidence offered during Leissner's cross-examination.

Respectfully submitted,

BREON PEACE
United States Attorney

By: s/
Alixandra E. Smith
Drew G. Rolle
Dylan A. Stern
Assistant U.S. Attorneys

DEBORAH L. CONNOR
Chief, Money Laundering and Asset
Recovery Section, Criminal Division
U.S. Department of Justice

JOSEPH BEEMSTERBOER
Acting Chief, Fraud Section
Criminal Division
U.S. Department of Justice

s/
Jennifer E. Ambuehl
Trial Attorney

s/
Brent Wible
Trial Attorney

cc: Counsel for the defendant (via ECF and email)