

U.S. Department of Justice

United States Attorney
Eastern District of New York

F. #2016R00467

271 Cadman Plaza East
Brooklyn, New York 11201

March 6, 2022

By ECF

The Honorable Margo K. Brodie
Chief United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Ng Chong Hwa
                Criminal Docket No. 18-538 (S-2) (MKB)

Dear Chief Judge Brodie:

        The government respectfully submits this letter in opposition to the defendant's March 6, 2022 letter (ECF No. 164 ("Letter" or "Ltr.")) requesting that the Court "take judicial notice" pursuant to Federal Rule of Evidence 201(b)(2) of (1) a printout reflecting certain data about the defendant from the TECS system maintained by Customs and Border Protection ("CBP") (the "TECS Printout," attached as Exhibit 1 to the Letter)[1] and (2) a compilation of receipts and emails that contain statements of the defendant and that have been marked as Government Exhibit 1144-A (the "Defendant Receipts"). The government also briefly corrects mischaracterizations of the record in the defendant's letter, including to make clear that the record created by the government <u>prior</u> to defense counsel's cross-examination of Leissner was that Leissner attended a November 2012 party in Las Vegas hosted by Jho Low (the "2012 Party"), and the defendant did not. The defendant's request should be denied for multiple, independent reasons.

        <u>First</u>, neither the TECS Printout nor the Defendant Receipts are "a fact that is not subject to reasonable dispute" within the meaning of Rule 201(b)(2). "Because the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy under Rule 201(b)." <u>Int'l Star Class Yacht Racing Ass'n v. Tommy</u>

---

[1] Defense counsel states that the government produced "additional CBP records," a reference to the TECS Printout, "on Saturday." Ltr. at 2. This is misleading at best, as the TECS Printout produced on Saturday contained the same information about the defendant's 2012 travel as TECS records that were produced to the defendant both on January 6, 2022 and on May 24, 2021, nearly a year ago.

Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998). The types of information that courts have properly taken judicial notice of include publicly-available documents, such as a company's website, "for the purpose of establishing that the information was publicly available" and not for their truth, Finn v. Barney, 471 F. App'x 30, 32 (2d Cir. 2012); "documents filed in other courts . . . . not for the truth of the matters asserted . . . but rather to establish the fact of such litigation and related filings," Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991); and certain undisputed facts, such as the owner of a particular phone number, see McPhatter v. M. Callahan & Assocs., LLC, No. 11 CV 5321 (NGG) (LB), 2013 WL 3981106, at *1 (E.D.N.Y. Aug. 2, 2013), report and recommendation adopted, No. 11-CV-05321 (NGG) (LB), 2013 WL 5209926 (E.D.N.Y. Sept. 13, 2013). The government is unaware of any case, nor does the defendant cite one, in which a court has taken judicial notice of anything like the TECS Printout or the Defendant Receipts, much less for the truth of matters asserted therein, as the defendant seeks here.

Moreover, as the government has informed defense counsel, the government plans to seek to introduce both the TECS Printout and the Defendant Receipts at a later point in the trial, through witnesses who have personal knowledge of the documents and can explain both their contents—and, importantly, their limitations. And particularly with respect to the TECS Printout, those limitations greatly matter. The defendant should not be permitted to effect an end-run around the Federal Rules of Evidence, including the bar against hearsay, by asking for judicial notice to be taken of these documents devoid of context.

The TECS Printout contains data responsive to a law enforcement query for certain information from the TECS database maintained by CBP. For that data to be understandable to the lay jury, the TECS Printout needs to be admitted through a witness who can explain and properly contextualize the query that was run and the explain the data that the record contains, and does not contain. Defense counsel's repeated misinterpretation of the information in the TECS Printout proves the necessity of having such a witness, and accordingly why this record is not at all the type of which judicial notice may be taken. The TECS Printout does not, as defense counsel conclusorily claims, "prove that Mr. Ng was not in the United States" on or about November 3, 2012, the date of the 2012 Party. Ltr. 4. To the contrary, the TECS Printout is inconclusive on this matter: it shows that the defendant took an inbound flight from Singapore to Newark, New Jersey on September 23, 2012, and then another inbound flight from Tokyo, Japan to Los Angeles, California on March 24, 2015, and does not reflect any outgoing flight in between the two dates.

Similarly, the Defendant Receipts—which are 65 pages long and contain emails, ticket stubs, receipts, and handwritten notes of the defendant and others, including various records about canceled trips—are not immediately understandable to a witness who has never seen them before.[2] They are also either the defendant's statements or adopted statements that the

---

[2] In fact, defense counsel appears to misread aspects of the Defendant Receipts. For example, defense counsel cites page 20 of Government Exhibit 1144-A as evidence that the defendant was not in the United States on November 3, 2012, likely because there is a record on that page of a flight from Singapore to Kuala Lumpur, Malaysia on November 2, 2012. Ltr. 2. However, on page 19 of Government Doncment Exhibit 1144-A, there is a notation that the trip was canceled, and the corresponding expense report for the receipts, Government Exhibit 1144—

2

defendant is attempting to introduce for the truth of the matters asserted, as the defendant's letter makes clear ("[t]hese records . . . prove that Mr. Ng was not in the United States for Low's birthday party," Ltr. 4), and are thus hearsay that the defendant is not entitled to introduce.

Second, even if the Court could properly take judicial notice of both the TECS Printout and the Defendant Receipts, the Court should decline to do so because the sole purpose of what the defendant requests is to "confront" Tim Leissner with these documents on cross-examination. But that is improper. The defendant cannot establish that Leissner has personal knowledge of the TECS Printout or the Defendant Receipts, and Leissner is not testifying as an expert witness. It is therefore inappropriate to ask him to opine about those documents. See Fed. R. of Evid. 602. The defendant does not proffer in his letter any question that he could ask Leissner that would not run afoul of this foundational rule (or be no more than arguing with the witness about whether he told the truth, which is also improper).

Third, even if the Court could properly take judicial notice of these materials, and Leissner could properly be asked about them, the defendant's proposed cross-examination should be barred under Rule 403. Because Leissner has no personal knowledge of the documents, and no ability to interpret them, any conceivable probative value of this cross-examination would be greatly outweighed by the inevitable confusion it would cause. Indeed, it appears that may be precisely what defense intends, because he wants to make arguments now about the materials, rather than waiting for when a witness can actually answer questions about them and the jury can then weigh their probative value.

In short, this is no different from any other circumstance in which a party, whether the defendant or the government, has records, unknown to a witness, which the party believes shows that the witness was mistaken, lied, and/or had a failure of memory, and, accordingly, which the party wishes to argue shows that the witness's testimony should be disbelieved by the jury in whole or in part. That records allegedly so show does not create an end-run around foundational principles of witness examination, namely, personal knowledge, that it is improper to argue with or badger a witness, and that Rule 403 applies to cross-examination just as much as it applies to direct examination or records. See Chambers v. Mississippi, 410 U.S. 284, 302 (1973) ("the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence"); Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986) ("[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."); id. ("And as we observed earlier this Term, 'the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" (quoting Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curiam) (emphasis in original))); Watson v. Greene, 640 F.3d 501, 510 (2d Cir. 2011) ("To determine the propriety of cross-

---

which the defendant does not cite—clearly states on the first page that the "2 Nov SIN-KL" travel was "cancelled."

3

examination, as with other determinations of admissibility of evidence, courts balance prejudice versus probative value.").

Moreover, if it were appropriate to cross-examine Leissner about documents of which he has no personal knowledge—and it is not—defense counsel has already done so on the very subject at issue. That renders the proposed cross-examination not just confusing, but cumulative. On March 3, 2022, defense counsel cross-examined Leissner at length about Government Exhibit 2812, which is a list of confirmed guests for the 2012 Party that had been admitted (as detailed below) by the government through a witness from Strategic Management Group, Alex Cohen, prior to Leissner's testimony. (Tr. 1889-1904). Despite Leissner repeatedly stating that he did not what the list was (see, e.g., Tr. 1891 ("I also don't know what that list is about") and Tr. 1904 ("I don't know of any list of invitees, sir. The first time I saw a list of invitees is when you showed it on the screen.")), defense counsel asked him numerous questions about the list and used it to improperly seek to confront Leissner about his memory—elicited by defense counsel on cross-examination—that the defendant was at the party. (Tr. 1889-1904). Defense counsel should not be permitted to continue to badger the witness on this same issue. See Fed. R. Evid. 611(a)(3). The defendant offers no case standing for the proposition that he may repeatedly show a witness materials of which he has no knowledge, and use those materials to argue, in real time, that the witness must be lying because defense counsel has his own view of what the materials purportedly show. The defendant may make arguments, if grounded in the evidence and otherwise proper, in summation; cross-examination is not the time to do so.

<u>Finally</u>, although the defendant's request should be denied in multiple grounds in any event, it bears noting that the defendant has grossly mischaracterized the record on this matter. The government elicited through Mr. Cohen that the defendant attended a 2010 party in Las Vegas hosted by Low (the "2010 Party"), and also that Leissner—and not the defendant— attended the 2012 Party. (Tr. 316, 319; GXs 2804, 2804-A). The government also introduced Government Exhibits 2811 and 2812 through Mr. Cohen, which listed the confirmed guests for the 2012 Party; the defendant was not listed as a guest. The government did not elicit any testimony from Leissner on direct examination about the 2012 Party. Thus the only record created by the government with respect to the 2012 Party was that it was attended by Mr. Leissner and <u>not</u> the defendant.

Defense counsel nevertheless made the strategic decision on cross-examination to elicit from Leissner his memory of the 2012 Party, with full knowledge that Leissner's memory of that event—as set forth in the 3500 material for Leissner—was that the defendant <u>was</u> in attendance at the 2012 Party.[3] Defense counsel appears to have chosen to elicit this testimony so that he could then seek demonstrate to the jury that Leissner's memory about the 2012 Party is incorrect. That was defense counsel's prerogative, as it will be his prerogative to argue—as he already has through the improper cross-examination of Leissner—that Leissner's testimony may be contradicted by other evidence in the case, including the TECS Printout and the Defendant

---

[3] The defendant's does not explain the basis for his characterization of the 2012 Party as "material" to the case. Ltr. 2. Leissner testified that he stayed at the 2012 Party for a half hour, and that he may have spoken to Low in the lobby ahead of the party, but did not speak to Low at the party itself. (Tr. 1903).

4

Receipts that the government has already stated it intends to admit through other witnesses. However, it both inflammatory and baseless for defense counsel to suggest that, having purposefully and knowingly elicited testimony that defense counsel subjectively believes is inaccurate, the government now has a responsibility to "correct" the testimony. Ltr. 2. In any event, the issue before the Court is not whether the TECS Printout and the Defendant Receipts are relevant, but whether the Court should take judicial notice of them so as to permit cross-examination of Leissner on this same point, yet again, using documents he knows nothing about. The answer is no.

Respectfully submitted,

BREON PEACE
United States Attorney

By:    s/
       Alixandra E. Smith
       Drew G. Rolle
       Dylan A. Stern
       Assistant U.S. Attorneys

| | |
|---|---|
| DEBORAH L. CONNOR<br>Chief, Money Laundering and Asset<br>Recovery Section, Criminal Division<br>U.S. Department of Justice | JOSEPH BEEMSTERBOER<br>Acting Chief, Fraud Section<br>Criminal Division<br>U.S. Department of Justice |
| s/<br>Jennifer E. Ambuehl<br>Trial Attorney | s/<br>Brent Wible<br>Trial Attorney |

cc:    Counsel for the defendant (via ECF and email)