

U.S. Department of Justice

United States Attorney
Eastern District of New York

F. #2016R00467

271 Cadman Plaza East
Brooklyn, New York 11201

March 15, 2022

The Honorable Margo K. Brodie
Chief United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Ng Chong Hwa
                  Criminal Docket No. 18-538 (S-2) (MKB)

Dear Chief Judge Brodie:

        The government respectfully submits this letter in further support of the Court's prior ruling allowing Robert Pepitone to read the contents of a document marked as Government Exhibit 3003 (the "CHIPS Facility Record"), which identified the dates on which Clearing House Interbank Payments System ("CHIPS") transfers were processed through a facility located in New York City, as a recorded recollection, pursuant to Federal Rule of Evidence 803(5).  For the reasons that follow, the Court's ruling regarding Mr. Pepitone's testimony was correct.

I.      Relevant Facts

        Mr. Pepitone, a vice president and senior product manager for the CHIPS product at The Clearing House, previously testified in a criminal trial in the Eastern District of New York in 2019.  A copy of that prior testimony is attached hereto as Exhibit A.

        In that prior proceeding, Mr. Pepitone authenticated a copy of the CHIPS Facility Record, which he testified had been prepared by The Clearing House and identified which facility was used to process CHIPS transactions on specific dates between 2012 and 2015.  The CHIPS Facility Record was received in evidence, and Mr. Pepitone used it to identify for the jury the dates on which CHIPS was using its New York facility between 2012 and 2015.  Ex. A at 2567-70.  A copy of the admitted exhibit is attached hereto as Exhibit B.[1]

---

      [1]      Mr. Pepitone also testified about this same topic in a different criminal trial in the Eastern District of New York in 2017.  A copy of that prior testimony is attached hereto as Exhibits C and D.  In that 2017 proceeding, Mr. Pepitone testified that, before 2016, The Clearing House processed transactions in New York and North Carolina, that the company

On direct examination in this case, Mr. Pepitone testified that between 2012 and 2015, The Clearing House had servers that processed CHIPS transactions at two facilities: one in New York, New York and one in Greensboro, North Carolina. Mar. 9, 2022 Trial Tr. at 2545-46. Mr. Pepitone testified that during that period, the New York, New York facility was the "primary" location for processing CHIPS transactions, but that CHIPS no longer maintains business records showing which facility was used to process CHIPS transactions on specific dates between 2012 and 2015. Id. at 2546. He further testified that (1) he did not recall with specificity when CHIPS was using its Manhattan-based facilities on any given day from 2012 to 2015; (2) he previously testified in a 2019 court proceeding as to the dates when CHIPS was using its Manhattan-based facilities from 2012 to 2015; (3) at the time he testified in that proceeding, he had referred to a document The Clearing House had prepared, and (4) his prior testimony was truthful and accurate. Id. at 2547. Mr. Pepitone then identified the CHIPS Facility Record as the document to which he had referred during his prior testimony, explained that he had testified based on the information contained in the exhibit, and testified that the exhibit showed when CHIPS was using its Manhattan-based facility between 2012 and 2015. Id. at 2548.

After the defense objected, the government explained at sidebar that, during his 2019 testimony, Mr. Pepitone had used the CHIPS Facility Record to aid his testimony and had adopted it at that time. Id. at 2549. The Court then permitted Mr. Pepitone to read from the CHIPS Facility Record, but also noted that it would give defense counsel "a lot of leeway" to cross-examine the witness as to the basis for his knowledge regarding the information at issue. Id. at 2552. The defense chose not to pursue that line of inquiry.

II.   Applicable Law

Federal Rule of Evidence 803(5) provides that a record that (a) "is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately;" (b) "was made or adopted by the witness when the matter was fresh in the witness's memory;" and (c) "accurately reflects the witness's knowledge" may be read into evidence. Fed. R. Evid. 803(5). The Advisory Committee Notes make clear that "[n]o attempt is made in the exception to spell out the method of establishing the initial knowledge or the contemporaneity and accuracy of the record, leaving them to be dealt with as the circumstances of the particular case might indicate." Fed. R. Evid. 803(5) Advisory Comm. Note.

As with other questions regarding the admissibility of a statement under an exception to the rule against hearsay, courts are to make the determination whether the

---

maintained records that identified which of its facilities was used to process transactions on which dates, and that he had access to such information in the course of his duties. Ex. C at 983-84. Because Mr. Pepitone did not recall the information with specificity during the 2017 criminal trial, he was refreshed with a copy of the CHIPS Facility Record and then identified the dates on which transactions were processed through The Clearing House's New York facility between 2012 and 2015. Id. at 984-88. Mr. Pepitone's testimony as to the dates on which CHIPS was processing through its New York facility in the 2017 trial is identical to the dates on which he testified CHIPS was processing through its New York facility in the 2019 trial.

requirements of Rule 803(5) have been satisfied by a preponderance of the evidence.  See, e.g., United States v. Franco, 874 F.2d 1136, 1139 (7th Cir. 1989) ("When making preliminary factual inquiries about the admissibility of evidence under a hearsay exception, the district court must base its findings on the preponderance of the evidence.").

III.   Discussion

Mr. Pepitone's testimony satisfied each of the three requirements set forth in Rule 803(5), and the Court was correct to allow him to read from the CHIPS Facility Record. Specifically, Mr. Pepitone testified that (1) he did not recall with specificity the dates on which CHIPS transactions were processed in New York but had previously given accurate testimony on that topic in 2019; (2) he had referred to the CHIPS Facility Record and testified based on the CHIPS Facility Record (and thus adopted it) during that prior proceeding in 2019; and (3) the CHIPS Facility Record showed when CHIPS transactions were processed through Manhattan-based facilities between 2012 and 2015.  Mar. 9, 2022 Trial Tr. at 2547-48.  Based on this testimony, there is no question that Mr. Pepitone adopted the CHIPS Facility Record in accordance with Rule 803(5).

While the government is not aware of a case where, as here, the witness incorporated testimony he had provided in a prior criminal trial, numerous courts have concluded that prior grand jury testimony meets the requirements of Rule 803(5).  See, e.g., United States v. Patterson, 678 F.2d 774, 778 (9th Cir. 1982); United States v. Barrow, 363 F.2d 62, 67 (3d Cir. 1966); United States v. Kortright, 2011 WL 4406352, at *13 (S.D.N.Y. Sept. 13, 2011).  Here, Mr. Pepitone clearly adopted his 2019 testimony—see Mar. 9, 2022 Trial Tr. at 2547—and this testimony bears the same indicia of reliability and trustworthiness (if not more) than grand jury testimony, see Kortright, 2011 WL 4406352, at *13 (noting that prior testimony "taken under oath and recorded by a court reporter" was admissible under Rule 803(5)).  Moreover, the Court gave defense counsel an opportunity to inquire into any of these matters on cross-examination, but defense counsel declined to do so.  The defense should not be heard to contest Mr. Pepitone's testimony when the Court provided "a lot of leeway" to "cross [Mr. Pepitone] as to his basis for his knowledge and all of that," and simply chose not to.  Mar. 9, 2022 Trial Tr. at 2522.

In any event, there does not appear to be any legitimate dispute regarding the accuracy or reliability of Mr. Pepitone's testimony, and the Court has ample basis to adhere to its ruling admitting Mr. Pepitone's testimony in light not only of his testimony in the 2019 criminal trial, but also his earlier testimony in the 2017 criminal trial.  Under Rule 104(a), preliminary questions concerning the admissibility of evidence are to be determined by the Court.  Fed. R. Evid. 104(a).  The Court has discretion to consider any material to assist it in resolving such questions and "is not bound by evidence rules."  Id.  Moreover, "[w]hen making preliminary factual inquiries about the admissibility of evidence under a hearsay exception, the district court must base its findings on the preponderance of the evidence."  See Franco, 874 F.2d at 1139; cf. Bourjaily v. United States, 483 U.S. 171, 175 (1987).

At sidebar, the government proffered Mr. Pepitone's prior sworn testimony as supporting admission of this evidence,  and the government provides additional detail here concerning that testimony.  In his 2017 testimony, Mr. Pepitone testified that The Clearing House maintained records that identified which of its facilities was used to process transactions

on which dates and that he had access to such information in the course of his duties. Ex. C at 983-84. After refreshing his recollection by referencing the CHIPS Facility Record—and thus plainly adopting it—Mr. Pepitone identified the dates on which transactions were processed through The Clearing House's New York facility between 2012 and 2015. Id. at 983-88. Because Mr. Pepitone adopted the CHIPS Facility Record during his 2017 testimony after being refreshed, the substance of his testimony in the instant case is admissible on that basis, and the Court is entitled to rely on that earlier testimony under Rule 104(a).

IV.     Conclusion

For the foregoing reasons, the Court's prior ruling allowing Mr. Pepitone to read from the CHIPS Facility Record was correct. The Court should also find under Rule 104(a) that, in the alternative, Mr. Pepitone adopted the CHIPS Facility Record in his 2017 testimony and that his testimony in this case is also admissible on that basis.

Respectfully submitted,

BREON PEACE
United States Attorney

By:     s/
        Alixandra E. Smith
        Drew G. Rolle
        Dylan A. Stern
        Assistant U.S. Attorneys

DEBORAH L. CONNOR                           JOSEPH BEEMSTERBOER
Chief, Money Laundering and Asset           Acting Chief, Fraud Section
Recovery Section, Criminal Division         Criminal Division
U.S. Department of Justice                  U.S. Department of Justice

s/                                          s/
Jennifer E. Ambuehl                         Brent Wible
Trial Attorney                              Trial Attorney