

U.S. Department of Justice

United States Attorney
Eastern District of New York

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 15, 2022

By ECF

The Honorable Margo K. Brodie
Chief United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Ng Chong Hwa
     Criminal Docket No. 18-538 (S-2) (MKB)

Dear Chief Judge Brodie:

  The government submits this letter concerning the admissibility of GX-101 and, for the reasons set forth below, respectfully requests the Court admit GX-101 with the redactions proposed in the version attached hereto as Exhibit A.

I. Applicable Law

  Evidence is generally admissible if it is relevant under the "very broad" standard of Federal Rule of Evidence 401. See, e.g., United States v. Gramins, 939 F.3d 429, 450 (2d Cir. 2019) (noting that relevance under Rule 401 is "easily satisfied" and citing cases for the proposition that Rule 401 is "very broad").

  Although out-of-court statements offered for their truth constitute hearsay, "[a]n out-of-court statement offered for some other purpose [than to prove the truth of a fact asserted], such as . . . to demonstrate the statement's effect on the listener, or to show the circumstances under which subsequent events occurred, is not hearsay." United States v. Certified Environmental Servs., Inc., 753 F.3d 72, 89 (2d Cir. 2014). Multiple courts have admitted news reports into evidence where they were not offered for their truth. See, e.g., Rivera v. Incorporated Vill. of Farmingdale, 29 F. Supp. 3d 121, 130 (E.D.N.Y. 2013) (news articles regarding a controversy admissible not to prove that there was a controversy, but for "the purpose of showing that the [the defendant] knew or believed there was"); Yong Ki Hong v. KBS America, Inc., 951 F. Supp. 2d 402, 421 n.5 (S.D.N.Y. 2013) (news articles offered to show that an alleged scheme was "public knowledge" are not offered to prove the scheme actually existed and thus "do not constitute hearsay"); Arista Recs. LLC v. Lime Grp. LLC, 784 F. Supp. 2d 398, 427 (S.D.N.Y. 2011) (citing the publication of "numerous mainstream news articles" as providing notice); Madigan v. Exxon Mobil Corp., 04 Civ. 2884 (JS) (MLO), 2008 WL

11447907, at *3 n.4 (E.D.N.Y. Sept. 23, 2008) (news articles admissible to show "notice"); Munafo v. Metropolitan Transp. Auth., Nos. 98 Civ. 4572 (ERK), 00 Civ. 0134 (ERK), 2003 WL 21799913, at *17 (S.D.N.Y. Jan. 22, 2003) (news article admissible on multiple non-hearsay grounds, including to show "defendants' knowledge" and "their motive;" "None of these purposes depends on the truth of the article; the mere fact of publication suffices."); see generally United States v. Press, 336 F.2d 1003, 1011 (2d Cir. 1965) ("statements inadmissible to prove the truth of the matter they assert may be admitted if the fact of the assertion is in itself relevant").

Even where admissible, Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Evidence is not unduly prejudicial when it is not "more inflammatory than the charged crime[s]," United States v. Livoti, 196 F.3d 322, 326 (2d Cir. 1999), or, put another way, when it involves conduct that is no "more sensational or disturbing than the crimes with which" the defendant is charged, United States v. Roldan Zapata, 916 F.2d 795, 804 (2d Cir. 1990).

II.    Discussion

The Court should admit the February 28, 2015 Sarawak article with the redactions set forth in Exhibit A, as it did with the prior Edge Financial Daily articles admitted as GX-2470.  As a threshold matter, there is no hearsay issue presented because, like GX-2470, the Sarawak article is not offered for its truth.  See Certified Environmental Servs., Inc., 753 F.3d at 89.  Instead, as defense counsel correctly noted, "at the bottom," the question presented is "a 403 issue."  Tr. 3223.

The probative value of the February 28, 2015 is substantial as it provides a clear motive for the defendant to delete the entirety of three personal email accounts just days after its publication.  Even in redacted form, the article makes clear that its authors had "completed an in-depth investigation into the trail of the missing billions at the heart of Malaysia's 1MDB (One Malaysia Development Berhad) financial scandal"; had "obtained access to thousands of documents and emails relating to transactions by 1MDB"; and had published the full text of certain emails sent and received by Jho Low at a personal Gmail address.  Ex. A at 2-3.  As the government intends to make clear to the jury, this was a problem for the defendant—for years, he had been communicating with Low concerning 1MDB business (a fact denied both publicly and internally at Goldman Sachs) and now, as reported in the February 2015 article, journalists had access to an untold number of emails they claimed related directly to "transactions by 1MDB." Id. at 2.  At the time of publication, the defendant was well aware of his own work with Low on "transactions by 1MDB" and that he had communicated with Low over private email on those transactions.  And just days later, he deleted the entirety of three personal email accounts used in the course of the 1MDB criminal scheme.  Evidence of his motive should be admitted.

Admitting this information in redacted form also corroborates multiple witnesses by helping to establish the fact of the continuing negative press about 1MDB following the 1MDB bond transactions.  As Mr. Leissner explained, he and the defendant discussed the ever-

increasing negative media around 1MDB "all the time" and that it "never went away." Tr. 1173 ("We continued to discuss [the increasing negative media] all the time.  It was a concern because it was really was a recurring thing.  It never went away."); id. at 2162 (Mr. Leissner and the defendant "continued to talk about [the negative press around 1MDB] all the time.  We both were very concerned about that.  Also because it just didn't stop.  And we had hoped that at the outset—at the close of Project Catalyze, that once we stopped doing further transactions, the coverage would stop as well.  It never did.").  Central to the negative press Mr. Leissner described was the Sarawak Report, which Mr. Leissner explained was "highly critical of the Malaysian government in general and certain state governments as well." Id. at 1261.

       Given the clear probative value of this evidence, the defendant's Rule 403 arguments should be rejected.  The proposed redactions set forth in Exhibit A dispel any of the purported "undue prejudice" claimed by the defendant.   There are no facts being presented "about the PetroSaudi scandal, scheme, whatever it is" or that the article was "20 or 30 pages long" or anything about the article's "detail."  Id. at 3197, 3224.  To the contrary, the unredacted portions reveal only those facts material to this trial: that a widely-read publication in Malaysia obtained actual emails sent and received by Low in connection with 1MDB business.

       In opposing the article's admission, the defendant cited a five page unreported decision in Linde v. Arab Bank, PLC, No. 04-CV-2799 (BMC) (VVP), 2014 WL 12558572, at *3 (E.D.N.Y. Aug. 1, 2014), which resolved civil litigants' motions in limine.  In Linde, the district court, in fact, admitted a news article that was probative of whether a party had notice of certain facts, but the court kept out additional articles finding that the other articles had minimal probative value without any additional link to the relevant party's awareness of them.

       That is not the case here.  As Mr. Swampillai testified, the Sarawak Report "became a go-to resource in Malaysia" as scrutiny of potential misconduct at 1MDB emerged.  Tr. at 3195.  Mr. Swampillai further explained that the publication "became hugely popular . . . in Malaysia insofar as getting information out about" 1MDB, which "was then an emerging scandal in Malaysia" and that the publication "had a lot of readership." Id.  Notwithstanding the established record that Sarawak Report was both widely read, including by bankers working on the 1MDB bond deals, counsel has repeatedly claimed that they were not read by the defendant.  That is fair argument, but it is not a basis to preclude admission of this evidence.

       Finally, the substance of the article—Low's ties to 1MDB and the obtaining of his emails—was already admitted without any objection from the defendant as part of GX-1969. Tr. at 185; GX-1969 at 4-6.  Having waived any evidentiary objection to those exhibits, the defense cannot now claim that the original publication, identified by Mr. Swampillai and described as widely-read, is somehow more prejudicial in the government's proposed redacted form.

Accordingly, the Court should admit GX-101 with the redactions set forth in Exhibit A.

Respectfully submitted,

BREON PEACE
United States Attorney

By:  s/ _____
Alixandra E. Smith
Drew G. Rolle
Dylan A. Stern
Assistant U.S. Attorneys

| | |
|---|---|
| DEBORAH L. CONNOR<br>Chief, Money Laundering and Asset<br>Recovery Section, Criminal Division<br>U.S. Department of Justice | JOSEPH BEEMSTERBOER<br>Acting Chief, Fraud Section<br>Criminal Division<br>U.S. Department of Justice |
| s/ _____<br>Jennifer E. Ambuehl<br>Trial Attorney | s/ _____<br>Brent Wible<br>Trial Attorney |