# BRAFMAN & ASSOCIATES, P.C.

ATTORNEYS AT LAW

256 FIFTH AVENUE, 2ND FLOOR

NEW YORK, NEW YORK 10001

TELEPHONE: (212) 750-7800

FACSIMILE: (212) 750-3906

E-MAIL: ATTORNEYS@BRAFLAW.COM

BENJAMIN BRAFMAN

MARK M. BAKER
OF COUNSEL

MARC A. AGNIFILO
OF COUNSEL

ZACH INTRATER
OF COUNSEL

ANDREA L. ZELLAN

JACOB KAPLAN

TENY R. GERAGOS
ADMITTED IN NY & CA

STUART GOLD

March 16, 2022

VIA ECF
The Honorable Margo K. Brodie
Chief United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   United States v. Ng Chong Hwa a.k.a Roger Ng, 18 Cr. 538 (MKB)

Dear Chief Judge Brodie:

We write in further support of the Court's preliminary decision not to admit GX-101. GX-101 is a 21-page article published in the Sarawak Report on February 28, 2015. It details claims that, in 2009, Jho Low siphoned 1MDB funds that were part of a joint venture with an entity called PetroSaudi. The Sarawak Report article notes that it obtained documents and emails related to 1MDB transactions—including Low's emails. The government seeks to introduce GX-101 to support its argument (detailed in its motions in limine) that Mr. Ng deleted three of his email accounts soon after this article was published because he believed his emails with Jho Low and his coconspirators would be uncovered.

The Sarawak Report article has no relevance here for three reasons. First, there is no evidence indicating that Mr. Ng ever saw it. Second, the PetroSaudi transaction has nothing to do with the crimes charged in the Second Superseding Indictment. Third, as the government is aware, Mr. Ng deleted one of his email accounts on February 3, 2015, more than three weeks **before** GX-101 was published.

BRAFMAN & ASSOCIATES, P.C.

But while GX-101 has no probative value, it details the crimes of Low, Mr, Ng's co-defendant, involving other 1MDB funds. This is highly prejudicial at a trial for crimes involving stolen 1MDB bond funds.

As counsel noted in court yesterday, this issue was addressed by Judge Brian Cogan of this District in *Linde v. Arab Bank, PLC*, No. 04-CIV-2799(BMC)(VVP), 2014 WL 12558572, at *1 (E.D.N.Y. Aug. 1, 2014). In *Linde*, the plaintiffs sought to introduce newspaper articles not for the truth of the matters asserted in the articles, but rather to show that the defendant had notice of the information contained in the articles. See 2014 WL 12558572 at *3. In sustaining the defendant's objections under F.R.E. 403, Judge Cogan noted that "[t]o be relevant to show notice to defendant, plaintiff would have to demonstrate that an employee of defendant responsible for an account at issue did, in fact, have notice of particular articles." *Id*. Judge Cogan further noted that the "marginal probative value of this evidence to notice would be outweighed by the delay necessitated by such proof, and the risk of unfair prejudice to defendant." *Id*.

The same is true here. As in *Linde*, the government is not seeking to admit GX-101 to prove the truth of the substance of the article. (Tr. 3198:4–6: "The substance of what's reported in the article, we don't -- we are not offering for the truth . . . .") Rather, the government seeks to establish that the article provided Mr. Ng with notice that Low's emails relating to the 1MDB-PetroSaudi venture had been made public. (Tr. 3198:10–12: "It's the fact that the article included a number of emails that had been reprinted in full that Jho Low had sent or received in connection with matters involving 1MDB . . . ."). But, as in *Linde*, the article could only be relevant to establish notice if the government was able to demonstrate that Mr. Ng actually saw the article. *Cf. U.S. ex rel. Woods v. Empire Blue Cross & Blue Shield*, No. 99 CIV. 4968 (DC), 2002 WL 1905899, at *1 n.1 (S.D.N.Y. Aug. 19, 2002) (admitting videotape and newspaper articles to establish plaintiff's notice on a relevant issue where the plaintiff confirmed at his deposition that he learned of the relevant issue from the television program).

Tellingly, the government has failed to provide any such evidence. There is no email or communication where Mr. Ng forwards or is forwarded the article; there is no email or communication where Mr. Ng discusses the article at all. Rather, the government relies on speculation that Mr. Ng must have read the article because of the "established record that Sarawak Report was both widely read, including by bankers working on the 1MDB bond deals." (Dkt. 171 at 3.) Such rank speculation should not be the basis to admit otherwise irrelevant evidence. Absent evidence that Mr. Ng read the article, it has no relevance at trial to establish notice.

Additionally, even if there was evidence that Mr. Ng read the article, it would still not support the government's argument that the article was the reason why Mr. Ng's deleted his email accounts. First, as noted above, Mr. Ng deleted one of his email accounts more than three weeks

-2-

BRAFMAN & ASSOCIATES, P.C.

before the article was published. Second, the emails included in the Sarawak Report article pertained only to Low's emails regarding the 1MDB-PetroSaudi joint venture, which is unrelated to the fraud involving the 1MDB bond deals. Consequently, the article does not provide any basis to believe that Mr. Ng had concerns that his emails with Low relating to the 1MDB bond deals with Goldman Sachs would become public.

The government claims Mr. Ng waived objection to the Sarawak Report article because counsel did not object to different articles being admitted though GX-1969, which addressed Low's ties to 1MDB and the obtaining of his emails. (Dkt. 171 at 3.) Those article, however, addressed both the PetroSaudi fraud and the 1MDB bond deals, and therefore had some marginal relevance to the case. In contrast, the Sarawak Report article addressed only PetroSaudi. Moreover, those articles were admitted through Andy Tai, who was part of an email chain that included the articles themselves – thus, it was clear that Mr. Tai received the articles in question, and so had notice of them. The defense therefore did not object to the introduction of GX-1969. The difference between GX-1969 and GX-101 is clear.

Lastly, admission of the article stands to severely prejudice Mr. Ng, as the article addresses a fraud perpetrated by Mr. Ng's co-defendant involving a separate 1MDB-related deal. But Mr. Ng had nothing to do with PetroSaudi whatsoever, and it has no place in this trial. "While not susceptible of mathematical calculation, probative force is a function of relevance." *United States v. Taveras*, 424 F. Supp. 2d 446, 463 (E.D.N.Y. 2006) (Weinstein, J.). Given the article's lack of probative value and the similarities between the PetroSaudi fraud and the fraud involving 1MDB bond deals, this Court should exclude the Sarawak Report article because danger of unfair prejudice.

Notably, the Government's argument that the article can be redacted increases, rather than removes, the prejudicial impact. If any part of the article is to be given to the jury, it is critical that the jury understand that the article does not relate to the matters before the Court. It would be important for the jury to know that the article relates to a separate massive, complex fraud purportedly committed by Jho Low in which Mr. Ng was not involved. The only way the jury would know that Mr. Ng was not involved is to have the totality of the article to see that in this sprawling alleged scheme involving PetroSaudi, a reporter who has access to the PetroSaudi server does not say a single word about Roger Ng. Any deletion of any part of the article would, therefore, only prejudice Ng more by giving the jury only a partial understanding of this article. As a result, redacting the article only makes matters worse.

BRAFMAN & ASSOCIATES, P.C.

## CONCLUSION

      For the reasons stated above, the Court should adhere to its preliminary ruling, and the government's request to admit GX-101 should be denied.

                                            Respectfully submitted,

                                            Marc A. Agnifilo, Esq.
                                            Zach Intrater, Esq.
                                            Teny R. Geragos, Esq.
                                            Jacob Kaplan, Esq.

cc:      Counsel for the government (via ECF)