# Brafman & Associates, P.C.

ATTORNEYS AT LAW

256 FIFTH AVENUE, 2ND FLOOR

NEW YORK, NEW YORK 10001

TELEPHONE: (212) 750-7800

FACSIMILE: (212) 750-3906

E-MAIL: ATTORNEYS@BRAFLAW.COM

BENJAMIN BRAFMAN
———
MARK M. BAKER
OF COUNSEL

MARC A. AGNIFILO
OF COUNSEL

ZACH INTRATER
OF COUNSEL

ANDREA L. ZELLAN

JACOB KAPLAN

TENY R. GERAGOS
ADMITTED IN NY & CA

STUART GOLD

March 22, 2022

VIA ECF
The Honorable Margo K. Brodie
Chief United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

   Re: <u>United States v. Ng Chong Hwa a.k.a Roger Ng</u>, 18 Cr. 538 (MKB)

Dear Chief Judge Brodie:

  We write to address the concerns that counsel raised earlier today regarding the Goldman Sachs trainings materials and policies that the government seeks to introduce through Caroline Fraser. As noted in Court, many of the exhibits contain prejudicial information such as examples of other individuals who have been convicted of FCPA violations, descriptions of other crimes that Mr. Ng is not charged with (e.g., avoiding sanctions and insider trading) and discussions of laws from other jurisdictions. One exhibit (GX-551 at 54) even has a picture of a Chance Card from the game Monopoly that states: "Go directly to jail." The proposed exhibits also include Goldman Sachs's policies, the violation of which are not crimes, yet give the jury the impression that Mr. Ng may have violated the law just as he allegedly violated Goldman Sachs's policies. The government's minor redactions to portions of three exhibits does nothing to address counsel's concerns. Counsel therefore objects to these exhibits as their prejudicial effect outweighs any potential probative value.

BRAFMAN & ASSOCIATES, P.C.

Below are some examples:

**GX-551:**

This exhibit includes materials from the IBD Compliance Annual Training program in 2009. The overwhelming majority of this 57-page document has nothing to do with FCPA-related training. In fact, only one page (p. 16) specifically addresses FCPA. This page, however, includes a reference to the Frederic Bourke case where Bourke was convicted of an FCPA violation "even though he didn't pay the bribes himself, he only knew about them." The prejudice of this statement to Mr. Ng is obvious.

This training material also includes specific examples from Enron and WorldCom that have no relevance to the FCPA (pp. 28–31). On page 54, when discussing insider trading (a crime that Mr. Ng is not charged with), the training includes the "Go directly to jail" card from the game Monopoly. The prejudicial effect of this exhibit is unavoidable.

**GX-553:**

This exhibit is an outline from an undated Goldman Sachs Anti-Bribery Training that contains discussions about the FCPA as well as the UK Bribery Act. To the extent these materials are undated, this exhibit should not be admissible because there is basis to believe this training was in effect during any relevant time in this case.

These materials are also prejudicial, as it specifically discusses the use of intermediaries and notes: "An estimated 70% of the recent US bribery enforcement actions have involved payments made through agents or other third parties." (GX-553 at p. 16.)

These materials also discuss Goldman's internal anti-bribery policies (pp. 22–35), including specific potential scenarios. This portion of the training material is prejudicial because it invites that jury to believe that Mr. Ng may have violated the FCPA simply because he violated Goldman's internal anti-bribery policies.

**GX-565:**

This exhibit contains materials from a November 2013 session on Anti-Money Laundering, Government Sanctions and Anti-Bribery training. This exhibit includes examples of "Recent Bribery/Corruption Headlines," even including a case involving a Malaysian official. (GX-565 at p. 10.) This training also discusses the UK Bribery Act (p. 12), which has no relevance to this case. The material also discusses the use of intermediaries, noting that "Roughly 70% of all FCPA cases involve intermediaries (GX-565 at pp. 23–24.) The exhibit also includes references Goldman's internal policies regarding charitable contributions (pp. 29–30)—which is one of the allegations in this case. Again, this gives the jury the impression that Mr. Ng must have violated the FCPA because he allegedly violated internal Goldman policies.

BRAFMAN & ASSOCIATES, P.C.

**GX-604:**

This exhibit includes Goldman's policies regarding the use of emails, including the prohibition of using personal emails for client communications or other firm business. As noted above, the jury will believe that Mr. Ng violated the FCPA simply because he allegedly violated Goldman's internal policies.

**GX-609:**

This exhibit includes Goldman's policies regarding Outside Activities. This exhibit does not discuss or relate to the FCPA. All this exhibit does is imply to the jury that Mr. Ng violated the FCPA simply because he allegedly violated Goldman's internal policies.

**GX-614:**

This exhibit includes Goldman's Code of Business Conduct and Ethics. This Code has nothing to do with any FCPA-related issues other than the general statement to "comply with applicable rules and regulations," including those related to bribery. Consequently, this exhibit has no relevance to show that Mr. Ng was trained or had knowledge of FCPA regulations. All this exhibit does is make the jury believe that Mr. Ng violated the FCPA simply because he allegedly violated Goldman's Code of Business Conduct and Ethics.

**Remaining Exhibits:**

The remaining exhibits (GX-611, 613, 615, 616, 618, 619, 620, 623, 624, 626 and 630), all suffer from the same issues, as they refer to internal Goldman policies.

## Conclusion

In discussing the relevance of these exhibits, the government stated today that "the general probative value of it and I think that as reflected in the defendant's requested charge, there's a strong push by counsel to sort of require knowledge. I don't think it's reflected in the law, but in terms of willfulness that this defendant clearly knew the wrongfulness of the conduct and the criminality here." (Tr. 3823:21–3824:1.) A close review of the proffered exhibits shows another purpose: to prejudice Mr. Ng by implying that he violated the law, specifically the FCPA, because he allegedly violated internal Goldman policies. Moreover, by including specific examples of other FCPA violations, these training materials give the jury the mistaken impression that Mr. Ng's conduct must have also violated the FCPA. Finally, the proffered exhibits also refer to other crimes, with which Mr. Ng is not charged, heightening the danger of jury confusion with minimal if any relevance to this case.

BRAFMAN & ASSOCIATES, P.C.

Accordingly, for the reasons stated above, the government's requests to admit these exhibits should be denied.

Respectfully submitted,

Marc A. Agnifilo, Esq.
Zach Intrater, Esq.
Teny R. Geragos, Esq.
Jacob Kaplan, Esq.

cc: Counsel for the government (via ECF)

BRAFMAN & ASSOCIATES, P.C.