UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------
UNITED STATES OF AMERICA,

- against –

NG CHONG HWA *also known as* ROGER NG,

                Defendant.
---------------------------------------------------------------

**ORDER**
18-CR-538 (MKB)

MARGO K. BRODIE, United States District Judge:

      At trial on March 9, 2022, the Court permitted Government witness Robert Pepitone, Vice President and Senior Product Manager of the Clearing House Interbank Payments Systems ("CHIPS"), to read the contents of Government Exhibit 3003 ("GX 3003" or the "CHIPS Facility Record") into evidence, over Defendant Roger Ng's objection, pursuant to Federal Rule of Evidence 803(5), which permits a "recorded recollection" to be read into evidence under certain circumstances. (Trial Tr. ("Tr.") 2549.) On March 15, 2022, the Government filed a letter in support of the Court's ruling. (Gov't Letter, Docket Entry No. 170.) On March 16, 2022, Ng filed a letter requesting that the Court strike Pepitone's testimony relating to GX 3003, (Def.'s Letter, Docket Entry No. 173), and the Government filed a reply, (Gov't Reply, Docket Entry No. 175).

      For the reasons discussed below, the Court finds that GX 3003 is admissible.

**I. Background**

    **a. The Court's March 9 ruling**

During trial on March 9, 2022, the Government requested that the Court allow Pepitone to read to the jury the contents of GX 3003, which identifies the dates on which CHIPS

processed money transfers through a facility located in New York, pursuant to Federal Rule of Evidence 803(5).  (Tr. 2549.)  Ng objected to the Government's request on the grounds that GX 3003 is not Pepitone's recorded recollection but rather is a "recording by a different party that he once used to refresh his recollection at a prior trial," arguing "it's not as though he made this record" or knows it is "accurate based on any of his firsthand knowledge."  (*Id.* at 2550.)  The Government argued that Rule 803(5) "specifically addresses statements that the witness adopts" and "does not require that the witness have written it down him or herself," and during the prior trial, "his recollection was refreshed," he "reviewed the chart," and "he adopted the statements in the chart."  (*Id.* at 2551.)  The Government noted that Pepitone actually "testified about this twice" and that his testimony in both trials "was provided to defense counsel."  (*Id.* at 2551–52.)  The Court allowed Pepitone to read the document and stated that it would allow Ng to cross-examine him "as to the basis for his knowledge" and give Ng "a lot of leeway with that."  (*Id.* at 2552.)  Ng did not cross-examine Pepitone on the basis for his knowledge.  (*See id.* at 2554–67.)

      **b.  Ng's ongoing objection**

On March 14, 2022, Ng expressed concern that Pepitone's testimony "is now on the record" and indicated "we object to it on an ongoing basis to the extent that [it] is going to now be incorporated into charts," (*id.* at 2816) — namely, Government Exhibit 159 ("GX 159"), which the Government explained shows "the dates on which those CHIPS wires would have processed in New York," (*id.* at 2817).  Ng argued that Pepitone's testimony "did not make out the elements of [Rule] 803(5)" because "it didn't concern a matter that he had personal knowledge of" and "he didn't testify that he did [have knowledge of it,] and the writing has to be made by him or adopted by him as something that he once knew."  (*Id.* at 2816.)  The Government repeated its position that Pepitone "previously adopted the statement at . . . two

2

prior trials" and noted that, although the Court gave Ng "leeway to ask him about that," Ng "chose not to." (*Id.* at 2817.)

Later on March 14, the Government moved to admit GX 159, a summary chart which contained a column indicating the dates on which CHIPS processed transactions through its New York facility, and Ng objected based on the prior discussion. (*Id.* at 2931.) The Court overruled Ng's objection and admitted GX 159.[1] (*Id.* at 2932.) The Government filed a letter in further support of the Court's ruling allowing Pepitone to read the contents of GX 3003, arguing that the Court's ruling was correct and the Court "should also find under Rule 104(a) that, in the alternative, Mr. Pepitone adopted the CHIPS Facility Record in his 2017 testimony and that his testimony in this case is also admissible on that basis."[2] (Gov't Letter 4.) On March 15, 2022, the Court requested further briefing from the parties.[3] (Tr. 3225.)

On March 16, 2022, Ng responded to the Government's March 14 letter requesting that the Court strike Pepitone's testimony relating to GX 3003, "along with the portions of any charts" relying on his testimony, on the grounds that the Government "has not established" that Pepitone ever had firsthand knowledge of the information at issue. (Def.'s Letter 4.) Also on March 16, 2022, the Government filed a reply to Ng's letter. (Gov't Reply.)

---

[1] During a break in the trial, the Court confirmed that Ng's objection to GX 159 was only "to the reference in the furthest right-hand column," indicating where the transactions were processed. (Tr. 2949.)

[2] Rule 104(a) provides, in relevant part, that "[t]he court must decide any preliminary question about whether . . . evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege." Fed. R. Evid. 104(a). In view of the fact that the parties reference both prior testimonies, the Court considers Pepitone's 2017 testimony, in addition to his 2019 testimony, his testimony in this trial, and the document itself.

[3] The Government provided the Court with Pepitone's 2017 and 2019 testimony. (2017 Tr., annexed to Gov't Letter as Ex. C, Docket Entry No. 170-3; 2019 Tr., annexed to Gov't Letter as Ex. A, Docket Entry No. 170-1.)

3

### c. Pepitone's testimony

#### i. 2017 testimony

At the 2017 trial, Pepitone testified that, prior to 2016, CHIPS operated out of two locations, New York and North Carolina, (2017 Tr. 981); one would know which facility was used for a particular transaction because on "any particular day . . . all the reports and messages that come out of the system have an indicator on it that lets you know where the transaction is being processed[,] but if you would look back historically, the only way you would be able to tell is to go back into records," (*id.* at 984); as part of his duties and responsibilities at CHIPS, he has access to this information but could not recall it, (*id.*); and CHIPS had prepared a document that would refresh his recollection as to which facility was used on which particular day, (*id.*).

Upon seeing the document, Pepitone testified that it refreshed his recollection as to the particular dates CHIPS used each facility between 2012 and 2015. (*Id.* at 985, 987.) He "preface[d]" his testimony, explaining that "what normally happens is that CHIPS's primary operating center is New York," but "either for disaster recovery preparedness or in a real disaster . . . , like a storm or hurricane, [CHIPS] would move the production operation . . . into our backup site in North Carolina." (*Id.* at 985.) He then testified as to the particular dates CHIPS used each facility between 2012 and 2015. (*See id.* at 985–88.)

#### ii. 2019 testimony

At the 2019 trial, Pepitone testified that, between 2013 and 2016, CHIPS had "two facilities," "one in New York and one in North Carolina." (2019 Tr. 2566.) "[D]epending on either environmental conditions like hurricanes or storms that may be on the way," CHIPS would "move the system processing from one location to the other." (*Id.* at 2566–67.) In addition, CHIPS "alter[s] where we run the system out of . . . on a quarterly basis." (*Id.* at 2567.) He

4

testified that he did not know "off the top of [his] head" which facility was used on particular days between 2013 and 2016 but that CHIPS had prepared a document that would refresh his memory. (*Id.*) Upon seeing the document, he testified that it was the document CHIPS had prepared and that he was familiar with it. (*Id.* at 2568.) The government sought to admit the document, the defense did not object, and the court admitted the document. (*Id.*) Relying on the published document, Pepitone then testified to the dates on which CHIPS processed transfers at its New York and North Carolina facilities between 2013 and 2016. (*See id.* at 2569–70.)

### iii. March 9, 2022 testimony

At trial in this case on March 9, 2022, Pepitone testified that, between 2012 and 2015, CHIPS processed transactions from data centers in New York and North Carolina, (Tr. 2542); New York was the "primary" site, (*id.* at 2546); CHIPS "on a quarterly basis . . . relocate[s] the production processing system from one location to another" and "operate[s] out of there until the next test," (*id.* at 2545–46); and CHIPS also switches locations "in prevention of experiencing weather events, like a hurricane," moving "the location from North Carolina to New York" in anticipation of weather events and "back down to North Carolina" as the event "regresses," (*id.* at 2546). Pepitone further testified that he did not recall when CHIPS was using its New York-based facilities on any given day from 2012 to 2015; CHIPS does not currently maintain business records showing which facilities it used on any given day; he previously testified in an unrelated 2019 court proceeding as to those dates; at the time he testified, he referred to a document CHIPS had created; and he testified truthfully and accurately during that proceeding. (*Id.* at 2547.) Upon seeing GX 3003, he testified that he recognized the document; it was the same exhibit he had referred to at the 2019 proceeding; his 2019 testimony was based on the

5

information contained in GX 3003; and GX 3003 shows when CHIPS was using its New York-based facility from 2012 to 2015. (*Id.* at 2548.)

## II. Discussion

The Government argues that Pepitone's testimony "satisfie[s] each of the three requirements set forth in Rule 803(5)" because: "(1) he did not recall with specificity the dates on which CHIPS transactions were processed in New York but had previously given accurate testimony on that topic in 2019; (2) he had referred to the CHIPS Facility Record and testified based on the CHIPS Facility Record (and thus adopted it) during that prior proceeding in 2019; and (3) the CHIPS Facility Record showed when CHIPS transactions were processed through Manhattan-based facilities between 2012 and 2015." (Gov't Letter 3.) Although the Government is "not aware of a case where, as here, the witness incorporated testimony he had provided in a prior criminal trial," it argues that "numerous courts have concluded that prior grand jury testimony meets the requirements of Rule 803(5)." (*Id.*) In addition, the Government argues that "the Court gave defense counsel an opportunity to inquire into any of these matters on cross-examination, but defense counsel declined to do so" and therefore "should not be heard to contest" Pepitone's testimony. (*Id.*) Finally, the Government argues that the Court "should also find under Rule 104(a)" that Pepitone adopted GX 3003 "in his 2017 testimony." (*Id.* at 4.)

Ng argues that the Government cannot satisfy Rule 803(5)(a)'s requirement that Pepitone "once knew" the information in GX 3003 or Rule 803(5)(c)'s requirement that GX 3003 "accurately reflect" Pepitone's knowledge because it has not established, either at this trial or through Pepitone's prior testimony, that Pepitone "ever personally had knowledge of the events in question," as he has "never testified" that he once had personal knowledge of the precise dates of the location of CHIPS processing facilities. (*See* Def.'s Letter 2–3.)

6

The Court considers the admissibility of GX 3003 and, by extension, GX 159 under both Rule 803(5) and the residual hearsay exception contained in Rule 807. For the reasons below, the Court finds that the 2017 testimony establishes Pepitone's personal knowledge of the dates CHIPS processed transactions through its New York facility, as well as the accuracy of that information, and his testimony in this trial establishes that he did not recall the knowledge that he had in 2017 of the dates of operations in each specific location and, as a result, could therefore testify based on the record. Moreover, the contents of GX 3003 are also admissible under Rule 807.

  a. **Rule 803(5)**

Federal Rule of Evidence 803(5) provides that a record that "(a) is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately; and (b) was made or adopted by the witness when the matter was fresh in the witness's mind; and (c) accurately reflects the witness's knowledge" is an exception to the rule against hearsay that, if admitted, "may be read into evidence but may be received as an exhibit only if offered by an adverse party." Fed. R. Evid. 803(5); *see also Parker v. Reda*, 327 F.3d 211, 213 (2d Cir. 2003) (per curiam) (stating that, before a memorandum "could be read into evidence, a showing was required that (1) [the witness's] memory of the events detailed in the memorandum was sufficiently impaired; (2) he prepared or adopted the memorandum at or near the time of the events; and (3) at the time he prepared or adopted it, it correctly reflected his knowledge of the events").

Rule 803(5) does not require a record "to have been prepared by the witness for it to be admissible as a recorded recollection, [but] the events recounted in the [record] must be matters of which the witness had firsthand knowledge." 29A Am. Jur. 2d *Evidence* § 1199 (2022); *see*

7

*also* Michael A. Rosenhouse, Annotation, *Admissibility of Statement Under Rule 803(5)*, 93 A.L.R. Fed. 2d 79 (2015) (noting that, in enacting Rule 803(5), "Congress added the words 'or adopted by the witness' after the phrase 'shown to have been made,' which clarified the rule's applicability to a record adopted by a witness as well as one made by the witness" (citing S. Rep. No. 93-1227)). "No attempt is made in the exception to spell out the method of establishing the initial knowledge or the contemporaneity and accuracy of the record, leaving them to be dealt with as the circumstances of the particular case might indicate." Fed. R. Evid. 803(5) advisory committee's note. Rule 803(5)'s requirements must be satisfied by a preponderance of the evidence. *See United States v. Franco*, 874 F.2d 1136, 1139 (7th Cir. 1989) ("When making preliminary factual inquiries about the admissibility of evidence under a hearsay exception, the district court must base its findings on the preponderance of the evidence.").

Pepitone's 2017 testimony shows by a preponderance of the evidence that he once had personal knowledge of the particular dates between 2012 and 2015 that CHIPS processed transactions through its New York facility, as required by Rule 803(5)(a); that he adopted the contents of GX 3003 when they were fresh in his mind, as required by Rule 803(5)(b); and that GX 3003 accurately reflects his knowledge at the time he adopted it, as required by Rule 803(5)(c).[4] In his 2017 testimony, which is consistent with his 2019 testimony, his testimony in this case, and the document, Pepitone testified that the document he was shown, which is the same as GX 3003, refreshed his recollection as to the particular dates CHIPS used each facility

---

[4] Ng does not argue in his letter that Pepitone failed to adopt the contents of GX 3003 "when the matter was fresh in the witness's mind," as required by Rule 803(5)(b). (*See* Def.'s Letter 2–3 (arguing that "[t]he [G]overnment cannot satisfy Rule 803(5)(A), and it cannot satisfy Rule 803(5)(C)" but noting that "[t]his is a different issue than [Rule] 803(5)(B), which deals with the making or adopting of the witness 'when the matter was fresh in the witness's memory'" (quoting Fed. R. Evid. 803(5)(b))).) In any event, the specificity of Pepitone's 2017 testimony indicates that the matter was fresh in his mind when he adopted the contents of GX 3003, as discussed above.

between 2012 and 2015.  (2017 Tr. 985, 987.)  Although Ng argues that Pepitone never specifically testified that he once had firsthand knowledge of the particular dates the New York location was used to process transactions, Pepitone explained the general circumstances under which CHIPS normally transferred processing between the primary New York facility and the North Carolina facility, (*see id.* at 985), before he testified as to the particular dates CHIPS used each facility between 2012 and 2015 based on his refreshed recollection from seeing the document, (*see id.* at 985–88), explaining in several instances that when the location of the facility CHIPS was using changed, the change coincided with CHIPS's quarterly disaster recovery tests and real disasters, (*see id.* at 986 ("[T]ypically around the end of September time frame we run our third quarter disaster recovery test.  So typically we would move to . . . the North Carolina backup location, and run the system there for a period of time, which we did."); *id.* ("And then just to recall everybody's memory, back on October 29, 2012 was Hurricane Sandy and in preparation for that we moved the site to North Carolina . . . for about a week and then we operated out of New York again from November 3, 2012 to December 21, 2012."); *id.* at 987 ("March 25th we moved to North Carolina again, probably after the first quarter disaster recovery test . . . .  And then finally in the last quarter from October 26, 2013 through . . . December 31, 2013, we operated out of New York again."); *see also id.* at 986 ("Typically at the end of the year it closes[] at the primarily cation [sic].")).  Therefore, the Court finds by a preponderance of the evidence that Pepitone once had firsthand knowledge of the particular dates that CHIPS processed transactions through its New York facility and adopted the contents of GX 3003 when this information was fresh in his mind, and the dates contained in GX 3003 correctly reflect Pepitone's knowledge at the time he testified in 2017.

9

      **b. Rule 807**

In addition, the Court is satisfied that the information nevertheless meets the requirements of Rule 807 of the Federal Rules of Evidence.

Under Federal Rule of Evidence 807, "a hearsay statement is not excluded" if "(1) the statement is supported by sufficient guarantees of trustworthiness — after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Fed. R. Evid. 807. "A statement will be admitted under this rule if '(i) it is particularly trustworthy; (ii) it bears on a material fact; (iii) it is the most probative evidence addressing that fact; (iv) its admission is consistent with the rules of evidence and advances the interests of justice; and (v) its proffer follows adequate notice to the adverse party.'" *United States v. Morgan*, 385 F.3d 196, 208 (2d Cir. 2004) (quoting *United States v. Bryce*, 208 F.3d 346, 350–51 (2d Cir. 1999)); *see also United States v. Hill*, 658 F. App'x 600, 604 (2d Cir. 2016). "The residual exception in Rule 807 is used 'very rarely, and only in exceptional circumstances.'" *United States v. Little*, No. 12-CR-647, 2018 WL 461238, at *1 (S.D.N.Y. Jan. 3, 2018) (quoting *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991)).

Even assuming that Pepitone's testimony is inadmissible under Rule 803(5), it is admissible under the residual hearsay exception. First, the accuracy of the dates is supported by sufficient guarantees of trustworthiness. As noted above, Pepitone's 2017 testimony, which is consistent with his 2019 testimony and his testimony in this case, indicates that he once had personal knowledge of the dates in GX 3003 and that the dates are accurate. (*See* 2017 Tr. 985, 987.) In addition, he testified in 2017 that this information could be retrieved from CHIPS's

10

"operations area," which at that time "maintain[ed] records that would help you identify on which day where the payment system was operating," and that CHIPS had prepared the document used to refresh his recollection. (*Id.* at 984.) Second, GX 3003 bears on a material fact, as the dates CHIPS processed transfers through its New York facility appear relevant to the issue of venue, which Ng challenges. Third, GX 3003 is more probative on the point for which it is offered than any other evidence that could be obtained through reasonable efforts, as Pepitone testified that CHIPS does not currently maintain business records showing which facilities it used to process transactions on any given day between 2012 and 2015. (Tr. 2547; *see also id.* at 2551 (confirming that "the document itself was created by the business where he works . . . [t]o aid in his testimony during that prior trial . . . and is being used now since that's in effect the only business record").) Fourth, the admission of the dates in GX 3003 is consistent with the rules of evidence and advances the interests of justice, as the dates are relevant under Rule 401 and not unduly prejudicial under Rule 403. Finally, the proffer of GX 3003 follows adequate notice to Ng, who received Pepitone's prior testimonies in the 2017 and 2019 trials as 3500 material and has been aware since at least March 9, 2022, that the Government may seek to introduce this evidence. (*Id.* at 2551.)

Accordingly, even assuming that Pepitone's testimony is inadmissible under Rule 803(5), it is admissible under the residual hearsay exception contained in Rule 807.

### III. Conclusion

For the reasons discussed above, the Court adheres to its prior rulings admitting GX 3003 and the use of that information in GX 159.  Accordingly, the Court declines to strike Pepitone's testimony relating to GX 3003 or GX 159.

Dated: March 22, 2022
       Brooklyn, New York

                                    SO ORDERED:

                                      s/ MKB
                                  _____
                                  MARGO K. BRODIE
                                  United States District Judge