

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

F. #2016R00467                            *271 Cadman Plaza East*
                                          *Brooklyn, New York 11201*


March 27, 2022


The Honorable Margo K. Brodie
Chief United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

>              Re:    United States v. Ng Chong Hwa
>                     <u>Criminal Docket No. 18-538 (S-2) (MKB)</u>

Dear Chief Judge Brodie:

The government respectfully submits this letter in response to the defendant's motion pursuant to Federal Rule of Criminal Procedure 29 to dismiss Count Two of the Second Superseding Indictment. ECF No. 186. Much of the defendant's brief addresses an argument the government does not make, wrongly contending that, under the government's reading of the statute, "any compliance violation at any public company" would violate the internal accounting controls provision of the Foreign Corrupt Practices Act ("FCPA"). <u>See, e.g.</u>, <u>id.</u> at 8. To the extent the defense grapples with the government's actual argument, their challenge has more to do with the law on which the jury should be instructed than the evidence presented at trial. In any event, the defense is wrong on both the law and the facts. Their interpretation of the FCPA's internal accounting controls provision distorts the plain language of the statute, is inconsistent with its legislative history, and would lead to absurd results. On a correct reading of the law, the evidence presented at trial is easily sufficient to satisfy the low bar set by Rule 29.[1] The defendant's challenge to Count Two based on the theory that it is void for vagueness as applied to the defendant is similarly without merit. The defendant's motion should therefore be denied.

I.      <u>The FCPA's Internal Accounting Controls Provision and Its Legislative History</u>

The FCPA's internal accounting controls provision requires securities issuers to "devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances" that: (i) "transactions are executed in accordance with management's general or specific authorization"; (ii) "transactions are recorded as necessary (I) to permit preparation of financial statements in conformity with generally accepted accounting principles or any other

---

[1]      In considering a Rule 29 motion, a district court must view the evidence "in a light that is most favorable to the government, and with all reasonable inferences resolved in favor of the government." <u>United States v. Persico</u>, 645 F.3d 85, 104 (2d Cir. 2011) (quoting <u>United States v. Eppolito</u>, 543 F.3d 25, 45 (2d Cir. 2008)).

criteria applicable to such statements, and (II) to maintain accountability for assets"; (iii) "access to assets is permitted only in accordance with management's general or specific authorization"; and (iv) "the recorded accountability for assets is compared with the existing assets at reasonable intervals and appropriate action is taken with respect to any differences."  15 U.S.C. § 78m(b)(2)(B)(i)-(iv).

The Senate Report on the statute summarized the internal accounting controls provision as requiring securities issuers "to maintain strict accounting standards and management control over their assets."  S. Rep. 95-114 (1977), reprinted in 1977 U.S.C.C.A.N. 4098, 4100. The Report further noted that the statute "imposes affirmative requirements on issuers . . . to design an adequate system of internal controls to assure, among other things, that the assets of the issuer are used for proper corporate purpose[s]."  Id., 1977 U.S.C.C.A.N. at 4105.  The Report emphasized that "[a] fundamental aspect of management's stewardship responsibility is to provide shareholders with reasonable assurances that the business is adequately controlled. Additionally, management has a responsibility to furnish shareholders and potential investors with reliable financial information on a timely basis.  An adequate system of internal accounting controls is necessary to management's discharge of these obligations."  Id.

While the internal accounting controls provision was enacted along with the FCPA's anti-bribery and books and records provisions in 1977, the statutory subsections limiting criminal liability under the internal accounting controls and books and records provisions to "knowing[]" violations was added in 1988.  Id. § 78m(b)(4)–(5).  The legislative history reveals that this scienter requirement was added to ensure that criminal penalties would not be imposed for "inadvertent conduct" but instead only for "conduct calculated to evade the internal controls requirement."  H.R. Conf. Report. No. 100-576, 917 (1988), reprinted in 1988 U.S.C.C.A.N. 1547, 1950.

II.      The Trial Evidence

At trial, the government adduced evidence that the three bond deals that the Goldman Sachs Group, Inc. ("Goldman")—a public company that qualifies as a securities issuer under the FCPA—arranged and underwrote for 1MDB were required to be approved by both the Firmwide Capital Committee and the Firmwide Suitability Committee.  Trial Tr. at 112, 274–79, 296–97, 565, 841–42, 911–12, 3045–48, 3641–47, 3664; GX 801, 803, 804, 805, 806, 807, 809, 810, 811, 812, 813, 814, 815, 818, 823, 827, 828, 829, 830, 836-A, 838-A, 839, 840, 841, 842, 843, 844, 845, 846.  Each of these three bond deals included principal commitments of Goldman's own capital.  Both the Firmwide Capital Committee's Charter, GX 513, and the annual reports filed by Goldman with the United States Securities and Exchange Commission, see, e.g., GX 504 at 88, specify that the Firmwide Capital Committee "provides approval and oversight globally of debt-related transactions, including principal commitments of the firm's capital."

The government also presented evidence that Goldman had an internal accounting control over financial reporting that specifically addressed the risk that "[d]eals that require committee approval are unauthorized."  GX 952.  The control required the "Deal Captain" to "ensure that all transactions receive appropriate approval and authorization [from the appropriate

2

committee] before execution," and then set forth a non-exhaustive list of Goldman committees, including the "Capital Committee." Id.[2]

Committee members also testified about a number of facts that would have been essential to know in considering the bond deals, namely: (1) the identities of any intermediaries or key decisionmakers for 1MDB, even if they did not hold an official position with 1MDB, Trial Tr. at 286–87, 3059–60, 3655–57; (2) that 1MDB would make a significant monetary payment, in addition to awarding options, as consideration for IPIC's guarantee of the bonds, Trial Tr. at 284–86, 3053, 3654; (3) that certain deal team members had a personal financial interest in the transactions, Trial Tr. at 287–88, 3060, 3657; and (4) that the approval of the deals by officials in Malaysia and Abu Dhabi was procured through bribery, Trial Tr. at 3060–61, 3657. Of course, none of these facts—not Jho Low's involvement in the deals, his key decision-making role at 1MDB, the substantial monetary payment to be made to Aabar Investments PJS Limited, the fact that the defendant and Leissner each expected to receive a portion of the bond proceeds as kickbacks, and that the bond funds would be used to pay bribes to high-ranking government officials in Malaysia and Abu Dhabi—was disclosed to the committees. Leissner testified that he and the defendant did not disclose these facts because they knew that, if they told the truth, the committees would not authorize the transactions. Tr. 568, 912–20, 2428.

III.     Discussion

As explained in court, the government's theory is that the defendant conspired to circumvent Goldman's internal accounting controls by obtaining authorization from the Firmwide Capital Committee and the Firmwide Suitability Committee through providing false information to, and withholding accurate information from, the committees. Trial Tr. at 4462–63. The defense contends that this theory was somehow "first offered" last week. ECF No. 186 at 16; see also id. at 6. Nothing could be further from the truth—in fact, this is the very theory that the Court considered in denying the defendant's pre-trial motion to dismiss Count Two. ECF No. 83 at 58–70.[3]

The government's theory is consistent with both the plain language of the statute and its legislative history. The government is proceeding on two prongs of the internal

---

[2]     In a footnote, the defense appears to challenge the testimony of the FBI agent who introduced GX 952 and identified it as consisting of printouts from Goldman's database of internal accounting controls. ECF No. 186 at 18 n.1; Trial Tr. at 4152. The defense did not object to this testimony, however, which was plainly correct—as Sal Fortunato testified in the defense case—and came from an agent with a degree in accounting and experience working both as an auditor and in the accounting department of a public company. Trial Tr. at 4097–98, 4383–84, 4388.

[3]     Insofar as the defense objects to the jury considering with respect to Count Two various acts the defendant undertook to conceal his dealings with Low that are alleged as overt acts, see ECF No. 186 at 15–16, the defense's argument should be rejected. That the defendant communicated with Low via personal email and took other steps to hide Low's involvement in the bond deals is plainly probative of the defendant's intent to mislead the committees responsible for approving the deals.

accounting controls provision: those that require controls to ensure that transactions are executed, and that access to assets is permitted only in accordance with management's authorization. 15 U.S.C. § 78m(b)(2)(B)(i), (iii). In these provisions, the statute is clearly focused on "management control over . . . assets," as emphasized in the Senate Report. S. Rep. 95-114 (1977), reprinted in 1977 U.S.C.C.A.N. 4098, 4100; see also ECF No. 83 at 67 ("[T]he focus in these sections is not on actual entries into the books and records but on management control." (internal quotation marks omitted)). The Senate Report went on to underscore the importance of "management's stewardship responsibility" and the need both "to provide shareholders with reasonable assurances that the business is adequately controlled" and "to furnish shareholders and potential investors with reliable financial information." Id., 1977 U.S.C.C.A.N. at 4105. The court in SEC v. World-Wide Coin Investments, Ltd., 567 F. Supp. 724 (N.D. Ga. 1983), also focused on these two purposes underlying the internal accounting controls provision: the need (1) for "safeguards against the unauthorized use or disposition of company assets" and (2) to assure that "financial records and accounts are sufficiently reliable for purposes of external reporting," id. at 750. This Court highlighted those very same purposes in denying the defendant's pre-trial motion to dismiss Count Two. See ECF No. 83 at 60 ("The internal accounting controls element of a company's control system is that which is specifically designed to provide reasonable, cost-effective safeguards against the unauthorized use or disposition of company assets and reasonable assurances that financial records and accounts are sufficiently reliable for purposes of external reporting." (citation and internal quotation marks omitted)). Because the statute plainly designates management authorization of transactions and access to assets as part of a system of internal accounting controls, the government has properly relied on the Firmwide Capital Committee's and the Firmwide Suitability Committee's authorization of the 1MDB bond deals in presenting its case on Count Two.

The government's theory with respect to 15 U.S.C. § 78m(b)(5)—which establishes criminal liability for "knowingly circumvent[ing]" a system of internal accounting controls—is similarly supported by both the statute's text and its history. The plain, everyday meaning of "circumvent" is "to manage to get around especially by ingenuity or stratagem." Circumvent, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/circumvent; see also CIRCUMVENT, Black's Law Dictionary (11th ed. 2019) ("circumvent" means to avoid a restrictive problem, rule, or other restriction, especially by clever and sometimes dishonest means). These dictionary definitions accord with the legislative history of the FCPA, which makes clear that Congress intended for criminal penalties to apply to "conduct calculated to evade the internal controls requirement." H.R. Conf. Report. No. 100–576, 917 (1988), reprinted in 1988 U.S.C.C.A.N. 1547, 1950. The statute thus plainly reaches circumvention through acts of deception. See United States v. Shellef, 718 F.3d 94, 102 (2d Cir. 2013) ("Statutory analysis necessarily begins with the plain meaning of a law's text and, absent ambiguity, will generally end there.").

By contrast, the defendant's reading of "circumvent" distorts its ordinary meaning. The defense contends that the only way to circumvent the committee authorization requirement is to avoid the authorization process altogether, either by somehow executing a transaction secretly or falsifying the required approval. ECF No. 186 at 3–4 (because "the control requires authorization only, this control is circumvented if the transaction is entered into without such authorization, i.e., if it is ultra vires"), 20 (arguing that the Firmwide Capital Committee approved the deals and stating that employees would have circumvented the authorization requirement only if they had "engaged in the deal without first obtaining

4

committee approval, i.e., engaged in the transaction <u>ultra vires</u>"). In other words, on the defendant's reading of the statute, "circumvent" has a cabined meaning that does not include obtaining authorization through fraud or deception.

The defendant's reading is wrong. When interpreting a statute, the Second Circuit "gives the statutory terms their ordinary or natural meaning." <u>United States v. Diaz</u>, 967 F.3d 107, 109 (2d Cir. 2020) (citation and internal quotation marks omitted); <u>see also</u> <u>United States v. Glick</u>, 142 F.3d 520, 524 (2d Cir. 1998) ("No rule of construction . . . requires that a penal statute be strained and distorted in order to exclude conduct clearly intended to be within its scope . . . ." (alterations in original)). Applying that approach here, Section 78m(b)(5) clearly encompasses fraudulent or deceitful conduct to obtain management authorization for transactions like the 1MDB bond deals.

In addition to being inconsistent with both the plain meaning and legislative history of the statute, the defendant's proposed interpretation of the internal accounting controls provision would lead to absurd results. <u>See</u> <u>SEC v. Rosenthal</u>, 650 F.3d 156, 162 (2d Cir. 2011) ("A statute should be interpreted in a way that avoids absurd results." (citation, alteration, and internal quotation marks omitted)). As noted, the defense contends that the only way to circumvent the authorization requirement is to avoid the authorization process altogether. ECF No. 186 at 3–4, 20. If this were the law, employees acting with an illegal purpose would be incentivized to obtain authorization through fraud or deceit, knowing that such conduct was beyond the statute's reach. Such an absurd result—particularly when it is based on a strained interpretation of statutory language that is inconsistent with the legislative history—should not be countenanced.

While the defendant has not made a facial challenge to the statute, his brief is replete with complaints about the purportedly broad swath of conduct the statute prohibits. In support of this unfounded assertion, the defendant provides inapt examples of what he describes as "draconian outcomes" that would result from applying the law as written. ECF No. 186 at 1, 17. But the Court can set those aside in the context of an as-applied challenge—the only challenge properly raised in connection with the defendant's Rule 29 motion—because the facts of this case bear no resemblance to those hypothetical scenarios. Unlike the examples hypothesized in the defendant's brief, the information the defendant withheld from the Firmwide Capital Committee and the Firmwide Suitability Committee here included the involvement of an exceptionally high-risk individual with whom the firm had previously refused to do business, the fact that bond proceeds would be used to pay hundreds of millions of dollars in bribes to foreign officials in both Malaysia and Abu Dhabi, and information that materially changed the economic structure of the deal. Even if there were a line to draw regarding the statute's reach—which the defendant is not arguing here—it need not be drawn in this case.[4]

---

[4]      In reviewing a challenge to a statute on vagueness grounds as applied to the defendant, the Court should assess whether the law "presents an ordinary person with sufficient notice of or the opportunity to understand what conduct is prohibited or proscribed" and whether it "accords unfettered discretion to law enforcement and juries." <u>Thibodeau v. Portuondo</u>, 486 F.3d 61, 67 (2d Cir. 2007); <u>United States v. John Doe</u>, 145 F. Supp. 3d 167, 178 (E.D.N.Y. 2015) (Brodie, J.) (same).

On a correct reading of the statute, the evidence presented at trial is clearly sufficient to support a guilty verdict, and the conspiracy to violate the internal accounting controls provision of the FCPA as charged in Count Two and presented at trial withstands the defendant's vagueness challenge.  Goldman required the bond deals to be approved and authorized by the Firmwide Capital Committee and the Firmwide Suitability Committee, and specified that committee authorization is an internal accounting control.  There is ample evidence that the defendant agreed with Leissner to conceal material facts from the committees in order to obtain their approval, knowing that the committees would not approve if they were presented with full and accurate information.  Accordingly, there is more than enough evidence for the jury to find that the defendant conspired to circumvent Goldman's internal accounting controls.

IV.     Conclusion

For the foregoing reasons, the Court should deny the defendant's Rule 29 motion.

Respectfully submitted,

BREON PEACE
United States Attorney

By:     s/_____
        Alixandra E. Smith
        Drew G. Rolle
        Dylan A. Stern
        Assistant U.S. Attorneys

DEBORAH L. CONNOR                   JOSEPH BEEMSTERBOER
Chief, Money Laundering and Asset   Acting Chief, Fraud Section
Recovery Section, Criminal Division Criminal Division
U.S. Department of Justice          U.S. Department of Justice

s/_____        s/_____
Jennifer E. Ambuehl                 Brent Wible
Trial Attorney                      Trial Attorney