

U.S. Department of Justice

United States Attorney
Eastern District of New York

F. #2016R00467  
AES/DGR/DAS

271 Cadman Plaza East  
Brooklyn, New York 11201

March 10, 2023

By ECF

The Honorable Margo K. Brodie  
Chief United States District Judge  
United States District Court  
225 Cadman Plaza East  
Brooklyn, New York 11201

      Re:    United States v. Ng Chong Hwa  
            Criminal Docket No. 18-538 (S-2) (MKB)

Dear Judge Brodie:

      The government submits this letter in response to the Court's request on March 9, 2023, at the sentencing of the defendant Ng Chong Hwa, for additional briefing in support of the government's request for the Court to order forfeiture as part of the defendant's sentence. (See Proposed Order of Forfeiture (ECF No. 228) and Government Sentencing Memorandum (ECF No. 229) at 51-56).

      As set forth in the government's prior filings, the PSR and herein, forfeiture is mandatory in this case as provided by statute, and is warranted in the amount of the defendant's ill-gotten gains from the scheme, which the government proved at trial by at least a preponderance totaled $35.1 million. (Id.; PSR ¶¶ 159-60). Because the forfeiture to be imposed serves an entirely different purpose than restitution, the restitutive payments received by 1MDB to date do not offset the mandatory forfeiture to be imposed here, and the Court should enter the proposed order of forfeiture in full.

I.      Legal Standard

      It is well settled that forfeiture is a mandatory part of sentence where the defendant is convicted of a statute that carries a corresponding forfeiture provision. Pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 982, if a defendant is convicted of an offense giving rise to forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case. See United States v. Monsanto, 491 U.S. 600, 607 (1989) ("Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applied..."); United States v. Viloski, 814 F.3d 104, 111 n.11 (2d Cir. 2016) (noting that, "as long as the factual predicate for the application of [Title 18, United States Code, Section 982 and Title 28, United States Code, Section 2461(c)]

1

has been satisfied, therefore, a district court has no discretion not to order forfeiture in the amount sought."); United States v. Bonventre, 2011 WL 1197853, *4 (S.D.N.Y. Mar. 30, 2011) (§ 2461(c) makes forfeiture mandatory in criminal cases). Further, the court has no discretion as to whether to impose forfeiture once the proper nexus has been shown. See United States v. Blackman, 746 F.3d 137, 143 (4th Cir. 2014) (§ 2461(c) makes criminal forfeiture mandatory in all cases; "The word 'shall' does not convey discretion . . The plain text of the statute thus indicates that forfeiture is not a discretionary element of sentencing. . . . Insofar as the district court believed that it could withhold forfeiture on the basis of equitable considerations, its reasoning was in error.").

Rule 32.2(b)(1)(A) of the Federal Rules of Criminal Procedure provides that if the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay. See Fed. R. Crim. P. 32.2(b)(1)(A). Courts in the Second Circuit have routinely imposed forfeiture money judgments pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1). See, e.g., United States v. Marsh, Nos. 10–CR–0480, 10–CR–0697, 10–CR–0700, 10–CR–0800, 10–CR–0801, 2011 WL 5325410 (E.D.N.Y. Oct. 26, 2011) (Weinstein, J.); United States v. Dipascali, No. 09 Cr. 764, 2010 WL 9002774 (S.D.N.Y. June 18, 2010); United States v. Capoccia, No. 1:03-CR-35-01, 2009 WL 2601426 (D. Vt. Aug. 19, 2009), aff'd, 402 Fed. Appx. 639 (2d Cir. 2010). Any unpaid amount that remains outstanding may be reduced to an in personam forfeiture money judgment. United States v. Awad, 598 F.3d 76, 78 (2d Cir. 2010) ("[W]hen a defendant lacks the assets to satisfy the forfeiture order at the time of sentencing, the money judgment [against the defendant] is effectively an in personam judgment in the amount of the forfeiture order . . .") (internal quotation marks omitted); United States v. Kalish, 626 F.3d 165, 168-69 (2d Cir. 2010) (same); United States v. Roberts, 696 F. Supp. 2d 263, 268 (E.D.N.Y. 2010) (Irizarry, J.) (same), aff'd and forfeiture order vacated on other grounds, 660 F.3d 149, 168 (2d Cir. 2011).

In contrast to the guilt phase of the criminal trial, the government bears the burden of establishing the amount of money subject to forfeiture only by a preponderance of the evidence. See Capoccia, 503 F.3d at 116 (sentencing courts determine forfeiture amounts by a preponderance of the evidence); United States v. Bellomo, 176 F.3d 580, 595 (2d Cir. 1999) (upholding trial court's application of preponderance standard on grounds that criminal forfeiture is part of sentencing). The government is not required to provide a precise calculation of the amount of money a defendant must forfeit. United States v. Treacy, 639 F.3d 32, 48 (2d Cir. 2011). Instead, the money judgment amount can be reasonably estimated based upon evidence already in the record, and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable. See United States v. Capoccia, 503 F.3d 103,109 (2d Cir. 2007); United States v. Roberts, 660 F.3d 149, 166 (2d Cir. 2011) ("district courts may use general points of reference as a starting point for a forfeiture calculation and 'make reasonable extrapolations' supported by a preponderance of the evidence").

Notably, criminal forfeiture "serves no remedial purpose, [and] is designed to punish the offender . . . ." United States v. Contorinis, 692 F.3d 136, 146 (2d Cir. 2012). It is well-settled in the Second Circuit that forfeiture is a mandatory obligation of a defendant at sentencing that is entirely separate from restitution, which is also mandatory. Kalish, 626 F.3d at 169 ("We see no infirmity in the District Court's imposition of both a forfeiture remedy and a restitution remedy. These remedies are authorized by separate statutes, and their simultaneous

2

imposition offends no constitutional provision." (emphasis omitted)); see also United States v. Bengis, 631 F.3d 33, 41 (2d Cir. 2011) (same) (quoting Kalish); United States v. Torres, 703 F.3d 194, 203 (2d Cir. 2012) ("[F]orfeiture and restitution statutes serve different purposes. . . . Restitution is loss based, while forfeiture is gain based." (citations omitted)). Accordingly, courts must impose forfeiture as part of the defendant's sentence, separate and apart from any restitution that is awarded to victims. See United States v. Bodouva, 853 F.3d 76, 78–79 (2d Cir. 2017) ("District courts are bound not to reduce the amount of a mandatory criminal forfeiture order by the amount of past or future restitution payments, in the absence of specific statutory authorization to do so.").

II.     Evidentiary and Legal Basis for the Government's Proposed Order of Forfeiture

The evidence at trial, as detailed in the government's sentencing submission (see ECF No. 229 at 4-31), established that the defendant illegally obtained at least $35.1 million from his involvement in the scheme. The defendant was convicted at trial of the following crimes: conspiracy to violate the FCPA's anti-bribery provisions, in violation of 18 U.S.C. § 371(Count One); conspiracy to violate the FCPA's internal controls provisions, in violation of 18 U.S.C. § 371 (Count Two); and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count Three). Forfeiture is mandatory in this case since the counts of conviction carry mandatory corresponding forfeiture provisions under the law. As a result of the defendant's conviction of 18 U.S.C. § 371, the defendant must forfeit any property, real or personal that constitutes or is derived from proceeds traceable to such violation, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). As a result of the defendant's conviction of 18 U.S.C. § 1956(h), the defendant must forfeit any property, real or personal, involved in money laundering, or any property traceable to such property, pursuant to 18 U.S.C. § 982(a)(1).

Pursuant to Title 21, United States Code, Sections 853(a) and 853(p), if any of the above-described forfeitable property, as a result of any act or omission of the defendant: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty, the defendant is liable to forfeit substitute assets.

As a result, the government has submitted a proposed Order of Forfeiture pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, which provides for the entry of a forfeiture money judgment in the amount of Thirty-Five Million One Hundred Thousand Dollars and Zero Cents ($35,100,000.00), as: (a) property, real or personal, that constitutes or is derived from, proceeds obtained directly or indirectly as a result of the defendant's violations of 18 U.S.C. § 371, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c); (b) property, real or personal, involved in the defendant's violation of 18 U.S.C. § 1956(h), or any property traceable to such property, pursuant to 18 U.S.C. § 982(a)(1); and/or (c) substitute assets, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1). (See ECF No. 228).

III.    The Forfeiture Amount Should Not Be Offset Against Any of the 2018 Restitutive Payments Made to 1MDB

In his sentencing submission and at the sentencing hearing, the defendant has asked the Court not to impose forfeiture, claiming that the monies he obtained from the scheme

3

were already returned to Malaysia. In fact, as set forth below, funds seized from accounts in the names of the defendant's family members were returned to 1MDB and, consistent with binding Second Circuit precedent, any such remunerative payments—past or future—cannot offset the mandatory forfeiture to be imposed in this case.

As relevant background, prior to October 2018, in the course of its investigation into the misappropriation of assets from 1MDB, Singapore—and not Malaysia—seized multiple bank accounts in Singapore held in the name of the defendant's relatives. On October 30, 2018, the defendant's wife, mother-in-law, and brother-in-law signed statutory declarations under Singaporean law concerning these seized accounts. In the declarations, each consented to Singapore liquidating and transferring the assets in the accounts "to account(s) as may be determined by 1Malaysia Development Berhad." (Statutory Decl., Def. Sentencing App'x, Ex. 1, ECF No. 225-1). The government confirmed with Singapore today that, in total, SGD41 million (approximately $29.6 million as of October 30, 2018) was liquidated and transferred to 1MDB in accordance with the statutory declarations.

The defendant claims that this remuneration back to 1MDB negates his forfeiture obligation to the United States because the transfers pursuant to the statutory declarations were "forfeitures" to Malaysia. In advancing this argument, the defendant fails to acknowledge that the transfers were in fact made to 1MDB, rather than to Malaysian law enforcement or judicial authorities. Contrary to the defendant's contention, those transfers are properly considered restitution, not forfeiture. As reflected in the statutory declarations produced by the defendant, the defendant's family members agreed that the seized assets would be released by Singapore back to 1MDB, the entity from which the money was embezzled—and that is, in fact, what happened.[1] The direct transfer of money back to 1MDB demonstrates that these payments were properly understood as restitution to make the victim whole, not as a penalty that Singapore or Malaysia imposed on the defendant. See Torres, 703 F.3d at 203 ("From this defendant's perspective, an order of forfeiture may not feel much different from an order of restitution, because both orders contemplate cash payments in similar amounts. But as the Seventh Circuit has lucidly observed, 'Restitution is loss based, while forfeiture is gain based.'"). Notably, had the assets been forfeited by Singapore, they would have been deposited, at least in the first instance, by the Singaporean government in the country's Consolidated Fund, rather than paid to 1MDB. The government understands that the funds were not deposited into Singapore's Consolidated Fund. This is similar to the practice in the United States, where forfeiture proceeds are deposited into a dedicated forfeiture fund; restitution payments are treated differently.

---

[1] The statutory declarations do not provide a specific accounting of what assets—either traceable to 1MDB or otherwise—were in those eleven accounts at the time that the statutory declarations were signed. Nor does the defendant provide any other documentation or evidence in support of his claims. And while the government has confirmed with Singapore the total value of the assets in those accounts at the time that they were liquidated and returned to 1MDB, it also does not have an accounting from either Singapore or Malaysia of what those assets were at the time, or what percentage constituted funds actually traceable to funds stolen from 1MDB that were transferred to the defendant as payment for his participation in the charged criminal conspiracies in 2012 and 2013.

4

Once the transfers of assets from Singapore back to 1MDB are properly understood as restitution, the inability to deduct them from a mandatory forfeiture in the United States is clear. "[R]estitution and forfeiture are creations of distinct statutes," and "mandatory criminal forfeiture amounts may not be reduced by the amount of restitution in the absence of specific statutory authorization for such an offset." Bodouva, 853 F.3d at 79; see also United States v. Peters, 732 F.3d 93, 101 (2d Cir. 2013) ("Criminal forfeiture is a form of punishment. As such, it is distinct from restitution or other remedial actions, which are intended to return the victim and the perpetrator to the status quo that existed before the violation took place."); Contorinis, 692 F.3d at 146 (explaining that forfeiture serves a punitive purpose, not a remedial one); United States v. Pescatore, 637 F.3d 128, 137 (2d Cir. 2011) (forfeiture and restitution are separate remedies with different purposes; defendant was not entitled to have government apply $2.5 million in forfeited funds to a $3 million restitution order); United States v. Newman, 659 F.3d 1235, 1241-43 (9th Cir. 2011) (holding that because forfeiture and restitution serve different purposes—one for punishment, the other to make the victim whole—defendant must pay both and that the district court may not reduce forfeiture because of an order of restitution to a victim or because the victim already has been made whole); United States v. Browne, 505 F.3d 1229, 1281 (11th Cir. 2007) (holding that defendant was not entitled to credit against forfeiture for amount paid to victim as voluntary restitution; under relation back doctrine, government has a vested interest in proceeds that is unaffected by defendant's payment of restitution); United States v. Hoffman-Vaile, 568 F.3d 1335, 1345 (11th Cir. 2009) (following Browne; doctor convicted of Medicare fraud not entitled to offset forfeiture to reflect restitution she has already paid to victims); United States v. Wiese, No. 09–20414, 2012 WL 43369, at *3 (E.D. Mich. Jan. 9, 2012) (forfeiture is not limited to victims' net loss; where defendant defrauded banks, he is liable to forfeit gross proceeds of fraud with no offset for amount banks were able to recover by foreclosing on real property); United States v. Graham, No. 5:06-00025, 2007 WL 895239, at *2 (S.D. W. Va. Mar. 22, 2007) (because forfeiture and restitution serve different purposes, that defendant has already repaid his victim "is irrelevant to the court's obligation to impose an order of forfeiture, whose purpose is not to make the victim whole, but to punish a defendant"). There is also no specific statutory authorization to provide an offset here. See 18 U.S.C. §§ 981, 982. Moreover, the defendant himself concedes that his family relinquished the funds not simply as punishment, but as a payment made in exchange for substantial, tangible benefit in return: that the defendant and his family would avoid criminal prosecution in Malaysia and Singapore. Def. Sentencing Mem. at 46 ("[I]n exchange for forfeiting the 1MDB funds as well as the funds not derived from 1MDB, neither Malaysia (the country from which the funds were misappropriated) nor Singapore (the country in which the bank accounts were present) would bring criminal charges against anyone, that travel bans would be lifted and that bank accounts would be unfrozen."). Accordingly, the defendant's forfeiture amount should remain $35.1 million.

Even if the payments by the defendant and his family members could be treated as forfeiture, it is nevertheless appropriate to impose the full $35.1 million forfeiture amount. The doctrine of dual sovereignty permits the federal government to impose a money judgment for the full amount of a defendant's ill-gotten gains from the offenses of conviction even if another sovereign—like a state or a foreign government—has also sought forfeiture based upon the same underlying conduct. See United States v. Williams, 519 F. App'x 303, 304 (5th Cir. 2013) (doctrine of dual sovereignty allows federal court to impose money judgment without any offset for forfeiture ordered by state court based upon same conduct). Sentencing the defendant to the $35.1 million forfeiture amount is appropriate given that the United States and Malaysia, as

independent sovereigns, have separate and distinct justifications for the imposition of the full and just punishment for the defendant's criminal conduct.[2]

IV. <u>Conclusion</u>

For the foregoing reasons, the Court should enter a forfeiture money judgment in the amount of $35.1 million against the defendant. As the Court orally pronounced a general order of forfeiture as part of the defendant's sentence at the defendant's sentencing hearing on March 9, 2023 (and noted that it would be in an amount up to $35.1 million), the government requests that the Court now find the specific forfeiture in this case is $35.1 million, enter the proposed order of forfeiture (ECF No. 228), and attach that order to the defendant's judgment of conviction.

Respectfully submitted,

BREON PEACE
United States Attorney

By: ⎯⎯⎯⎯⎯/s/⎯⎯⎯⎯⎯⎯
Alixandra E. Smith
Drew G. Rolle
Dylan A. Stern
Tanisha R. Payne
Assistant U.S. Attorneys

BRENT WIBLE
Chief, Money Laundering and
    Asset Recovery Section
Department of Justice

GLENN LEON
Chief, Fraud Section
Department of Justice

cc: Clerk of the Court (MKB) (by email and ECF)
     Counsel for the defendant (by email and ECF)

---

[2] Even if the defendant's suggested offsets were legally proper, which they are not, he would still owe substantial forfeiture. First, the funds returned to 1MDB pursuant to the statutory declarations were only SGD41 million ($29.6 million), $5.5 million less than the defendant's ill-gotten gains. Second, and more importantly, because forfeiture is properly considered punishment, funds contributed by family members are irrelevant. Here, the defendant acknowledges that only $2,020,829.16 of the money returned to Malaysia pursuant to the statutory declarations were his own "personal funds." <u>See</u> Defendant's PSR Objections at 16.