UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

UNITED STATES OF AMERICA,

                Plaintiff,

v.

NG CHONG HWA,

                Defendant.

**MEMORANDUM & ORDER**
18-CV-538 (MKB)

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

On March 9, 2023, the Court sentenced defendant Ng Chong Hwa, also known as Roger Ng, to 120 months in custody. (Minute Entry dated Mar. 10, 2023.) At the sentencing, the parties disputed whether the Court could or should order Ng to pay a forfeiture money judgment in the amount of thirty-five million one hundred thousand dollars and zero cents ($35,100,000.00). (*Id.*)

For the reasons explained below, the Court grants the government's request for a forfeiture money judgment in the amount of thirty-five million one hundred thousand dollars and zero cents ($35,100,000.00).

    **I.   Discussion**

        **a.  The Court is statutorily required to order the full forfeiture amount**

Under Title 18, United States Code, Section 982, 18 U.S.C. § 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), 28 U.S.C. § 2461(c), a defendant convicted of a violation of 18 U.S.C. § 371 must forfeit any property, real or personal that constitutes or is derived from proceeds traceable to such a violation. Under Title 18, United States Code, Section 982(a)(1), 18 U.S.C. § 982(a)(1), a defendant convicted of money laundering under 18 U.S.C. § 1956(h) must

forfeit any property, real or personal, involved in money laundering, or any property traceable to such property. Forfeiture is statutorily required under these statutes. *See* 28 U.S.C. § 2461(c) ("If the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence."); 18 U.S.C. § 982(a)(1) ("The court . . . shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property."); *see also United States v. Viloski*, 814 F.3d 104, 111 n.11 (2d Cir. 2016) ("[A]s long as the factual predicate for the application of these [mandatory criminal forfeiture] statutes has been satisfied, . . . a district court has no discretion not to order forfeiture in the amount sought."). In addition, "district courts are bound not to reduce the amount of a mandatory criminal forfeiture order by the amount of past or future restitution payments, in the absence of specific statutory authorization to do so." *See United States v. Bodouva*, 853 F.3d 76, 78–79 (2d Cir. 2017). Further, under the dual sovereignty doctrine of the Double Jeopardy Clause, independent sovereigns may each impose forfeiture as a form of punishment for the same conduct, and the fact that a defendant has already forfeited a sum to another sovereign, is not a basis to reduce the forfeiture amount. *United States v. Williams*, 519 F. App'x 303, 304 (5th Cir. 2013); *United States v. Pena*, 67 F.3d 153, 155–56 (8th Cir. 1995).

Because forfeiture is mandatory under the relevant criminal forfeiture statutes, 18 U.S.C. §981(a)(1)(C) and 982(a)(1), and 28 U.S.C. § 2461(c), and because the government proved by at least a preponderance of the evidence that Ng received $35.1 million from the offenses, the Court is statutorily required to order forfeiture in the full amount sought by the government, thirty-five million one hundred thousand dollars and zero cents ($35,100,000.00). *Viloski*, 814

F.3d 104, 111 n.11 (noting that a district court has no discretion to not impose the full amount of forfeiture).

Contrary to Ng's argument, the Court does not have discretion to reduce the forfeiture amount by the sum given to the Malaysian government. *See Bodouva*, 853 F.3d at 78–79 (explaining that district courts may not reduce the forfeiture amount by the restitution amount); *Williams*, 519 F. App'x at 304 (finding that, "[i]n view of the dual sovereignty doctrine which allows the State . . . and the United States to prosecute [the defendant] for the same act that violates their respective laws and to order forfeitures," the defendant was not entitled to an offset of the amounts already forfeited to the state); *Pena*, 67 F.3d 153, 155–56 (rejecting the defendant's argument that the forfeiture amount imposed by the district court was illegal because the State had already taken forfeiture).

  b. **The forfeiture amount is not constitutionally excessive**

Although district courts are statutorily required to order forfeiture in the total forfeitable amount under the mandatory criminal forfeiture statutes, the total amount of forfeiture must not violate the Excessive Fines Clause of the Eighth Amendment. *United States v. Castello*, 611 F.3d 116, 120 (2d Cir. 2010). "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *United States v. Bajakajian,* 524 U.S. 321, 334 (1998). To determine whether a fine is constitutionally excessive, courts consider the following factors: "(1) the essence of the crime of the defendant and its relation to other criminal activity, (2) whether the defendant fits into the class of persons for whom the statute was principally designed, (3) the maximum sentence and fine that could have been imposed, and (4) the nature of the harm caused by defendant's conduct." *Viloski*, 814 F.3d

at 113 (citation omitted). The Second Circuit has held that the factors are non-exhaustive and that district courts may also consider the effect the forfeiture amount would have on the defendant's livelihood. *Id.*

The Court applies these factors, and considers the fact that Ng already relinquished a large sum to Malaysia, and makes the following findings:

### i. The essence of the crime and its relation to other criminal activity

Assuming without deciding that Ng is less culpable than his co-conspirators, the fact remains that he willfully engaged in a multi-year financial scheme, which is enough to militate in favor of granting forfeiture. *See Viloski*, 814 F.3d at 113–14 (finding that "[a]lthough [the defendant] insists on his relative lack of culpability, his 'willful participation'" "in a multi-year conspiracy involving repeated instances of money laundering, mail fraud, wire fraud, and related offenses" "is sufficient to support the forfeiture").

### ii. Whether Ng fits into the class of persons for whom the statute exists

Ng does not dispute that he fits into the class of persons for whom the statute exists. The Court finds that this factor also weighs in favor of forfeiture. *See Viloski*, 814 F.3d at 14 ("[The defendant] fits squarely into the class of persons for whom the federal mail- and wire-fraud and money-laundering statutes were designed — namely, those who use facilities of interstate or foreign commerce to engage in fraudulent schemes and financial transactions and then seek to conceal or disguise the nature of the proceeds of the fraud.").

### iii.    The maximum sentence and fine that could have been imposed

Although the maximum fine under the Guidelines range was $500,000, the maximum fine under the money laundering statute was over $70 million dollars,[1] which suggests that that the forfeiture amount is at least grossly proportional to the gravity of the offense.  *United States v. George*, 779 F.3d 113, 112 (2d Cir. 2015) (finding no disproportionality in the forfeiture amount where the forfeiture amount exceeded the guidelines fine range, but was significantly below the maximum statutory fine); *United States v. Garza-Gonzalez*, 512 F. App'x 60, 67 (2d Cir. 2013) (explaining that "[h]ad [the plaintiff] been subject to a fine instead of forfeiture, the fine for [the money laundering count] could have been twice that amount," and weighing this factor in favor of the forfeiture amount).[2]

### iv.    Nature of the harm caused by Ng's conduct

As mentioned above and at the sentencing, even if Ng is less responsible that the others charged with similar offenses, he played a role in one of the largest financial crimes of all time. The scheme resulted in enormous tangible harm, i.e., the theft of $3 billion dollars,  and intangible harm to the public's confidence in democracy and government.

### v.    The effect the forfeiture amount would have on the Ng's future livelihood

Ng has failed to show that forfeiture would destroy his future livelihood.  As the Second Circuit explained in *Viloski*, "asking whether a forfeiture would destroy a defendant's *future*

---

[1] Under Section 1956(a) and (h), a defendant can be sentenced to a fine of not more than $500,000, or twice the value of the property involved in the transaction, whichever is greater.  18 U.S.C. §§ 1956(a), (h).  Ng has not challenged this calculation or even addressed the maximum fine, except to note that this Court already found that Ng was unable to pay a fine.

[2] In addition, the restricted guideline term of imprisonment was 360 months.  (Minute Entry dated March 10, 2023).

livelihood is different from considering as a discrete factor a defendant's *present* personal circumstances, including age, health, and financial situation." 814 F.3d at 112. While "[p]ersonal circumstances might . . . be *indirectly* relevant to a proportionality determination, to the extent that those circumstances, in conjunction with the challenged forfeiture, would deprive the defendant of his livelihood," *id.* at 113, Ng has based his argument entirely on his present personal circumstances and has not shown that he will be unable to earn money in the future.

>  vi. **The fact that Ng already paid a large sum to the Malaysian government**

The Court finds that this factor is only relevant to the extent that it helps to demonstrate that the forfeiture amount would deprive Ng of his future livelihood. The fact that he already paid a large sum to the Malaysian government does not, on its own, render the forfeiture amount constitutionally excessive. As explained above, there is no constitutional prohibition on two separate sovereigns imposing punishment. *Williams*, 519 F. App'x at 304 (finding that, "[i]n view of the dual sovereignty doctrine which allows the State . . . and the United States to prosecute [the defendant] for the same act that violates their respective laws and to order forfeitures," the defendant was not entitled to an offset of the amounts already forfeited to the state).

Even taking into account the fact that Ng has already paid a large sum of money to the Malaysian government and even assuming that he is destitute at this time, Ng has not shown that he will be incapable of earning money in the future.

These factors weigh in favor of forfeiture. Therefore, Ng has not demonstrated that the forfeiture amount is constitutionally excessive. Because the mandatory forfeiture amount is not constitutionally excessive, the Court orders that Ng forfeit the entire amount.

II. **Conclusion**

For the foregoing reasons, the Court grants the government's motion for a forfeiture money judgment in the amount of thirty-five million one hundred thousand dollars and zero cents ($35,100,000.00).[3]

Dated: March 23, 2023
      Brooklyn, New York

                                      SO ORDERED:

                                      _____s/ MKB_____
                                      MARGO K. BRODIE
                                      United States District Judge

---

[3] Contrary to Ng's argument, and as explained by the Ninth Circuit in the case cited by Ng, the forfeiture statute's lack of a textual basis for imposing a personal money judgment does not render the use of a money judgment improper. *United States v. Nejad*, 933 F.3d 1162, 1165 (9th Cir. 2019) (collecting cases). Money judgments are "necessary to avoid undermining Congress' objective in enacting mandatory forfeiture sanctions." *Id.*
    Nor is the money judgment inappropriate because the government has not yet complied with the substitute asset provisions codified in 21 U.S.C. § 853(p). The government must comply with those provisions once it seeks to forfeit specific untainted property to satisfy the money judgment. *Nejad*, 933 F.3d at 1166 (explaining that once the government identifies untainted property it seeks to satisfy a money judgment, it must return to the district court and establish the substitute asset provisions).